# Exhibit "A"

**LEWISBERRY PARTNERS LLC**
**$8,025,000.00**
**June 26, 2019**

## COMMERCIAL PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned, **LEWISBERRY PARTNERS LLC,** a Pennsylvania limited liability company having an address at **27 Nutt Road, Phoenixville, PA 19460** ("Maker"), promises to pay to the order of **LOAN FUNDER LLC, SERIES 7693,** a Delaware limited liability company at its principal place of business at **645 Madison Avenue, Floor 19, New York, NY 10022** ("Lender"), or at such other place as the holder hereof may designate, the principal amount of **Eight Million Twenty Five Thousand and 00/100 dollars ($8,025,000.00),** with interest on the principal amount of this Note computed from the date hereof, together with all taxes assessed upon this Note and together with any costs, expenses, and reasonable attorneys' fees incurred in the collection of this Note or in protecting, maintaining, or enforcing its security interest or any mortgage securing this Note or upon any litigation or controversy affecting this Note or the security given therefor, including, without limitation, proceedings under the Federal Bankruptcy Code.

1.  **Payments.** Principal and interest hereunder shall be payable as follows:

    **A.**     Interest on the principal amount of this Note shall accrue at the rate of 8% per annum for the period from the date hereof to and including June 30, 2019 and shall be payable at the closing of the Loan.

    **B.**     The rate of interest of this Note, which shall remain effective until an Event of Default (as defined below), initially shall be fixed at 8% per annum. Commencing sixty (60) months after the date hereof, on June 26, 2025, the interest rate on this Note is subject to adjustment and shall accrue on the unpaid principal balance of this Note at the rate, determined by Lender, in its sole discretion, equal to the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as most recently published by *The Wall Street Journal* as of the date forty-five (45) days prior to each Interest Rate Change Date (the "LIBOR Rate"), plus five and 57/100 percent (5.57% %), and rounded up to the nearest 1/8th of one percentage point (0.125). The interest rate will be adjusted (each an "Adjusted Interest Rate") every year beginning on June 26, 2026 to reflect a change in the LIBOR Rate (each, an "Interest Rate Change Date"). Notwithstanding the foregoing, the maximum possible interest rate, absent an event of default, shall not exceed the Maximum Rate (as defined below). Additionally, in no event shall the interest rate on this Promissory Note ever be less than eight percent (8%) and in no event shall the interest rate increase or decrease more than two percent (2%) from the rate previously in effect. The foregoing is a reference rate for information and its use by the Lender herein in establishing the actual rates to be charged to Maker and does not necessarily constitute its lowest or best rate. If the Lender determines that no interest rate reporting service presented information to identify the interest rate deferred above, the rate of interest at which deposits in dollars are offered to major banks in the London interbank market for a one-year period on the day that is two business days prior Interest Rate Change Date by any bank reasonably selected by the Lender. The change in the interest rate is effective whether or not Lender gives maker notice of the change. Interest on this Note shall be calculated on the basis of a 30-day month, 360 day year. Interest on this Note is subject to adjustment in accordance with Sections 5 and 6 below.

1

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

**C.** On the date hereof, Maker shall pay interest for the period from the date hereof to and including June 30, 2019. Commencing on **August 01, 2019**, and on the first day of each month thereafter, until **June 26, 2049**, Maker shall make monthly payments of interest only in arrears on the outstanding Principal Amount. Thereafter, Maker shall make payments of principal and interest, with said payments being in an amount amortized so that the Principal Balance is repaid by the Maturity Date. Maker acknowledges that it must repay the entire Principal Amount, together with all accrued unpaid interest thereon, on the Maturity Date. Makers initial monthly payment will be $53,066.67. The amount of the monthly installment of principal and interest payable shall change on each Interest Rate Change Date (each, a "Payment Change Date"). Commencing on the first Payment Change Date, the monthly payment will be based on the applicable Adjusted Interest Rate, the principal amount of the Loan then outstanding, and the Remaining Amortization Period. Remaining Amortization Period shall mean as of the applicable Payment Change Date, the Original Amortization Period minus the number of scheduled monthly installments of principal and interest that have elapsed since the date of this Note prior to the Payment Change Date. The Original Amortization Period shall mean the number of months set forth in the amortization schedule.

**D.** If not sooner paid, the entire principal amount of this Note, together accrued interest and with all other sums due hereunder, shall be due and payable in full on **June 26, 2049** (the "Maturity Date").

**E.** All payments received will be credited first to late charges and costs hereunder, then to interest accrued at the applicable interest rate hereinafter set forth, with the balance on account of principal.

**F.** At no time shall the interest rate exceed the Maximum Rate permitted by the usury statutes governing this Note, if any. If, by application of the above interest rate formula, the interest rate would exceed and violate such usury statutes, interest shall accrue at the Maximum Rate as contemplated in Section 16 below.

2. **Closing and Loan Disbursement.** The Closing of the Loan and disbursement of the Loan proceeds will be made in accordance with the terms of the Loan Agreement of even date.

3. **Security.** This Note is secured by a first priority Commercial Mortgage(s) (the "Mortgage(s)") on those certain parcel(s) of real property known as **Lots 47 through 96 located in Phase 2 & 3 of the P Lewisberry, PA**, being more specifically described in the Loan Agreement and Mortgage(s).

4. **Default.** If any of the following events occur (which is an "Event of Default"), Lender may declare the entire outstanding principal balance hereof, together with any other amounts that Maker owes to Lender, to be immediately due and payable:

   a. Maker fails to pay any installment of principal and/or interest or any other charges due under this Note within five (5) days after the same becomes due and payable;

   b. Maker defaults in any other obligations, liabilities, or indebtedness with Lender (whether now existing or hereafter arising) set forth in the Loan Agreement, Mortgage(s), Assignment(s) of Leases and Rents or other Loan Documents;

   c. Maker sells, leases, or otherwise disposes of all or substantially all of its property, assets, or business in violation of the Mortgage and Loan Documents, or if Maker ceases any of its business operations, dissolves, or commences reorganization;

2

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

d. Maker makes or takes any action to make a general assignment for the benefit of its creditors or becomes insolvent or has a receiver, custodian, trustee in Bankruptcy, or conservator appointed for it or for substantially all or any of its assets;

e. Maker files or becomes the subject of a petition in Bankruptcy or upon the commencement of any proceeding or action under any Bankruptcy laws, insolvency laws, relief of debtors laws, or any other similar law affecting Maker, provided, however, that Maker shall have sixty (60) days from the filing of any involuntary petition in Bankruptcy to have the same discharged and dismissed;

f. Upon the failure by Maker to observe or perform, or upon default in, any covenants, agreements, or provisions in the Mortgage, Loan Agreement or in any other instrument, document, or agreement, executed and/or delivered in connection herewith or therewith;

g. Any representation or statement made herein or any other representation or statement made or furnished to Lender by Maker was materially incorrect or misleading at the time it was made or furnished;

h. In the event of any material adverse change in the financial condition of Maker or any guarantor of the loan; or

i. Upon the death of any guarantor of the loan.

5. **Default Rate.** After the occurrence of an Event of Default (whether or not the Loan has been accelerated), interest will accrue at the lesser of (i) 23% per annum or (ii) the Maximum Rate (as defined in Section 16 below) allowed by applicable law. Interest will continue to accrue at the default rate after judgment until the Note is paid in full.

6. **Leasing Covenant.** Borrower shall lease the Mortgaged Properties to Eligible Tenants at the Loan Closing or by the day which is 30 days after the closing (the "30 Day Lease Date") (as defined in Section 2.12 of the Loan Agreement). If Borrower provides Lender evidence to Lender in its sole discretion that Borrower has (a) leased the Mortgaged Property to (b) an Eligible Tenant, (c) pursuant to an Eligible Lease by (d) the 30 Day Lease Date, then Borrower will have complied with this Section. If Borrower fails to comply with (a) through (d) above, then Borrower's interest rate shall be increased two hundred (200) basis points above the applicable note contract rate until the Mortgaged Properties are leased in accordance with this Section 6.

7. **Prepayment.** Provided that Maker is not in default hereunder, except as provided herein, Maker may prepay all or any portion of the unpaid principal balance of this Note at any time. All prepayment shall be applied first to any costs or charges due hereunder, then to interest due and owing hereunder, and then to principal then outstanding, in inverse order of maturity. Should Borrower need to repay the loan prior to the Maturity Date, Lender will permit Borrower to repay and Borrower will be charged a prepayment premium (whether by sale of the Mortgaged Properties or refinance) of 1.5% of the allocated loan amount for the twelve properties attached hereto on Exhibit "A". The remaining thirty-eight properties are subject to a prepayment lockout for six (6) months, with no penalty thereafter.

8. **Late Charge.** It is further agreed that the holder hereof may collect a late charge equal to the greater of five percent (5%) of any payment required hereunder or One Hundred Dollars ($100.00)

3

including without limitation the final payment, or any other payment required under any security agreement, mortgage, or any other instrument, document, or agreement executed and/or delivered in connection herewith which is not paid within ten (10) days of the due date thereof. This late charge is to cover the extra expenses involved in handling delinquent payments and is not to be construed to cover other costs and attorneys' fees incurred in any action to collect this Note or to foreclose the mortgage securing the same. This provision shall not affect or limit the holder's rights or remedies with respect to any Event of Default.

9. **Lien/Set Off.** Maker hereby gives the holder hereof a lien and right of set off for all of Maker's liabilities to the holder hereof or Lender upon and against all deposits, credits, and other property of Maker now or hereafter in the possession or control of the holder hereof, or in transit to it, excepting however, funds held in trust by Maker. All payments shall be made in lawful currency of the United States of America in immediately available funds, without abatement, counterclaim, or set-off, and free and clear of, and without any deduction or withholding for, any taxes or other matters.

10. **Purpose of Loan.** Maker represents and warrants that the proceeds of this Note are to be used solely for business and commercial purposes and not at all for any personal, family, household, or other noncommercial or farming or agricultural purposes. Maker acknowledges that Lender is making this loan to Maker in reliance upon the above representation by Maker. The above representation by Maker will survive the closing of this loan and repayment of amounts due to Lender hereunder.

11. **Other Obligations.** To the extent that the outstanding balance of this Note is reduced or paid in full by reason of any payment to Lender by an accommodation maker, endorser, or guarantor, and all or any part of such payment is rescinded, avoided, or recovered from Lender for any reason whatsoever, including, without limitation, any proceedings in connection with the insolvency, bankruptcy, or reorganization of the accommodation maker, endorser, or guarantor, the amount of such rescinded, avoided, or returned payment shall be added to or, in the event this Note has been previously paid in full, shall revive the principal balance of this Note upon which interest may be charged at the applicable rate set forth in this Note and shall be considered part of the outstanding balance of this Note and all terms and provisions herein shall thereafter apply to the same.

12. **Waiver. MAKER (AND EACH AND EVERY ENDORSER, GUARANTOR, AND SURETY OF THIS NOTE) ACKNOWLEDGES THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION, AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVES THE RIGHT TO NOTICE AND HEARING UNDER APPLICABLE NEW YORK GENERAL STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT, WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, AND FURTHER WAIVES DILIGENCE, DEMAND, PRESENTMENT FOR PAYMENT, NOTICE OF NONPAYMENT, PROTEST AND NOTICE OF PROTEST AND NOTICE OF ANY RENEWALS OR EXTENSIONS OF THIS NOTE, AND ALL RIGHTS UNDER ANY STATUTE OF LIMITATIONS, AND AGREES THAT THE TIME FOR PAYMENT OF THIS NOTE MAY BE CHANGED AND EXTENDED AS PROVIDED IN SAID MORTGAGE OR ANY SECURITY AGREEMENT, WITHOUT IMPAIRING MAKER'S LIABILITY THEREON, AND FURTHER CONSENTS TO THE RELEASE OF ALL OR ANY PART OF THE SECURITY FOR THE PAYMENT HEREOF, OR THE RELEASE OF ANY PARTY LIABLE FOR THIS OBLIGATION WITHOUT AFFECTING THE LIABILITY OF THE OTHER PARTIES HERETO. ANY DELAY ON THE PART OF THE HOLDER HEREOF IN EXERCISING ANY RIGHT HEREUNDER SHALL NOT OPERATE AS A WAIVER OF ANY SUCH**

4

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

RIGHT, AND ANY WAIVER GRANTED FOR ONE OCCASION SHALL NOT OPERATE
AS A WAIVER IN THE EVENT OF ANY SUBSEQUENT DEFAULT. MAKER FURTHER
WAIVES TRIAL BY JURY AND ACKNOWLEDGES THAT IT MAKES THIS WAIVER
KNOWINGLY, VOLUNTARILY, AND ONLY AFTER CONSIDERATION OF THE
RAMIFICATIONS OF THE WAIVER
BY ITS ATTORNEY.

13. **Binding Effect.** This Note shall be binding on Maker, its successors and assigns and shall inure
to the benefit of Lender, any holder hereof, its successors and assigns.

14. **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of
the State of New York.  The Maker acknowledges and agrees that the transaction evidenced by
this Note was negotiated and accepted in the State of New York and the performance of the
obligations hereunder shall be deemed to be performed in the State of New York.

15. **Joint and Several.** Should this Note be signed by more than one Maker, references in this Note
to Maker in the singular shall include the plural and all obligations herein contained shall be joint
and several of each signer hereof.

16. **Maximum Rate.** Notwithstanding anything to the contrary contained herein, under no
circumstances shall the aggregate amount paid or agreed to be paid hereunder exceed the highest
lawful rate permitted under applicable usury law (the "Maximum Rate") and the payment
obligations of Maker under this Note are hereby limited accordingly.  If under any circumstances,
whether by reason of advancement or acceleration of the maturity of the unpaid principal balance
hereof or otherwise, the aggregate amounts paid on this Note shall include amounts which by law
are deemed interest and which would exceed the Maximum Rate, Maker stipulates that payment
and collection of such excess amounts shall have been and will be deemed to have been the result
of a mistake on the part of both Maker and the holder of this Note, and the party receiving such
excess payments shall promptly credit such excess (to the extent only of such payments in excess
of the Maximum Rate) against the unpaid principal balance hereof and any portion of such excess
payments not capable of being so credited shall be refunded to Maker.

17. **Rights Cumulative.** The rights and remedies of Lender shall be cumulative and not in the
alternative, and shall include all rights and remedies granted herein, in any document referred to
herein or executed and/or delivered in connection herewith, and under all applicable laws, and the
exercise of any one or more of them will not be a waiver of any other.

18. **Severability.** If any term, clause, or provision hereof shall be adjudged to be invalid or
unenforceable by a court of appropriate jurisdiction, the validity and enforceability of the
remainder shall not be affected thereby and each such term, clause, or provision shall be valid and
enforceable to the fullest extent permitted by law.

19. **Payments Past Maturity.** Maker hereby authorizes Lender, at Lender's sole discretion, to instruct
Lender's servicer or subservicer to continue accepting payments from Maker past the then original
Maturity Date of this Note at the original terms stated herein and in the other Loan Documents.
Maker hereby authorizes Lender and its servicer and subservicer to either (i) initiate, and/or
continue the initiation of, ACH direct debit transactions from Maker's bank account supplied to
Lender or its servicer or subservicer; and/or (ii) otherwise accept monthly payments due and owing
on this Note in the form of paper checks or as otherwise agreed by and between Maker and Lender's
servicer or subservicer.  If the then original Maturity Date of this Note has passed, the continued
acceptance of payments by Lender shall be at the sole and absolute discretion of Lender, and Lender

5

shall not be obligated to accept such payments. Lender reserves the right to cease or discontinue acceptance of any such payments from Maker at any time and to pursue all of its available remedies under this Note and the other Loan Documents.

6

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

**IN WITNESS WHEREOF**, the undersigned have executed this Commercial Promissory Note as of June 26, 2019.

**BORROWER**
**LEWISBERRY PARTNERS LLC**

By: _____

Name: Richard J Puleo
Title:    Managing Member

STATE OF $PA$                    )
                                )ss.:
COUNTY OF LANCASTER

I certify that on June 26 2019, Richard J Puleo, came before me in person and stated to my satisfaction that he/she:

(a) made the attached instrument; and

(b) was authorized to and did execute this instrument on behalf of and as Managing Member of LEWISBERRY PARTNERS LLC (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and members.

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
William B. Stull, Notary Public
Lancaster County
My commission expires November 16, 2019
Commission number 1162557

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

## EXHIBIT A

24 Kingswood Drive, Lewisberry, PA
22 Kingswood Drive, Lewisberry, PA
18 Kingswood Drive, Lewisberry, PA
20 Kingswood Drive, Lewisberry, PA
16 Kingswood Drive, Lewisberry, PA
14 Kingswood Drive, Lewisberry, PA
12 Kingswood Drive, Lewisberry, PA
10 Kingswood Drive, Lewisberry, PA
8 Kingswood Drive, Lewisberry, PA
6 Kingswood Drive, Lewisberry, PA
4 Kingswood Drive, Lewisberry, PA
2 Kingswood Drive, Lewisberry, PA

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

## GUARANTY

**$8,025,000.00**                                                                 **June 26, 2019**

WHEREAS, **LEWISBERRY PARTNERS LLC,** a Pennsylvania limited liability company having its principal place of business at **27 Nutt Road, Phoenixville, PA 19460** (the "Borrower"), has requested **LOAN FUNDER LLC, SERIES 7693,** a Delaware limited liability company having its principal place of business at **645 Madison Avenue, Floor 19, New York, NY 10022** (the "Lender"), a loan in the principal sum of **Eight Million Twenty Five Thousand and 00/100 dollars ($8,025,000.00)** (the "Loan"), which Loan will be evidenced by a Commercial Promissory Note of even date herewith, (as may be amended, restated or modified from time to time, hereinafter, the "Note") from Borrower to Lender, and secured by, among other things, that certain Loan and Security Agreement of even date herewith, (as may be amended, restated or modified from time to time, the "Loan Agreement") and that certain Mortgage and Security Agreement of even date herewith, (as may be amended, restated or modified from time to time, the "Mortgage") from Borrower to Lender, all of the foregoing being of even date herewith. All capitalized terms used herein but not defined shall have the meaning ascribed to such terms in the Loan Agreement;

WHEREAS, Lender is willing to make the Loan to Borrower only if, among other things, the undersigned (sometimes referred to herein individually and collectively as the "Guarantor") executes and delivers this Guaranty of Payment (as may be amended, restated or modified from time to time, "Guaranty") and guarantees payment to Lender of the Debt (as hereinafter defined) in the manner provided herein; and

WHEREAS, the undersigned expects to derive benefit from the Loan.

NOW, THEREFORE, in order to induce Lender to make the Loan to Borrower, the undersigned hereby guarantees absolutely and unconditionally to Lender the payment of the Debt and covenants and agrees with Lender as follows:

1.     Recitals. The recitals set forth above are incorporated herein by reference.

2.     Guaranty Clause.  The Guarantor hereby absolutely, irrevocably and unconditionally guaranties to Lender the full, prompt and unconditional payment of the Debt, when and as the same shall become due, whether at the stated maturity date, by acceleration or otherwise, and the full, prompt and unconditional performance of each and every term and condition of every transaction to be kept and performed by Borrower under the Note.  This Guaranty is a primary obligation of Guarantor and shall be a continuing inexhaustible guaranty.  Lender may require Guarantor to pay and perform any or all of the Guarantor's liabilities and obligations under this Guaranty and may proceed immediately against Guarantor without being required or obligated to bring any proceeding or take any action against Borrower, any other guarantor or any other person, entity or property prior thereto.  The liability of each Guarantor hereunder is joint and several with all other Guarantors, if applicable, and all other guarantors, and is independent of and separate from the liability of Borrower, any other guarantor, person or entity, and is independent of the availability of any collateral security for and/or under any documents granting Lender security for the Loan.

(a)     The term "Debt" as used in this Guaranty shall mean the principal sum evidenced by the Note and secured by the Mortgage, together with interest thereon at the rate of interest specified in the Note and all other sums which may or shall become due and payable pursuant to the provisions of the Note, Mortgage, Loan Agreement, or any other agreement, document or certificate executed and/or

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Guaranty

delivered by Borrower to Lender in connection with the Loan, including any and all modifications, amendments, and ratifications thereto (collectively the "Loan Documents").

(b)     The undersigned agrees that, upon demand, the undersigned will reimburse Lender, to the extent that such reimbursement is not made by Borrower, for all expenses (including reasonable counsel fees) incurred by Lender in connection with the collection of the Debt or any portion thereof, including any expenses incurred in any post-judgment proceedings to collect and enforce such judgment. This provision is separate and several and shall survive the merger of this Guaranty into any judgment on this Guaranty.

(c)     All moneys available to Lender for application in payment or reduction of the Debt may be applied by Lender in such manner and in such amounts and at such time or times and in such order and priority as Lender may see fit to the payment or reduction of such portion of the Debt or other obligations of Borrower as Lender may elect.

(d)     This Guaranty is an absolute, continuing, unconditional and unlimited guaranty of payment and not merely of collection and Lender shall be entitled to payment from the undersigned without first commencing any action against Borrower or resorting to any security or to any credit on the books of Lender in favor of Borrower. The undersigned acknowledges and agrees that this Guaranty and any or all other guaranties made to Lender in connection with this Loan are joint and several guaranties.

3.     Lender's Rights. The undersigned hereby consents that from time to time, before or after any default by Borrower, with or without further notice to or assent from the undersigned, (i) any security at any time held by or available to Lender for any obligation of Borrower, (ii) any security at any time held by or available to Lender for any obligation of any other person or party secondarily or otherwise liable for all or any portion of the Debt, and/or (iii) any obligation arising under any other guaranty to Lender made in connection with the Loan, may be exchanged, surrendered or released and any obligation of Borrower may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part, or any default with respect thereto waived, and Lender may fail to set off and may release, in whole or in part, any balance of any credit on its books in favor of Borrower, and may extend further credit in any manner whatsoever to Borrower, and generally deal with Borrower or any such security or obligation and the undersigned shall remain bound under this Guaranty notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing. No invalidity, irregularity or unenforceability of all or any part of the Debt or the impairment or loss of security or obligation therefor, whether caused by any action or inactions of Lender or otherwise, shall affect or impair this Guaranty.

4.     Guarantor Waivers. The undersigned hereby waives and agrees not to assert or take advantage of any defense based upon:

(a)     Notice of acceptance of this Guaranty and of the making of the Loan by Lender to Borrower;

(b)     Presentment and demand for payment of the Debt or any portion thereof;

(c)     Protest and notice of dishonor or default to the undersigned with respect to the Debt or any portion thereof;

(d)     Notice of intent to accelerate, notice of acceleration and all other notices to which the undersigned might otherwise be entitled;

2

(e)    Any demand for payment under this Guaranty;

(f)    The incapacity, lack of authority, death or disability of Borrower or any other person or entity;

(g)    The failure of Lender to commence an action against Borrower and/or Guarantor or to proceed against or exhaust any security held by Lender at any time, or to pursue any other remedy whatsoever at any time;

(h)    Any duty on the part of Lender to disclose to the undersigned any facts Lender may now or hereafter know regarding Borrower, regardless of whether Lender has reason to believe (i) that any such facts materially increase the risk beyond that which the undersigned intends to assume, or (ii) that such facts are unknown to the undersigned, the undersigned acknowledging that he, she or it is fully responsible for being and keeping informed of the financial condition and affairs of Borrower;

(i)    Lack of notice of default, demand of performance or notice of acceleration to Borrower or any other party with respect to the Loan or Borrower's obligations guaranteed hereby;

(j)    The consideration for this Guaranty (or lack or inadequacy thereof);

(k)    Any acts or omissions of Lender which vary, increase or decrease the risk on the undersigned;

(l)    Any rights or defenses based upon an offset by the undersigned against any obligation now or hereafter owed to the undersigned by Borrower;

(m)    Any statute of limitations affecting the liability of the undersigned hereunder, the liability of Borrower or Guarantor under the Loan Documents or the enforcement hereof, to the extent permitted by law;

(n)    The application by Borrower of the proceeds of the Loan for purposes other than the purposes represented by Borrower to Lender and the undersigned or intended or understood by Lender or the undersigned;

(o)    An election of remedies by Lender, including any election to proceed against any collateral by judicial or nonjudicial foreclosure, whether real property or personal property, or by deed in lieu thereof, and whether or not every aspect of any foreclosure sale is commercially reasonable, and whether or not any such election of remedies destroys or otherwise impairs the subrogation rights of the undersigned or the rights of the undersigned to proceed against Borrower or any guarantor by way of subrogation or for reimbursement or contribution, or all such rights;

(p)    Any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in any other aspects more burdensome than that of the principal obligor;

(q)    Lender's election, in any proceeding instituted under Title 11 of the United States Code (the "Bankruptcy Code"), of the application of Section 1111(b)(2) of the Bankruptcy Code or any successor statute; and

(r)      Any borrowing or any grant of a security interest under Section 364 of the Bankruptcy Code.

THIS IS AN UNCONDITIONAL AND IRREVOCABLE WAIVER OF ANY RIGHTS AND DEFENSES THE UNDERSIGNED MAY HAVE BECAUSE BORROWER'S DEBT IS SECURED BY INTERESTS IN REAL PROPERTY.

5.      Collection and Enforcement.

(a)      LENDER MAY COLLECT FROM THE UNDERSIGNED WITHOUT FIRST FORECLOSING ON ANY REAL OR PERSONAL PROPERTY COLLATERAL PLEDGED BY BORROWER; AND

(b)      IF LENDER FORECLOSES ON ANY REAL PROPERTY COLLATERAL PLEDGED BY BORROWER:

i.      THE AMOUNT OF THE DEBT MAY BE REDUCED ONLY BY THE PRICE FOR WHICH THAT COLLATERAL IS SOLD AT A FORECLOSURE SALE, EVEN IF THE COLLATERAL IS WORTH MORE THAN THE SALE PRICE; AND

ii.      LENDER MAY COLLECT FROM THE UNDERSIGNED EVEN IF LENDER, BY FORECLOSING ON THE REAL PROPERTY COLLATERAL, HAS DESTROYED ANY RIGHT THE UNDERSIGNED MAY HAVE TO COLLECT FROM BORROWER.

6.      Successors and Assigns.  Each reference herein to Lender shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure.  Each reference herein to the undersigned shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of the undersigned, all of whom shall be bound by the provisions of this Guaranty.

7.      No Waiver.  No delay on the part of Lender in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on the undersigned shall be deemed to be a waiver of the obligation of the undersigned or of the right of Lender to take further action without notice or demand as provided herein; nor in any event shall any modification or waiver of the provisions of this Guaranty be effective unless in writing nor shall any such waiver be applicable except in the specific instance for which such waiver is given.

8.      Representations and Warranties.  To further induce Lender to make the Loan to Borrower, the Guarantor makes the following warranties and representations, with the knowledge that Lender will rely on the veracity thereof:

(a)      The execution and delivery by the Guarantor of this Guaranty and any other document executed and/or delivered by the Guarantor to Lender in connection therewith (collectively, the "Guaranty Documents"), and the performance of the obligations thereunder, do not and will not: (a) violate any provision of law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to the Guarantor; or (b) result in any breach of or constitute any default under any indenture or loan or credit agreement or any other agreement, lease or instrument to which the Guarantor is a party or by which the Guarantor or his/her/their/its properties may be bound or affected, and the Guarantor is not in default under any such law, rule, regulation, order, writ, judgment, injunction, decree, determination or award or any such indenture, agreement, lease or instrument.

4

(b)     There is no material action, suit, proceeding, inquiry or investigation, at law or in equity, or before any court, governmental instrumentality, public board or arbitrator pending or threatened against or affecting the Guarantor or any of his properties or rights, wherein an unfavorable decision, ruling or finding would (i) to the extent not covered by insurance as to which the insurer has not disclaimed coverage, result in any material adverse change in the financial condition, business, properties or operations of the Guarantor; (ii) materially or adversely effect the Guaranty; or (iii) adversely effect the validly or enforceability of the Guaranty Documents.

(c)     The Guarantor is in compliance with all applicable laws.

(d)     Borrower is a pre-existing entity actively engaged in the operation of its business and has not been created as a vehicle to obtain the Loan. The proceeds of the Loan will be used by Borrower solely to (a) discharge or release liens upon the real property encumbered by the Mortgage (the "Property") or for other business purposes directly related to the Property, and (b) pay fees and other amounts related thereto or to the making of the Loan, and the proceeds of the Loan will not be paid over or diverted by Borrower to any member, officer, director or shareholder of Borrower, the Guarantor, any other guarantors of the Loan or any other person.

(e)     On the date hereof, (i) the assets of the Guarantor exceed his liabilities, and (b) the Guarantor is paying his debts as they become due.

9.     No Subrogation. Notwithstanding any payments made by the undersigned pursuant to the provision of this Guaranty, the undersigned shall have no right of subrogation in and to the Note, or any other security held by or available to Lender for the Debt or the payment thereof until the Debt has been paid in full to Lender.

10.     Limitation of Remedies. The Guarantor is hereby prohibited from exercising against Lender or Agent any right or remedy which it might otherwise be entitled to exercise against any one or more (but less than all) of the individual parties constituting Lender, including, without limitation, any right of set-off or any defense.

11.     Miscellaneous.

(a)     Governing Law. This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state without regard to conflicts of laws considerations; and this Guaranty shall be construed without regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted; and no defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New York. The undersigned agrees to submit to personal jurisdiction in the State of New York in any action or proceeding arising out of this Guaranty and, in furtherance of such agreement, the undersigned hereby agrees and consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the undersigned in any such action or proceeding may be obtained within or without the jurisdiction of any court located in New York and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by registered mail to or by personal service at the last known address of the undersigned, whether such address be within or without the jurisdiction of any such court.

5

(b)    Waivers. The Guarantor hereby waives any claim, right or remedy which the Guarantor may now have or hereafter acquire against Borrower that arises hereunder and/or from the performance by the Guarantor hereunder, including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Lender against Borrower or any security which Lender now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise. The foregoing waiver by the Guarantor shall terminate and be of no further force or effect at such time as the entire Debt has been fully and indefeasibly paid to and received by Lender.

(c)    Severability. A determination that any portion of this Guaranty is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Guaranty to any circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other circumstances.

(d)    Notices. All notices, consents, approvals and requests required or permitted hereunder or under any other Loan Document shall be given in writing and shall be effective for all purposes if hand delivered or sent by (a) certified or registered United States mail, postage prepaid, return receipt requested or (b) expedited prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery, and by telecopier (with answer back acknowledged), addressed as follows (or at such other address and a person as shall be designated from time to time by any party hereto, as the case may be, in a written notice to the other parties hereto in the manner provided for in this Section):

| | |
|---|---|
| If to Lender: | LOAN FUNDER LLC, SERIES 7693,<br>645 Madison Avenue, Floor 19,<br>New York, NY 10022 |
| With a copy to: | LaRocca, Hornik, Rosen, & Greenberg<br>83 South Street<br>Freehold, New Jersey 07728<br>Attention: Jonathan L. Hornik, Esq.<br>Facsimile No.: (732) 409-0350 |
| If to Guarantor: | *Richard J. Puleo*<br>*2 7 Nutt Road* |
| With a copy to: | *Phoenixville, PA 19460* |

A notice shall be deemed to have been given: in the case of hand delivery, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a business day; or in the case of expedited prepaid delivery and telecopy, upon the first attempted delivery on a business day.

(e)    Jury Trial Waiver. THE UNDERSIGNED AGREES THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY THE UNDERSIGNED OR LENDER ON OR WITH RESPECT TO THIS GUARANTY OR ANY OTHER LOAN DOCUMENT OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR

THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. LENDER AND THE UNDERSIGNED EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. FURTHER, THE UNDERSIGNED WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS GUARANTY AND THAT LENDER WOULD NOT EXTEND CREDIT TO BORROWER IF THE WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS GUARANTY.

[Remainder of this page intentionally left blank.]

IN WITNESS WHEREOF, the undersigned has executed this Guaranty as of the date first above set forth.

Signed, Sealed, and Delivered in the Presence of:

Name: William B. Stull

**GUARANTOR**

Richard J Puleo, individually

Name:

STATE OF  PA            )
                                     ) ss.:
COUNTY OF LANCASTER

On June 26, 2019 before me personally came Richard J Puleo, who being by me duly sworn, did depose and say that he/she signed this instrument as his/her voluntary act and deed.

NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
William B. Stull, Notary Public
Lancaster County
My commission expires November 18, 2019
Commission number 1162557



*YORK COUNTY RECORDER OF DEEDS*
*28 EAST MARKET STREET*
*YORK, PA  17401*

*Laura Shue - Recorder*
*Tina M. Channell - Deputy*

**Instrument Number - 2019028748**
**Recorded On 7/8/2019 At 3:09:48 PM**
\* **Instrument Type - MORTGAGE**
**Invoice Number - 1328099**
\* **Grantor - LEWISBERRY PARTNERS LLC**
\* **Grantee - LOAN FUNDER LLC SERIES 7693**
**User - TMC**
\* **Customer - SIMPLIFILE LC E-RECORDING**

**Book - 2525   Starting Page - 3369**
**\* Total Pages - 52**

**\* Received By:**

\* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| RECORDING FEES | $107.00 |
| AFFORDABLE HOUSING | $11.50 |
| PIN NUMBER FEES | $300.00 |
| BLIGHT DEMOLITION FUND | $15.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $479.25 |

**PARCEL IDENTIFICATION NUMBER**
270002901470000000
270002901480000000
270002901490000000
270002901500000000
**Total Parcels: 30**

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
## PLEASE DO NOT DETACH
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **2525** Page: **3420**

Inst. # 2019028748 - Page 1 of 52
Case 21-10327-elf Doc 71-2 Filed 04/07/21 Entered 04/07/21 17:04:33 Desc
Exhibit A: Loan Documents Part 1 Page 19 of 35

Page **1** of **47**

PREPARED BY AND, AFTER
RECORDING, RETURN TO:

LaRocca, Hornik, Rosen, & Greenberg
83 South Street
Freehold, New Jersey 07728
Attention: Jonathan L. Hornik, Esq.

| CERTIFIED PROPERTY IDENTIFICATION NUMBER | |
|---|---|
| S | |
| 270002901470000000 | FRVW TP |
| 270002901480000000 | FRVW TP |
| 270002901490000000 | FRVW TP |
| 270002901500000000 | FRVW TP |
| 270002901510000000 | FRVW TP |

Parcel No.

This mortgage is an open end mortgage that secures future advances

## OPEN – ENDED COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND FIXTURE FILING

THIS MORTGAGE, made as of this **June 26, 2019** by **LEWISBERRY PARTNERS LLC, a** Pennsylvania limited liability company having its principal place of **27 Nutt Road, Phoenixville, PA 19460** ("Mortgagor" or "Borrower", as the case maybe), and from **LOAN FUNDER LLC, SERIES 7693,** a Delaware limited liability company having its principal place of business at **645 Madison Avenue, Floor 19, New York, NY 10022** (hereinafter referred to as "Mortgagee" or "Lender" as the case maybe).

## W I T N E S S E T H

WHEREAS, Mortgagee has agreed to lend and Mortgagor has agreed to borrow the principal sum of **Eight Million Twenty Five Thousand and 00/100 dollars ($8,025,000.00)** ("Loan"), on the terms and conditions provided herein and in the Loan Documents (as hereinafter defined);

WHEREAS, Mortgagor has executed and delivered to Mortgagee, among other things, that certain Loan and Security Agreement (as same may be amended, restated or modified from time to time, "Loan Agreement") and that certain Promissory Note (as same may be amended, restated or modified from time to time, "Note") both of even date herewith, evidencing the Loan; and

WHEREAS, Mortgagor expects to derive benefit from the Loan and has agreed to secure the Loan by, among other things, the grant of this Mortgage to Mortgagee.

WHEREAS, Mortgagor is indebted to Mortgagee by virtue of a commercial loan transaction (the "Loan") in the sum of **Eight Million Twenty Five Thousand and 00/100 dollars ($8,025,000.00)**as evidenced by (1) a certain Commercial Promissory Note in the principal amount of **Eight Million Twenty Five Thousand and 00/100 dollars ($8,025,000.00)** (as same may be amended, restated, or modified from time to time, the "Note") dated **June 26, 2019** executed by Mortgagor and delivered to Mortgagee, with all amounts remaining unpaid thereon being finally due and payable on **June 26, 2049** and (2) that certain Loan Agreement (as same may be amended, restated, or modified from time to time, "Loan Agreement") of even date herewith;

WHEREAS, the terms and repayment of such obligations of the Mortgagor are set forth in the Note;

WHEREAS, to secure payment and performance of the indebtedness and obligations represented by the Note, the Mortgagor is hereby executing this Mortgage in favor of the Mortgagee;

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Mortgage and Security Agreement

# PROPERTY PARCEL NUMBERS / ADDRESSES

27-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-00-00000 2 KINGSWOOD DR
27-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-00-00000 4 KINGSWWOD DR
27-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-00-00000 6 KINGSWOOD DR
27-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-00-00000 8 KINGSWOOD DR
27-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-00-00000 10 KINGSWOOD DR
27-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-00-00000 12 KINGSWOOD DR
27-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-00-00000 14 KINGSWOOD DR
27-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-00-00000 16 KINGSWOOD DR
27-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-00-00000 18 KINGSWOOD DR
27-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-00-00000 20 KINGSWOOD DR
27-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-00-00000 22 KINGSWOOD DR
27-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-00-00000 24 KINGSWOOD DR
27-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-00-00000 142 SCULLY PLACE
27-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-00-00000 144 SCULLY PLACE
27-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-00-00000 146 SCULLY PLACE
27-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-00-00000 148 SCULLY PLACE
27-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-00-00000 135 SCULLY PLACE
27-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-00-00000 133 SCULLY PLACE
27-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-00-00000 131 SCULLY PLACE
27-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-00-00000 129 SCULLY PLACE
27-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-00-00000 127 SCULLY PLACE
27-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-00-00000 125 SCULLY PLACE
27-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-00-00000 123 SCULLY PLACE
27-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-00-00000 121 SCULLY PLACE
27-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-00-00000 111 SCULLY PLACE
27-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-00-00000 109 SCULLY PLACE
27-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-00-00000 107 SCULLY PLACE
27-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-00-00000 105 SCULLY PLACE
27-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-00-00000 103 SCULLY PLACE
27-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-00-00000 101 SCULLY PLACE

WHEREAS, Mortgagee has agreed to provide financing for the each of the premises located at: **Lots 47 through 96 located in Phase 2 & 3 of the P Lewisberry, PA;** and

WHEREAS, Mortgagor has agreed to grant Mortgagee a mortgage in the Premises as collateral for the refinancing of the premises located at: **Lots 47 through 96 located in Phase 2 & 3 of the P Lewisberry, PA;** and

WHEREAS, Mortgagor represents and warrants that it has full power and authority to execute and deliver the Note, this Mortgage, and all other documents, agreements and instruments required of it by Mortgagee in connection with the making of the Loan (the Note, this Mortgage, Loan Agreement and all such other documents, agreements and instruments executed and delivered by Mortgagor in connection with the Loan being sometimes collectively referred to herein as the "Loan Documents")(all capitalized terms used herein but not defined herein shall have the meaning ascribed in the Loan Agreement).

NOW, THEREFORE, Mortgagor hereby covenants and agrees with Mortgagee as follows:

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that in order to secure Mortgagor's obligations under the Loan Documents, including the payment of principal and interest, late fees, attorneys' fees, costs and disbursements, the full and prompt payment and performance of all of the indebtedness, obligations, covenants, agreements and liabilities of Mortgagor to Mortgagee, together with all interest and other charges thereon, whether direct or indirect, existing, contingent or otherwise, due or to become due, under or arising out of or in connection with the Loan Agreement and any future modifications thereof and any other instruments or documents delivered in connection herewith or therewith and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Mortgagor has mortgaged, granted, bargained, sold, conveyed, aliened, released, transferred, warranted and confirmed, and does hereby mortgage, grant, bargain, sell, convey, alien, release, transfer, warrant and confirm unto Mortgagee, and to all its successors and assigns forever, the following described property (collectively, the "Property"):

A.      The real estate located in County of York, State of Pennsylvania (the "State") more particularly described in Exhibit A attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim, together with all right, title and interest of Mortgagor in and to (a) all streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the real property or the Improvements (as hereinafter defined);

(b) any strips or gores between the real property and abutting or adjacent properties; and (c) all water and water rights, timber, crops and mineral interests pertaining to the real property (such real estate and other rights, titles and interests being hereinafter sometimes called "Land");

B.      All buildings, structures and other improvements or any part thereof, now or hereafter situated on or under the Land and all restorations and replacements thereof ("Improvements");

C.      All fixtures and systems and articles of personal property, of every kind and character, now owned or hereafter acquired by Mortgagor (Mortgagor's successors or assigns), which are now or hereafter attached to the Land or the Improvements, or used in or necessary to complete the proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing, including, but without limiting the foregoing, all of the following items now owned or hereafter acquired by Mortgagor, any and all fixtures, systems, heating, ventilating, air conditioning, refrigerating, plumbing, water, sewer, lighting, generating,

2

cleaning, storage, incinerating, waste disposal, sprinkler, fire extinguishing, communications, transportation (of people or things, including, but not limited to, stairways, elevators, escalators and conveyors), data processing, security and alarm, laundry, food or drink preparation, storage of serving, gas, electrical and electronic, water, and recreational uses or purposes; all tanks, pipes, wiring, conduits, ducts, doors, partitions, floor coverings, wall coverings, windows, window screens and shades, awnings, fans, motors, engines and boilers; motor vehicles; decorative items and art objects; and files , records and books of account (all of which are herein sometimes referred to together as "Accessories");

D.        All (a) plans and specifications for the Improvements; (b) approvals, entitlements and contracts relating to the Land or the Improvements or the Accessories or any part thereof; (c) deposits including, but not limited to, Mortgagor's rights in tenants' security deposits (if any), deposits with respect to utility services to the Land or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Document (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles, notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (d) permits, licenses, franchises, bonds, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (e) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (f) other properties, rights, titles and interests, if any, specified in any Section or any Article of this Mortgage as being part of the Property;

E.        All proceeds, products, consideration, compensation and recoveries, direct or consequential, cash and noncash, of or arising from, as the case may be, (a) the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C) and (D); (b) any sale, lease or other disposition thereof; (c) each policy of insurance relating thereto (including premium refunds); (d) the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law; and (e) any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and

F.        All other interests of every kind and character, and proceeds thereof, which Mortgagor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E) and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests.

TO HAVE AND TO HOLD the Property, unto Mortgagee and Mortgagee's successors, substitutes or assigns, for the uses and purposes herein set forth, forever, together with all rights, privileges, hereditaments and appurtenances in anyway appertaining or belonging thereto, subject only to the "Permitted Encumbrances" listed on Exhibit B attached hereto to the extent that the same are valid, subsisting and affect the Property, free from all rights and benefits under and by virtue of any applicable homestead exemption or similar laws, which said rights and benefits Mortgagor does hereby expressly release and waive.

PROVIDED ALWAYS, that these presents are upon the express condition, that if Mortgagor shall pay unto Mortgagee, its successors or assigns, all Indebtedness due under the terms of the Loan Documents and shall pay and perform the Obligation (as hereinafter defined), without any deduction or credit for any amount payable for taxes in accordance with the terms of the said Note, and hereof, then this mortgage shall cease, determine and become null and void; otherwise to remain in full force and effect.

3

## ARTICLE I.
## THE OBLIGATION

Section 1.1    Mortgagee. The expression "this Mortgage," as used herein, shall mean this Mortgage, and all rights, title, interest, liens, security interests, powers and privileges created hereby or arising by virtue hereof. This Mortgage is given to secure payment and performance of the Obligation, including the indebtedness described in Section 1.2. The word "Mortgagee," as used herein, shall mean from **LOAN FUNDER LLC, SERIES 7693**, a Delaware limited liability company having its principal place of business at **40 West 57th Street, 20th floor, Suite 2040, New York, NY 10019**.

Section 1.2    Obligation. The word "Obligation", "Obligations" or the word "Indebtedness," as used herein, shall mean all of the indebtedness, obligations and liabilities described as follows:

(a)    the indebtedness, obligations and liabilities of Mortgagor arising under any documents evidencing, securing, or now or hereafter executed in connection with the Loan (each a "Loan Document"; collectively "Loan Documents") evidencing the Loan; and

(b)    all other and additional indebtedness, liabilities and obligations, of every kind and character, of Mortgagor now or hereafter existing in favor of Mortgagee, regardless of whether they are direct, indirect, primary, secondary, joint, several, joint and several, liquidated, unliquidated, fixed or contingent, and regardless of whether the same may, prior to their acquisition by Mortgagee, be or have been payable to some other person or entity, it being the intention and contemplation of Mortgagor and Mortgagee that future advances may be made to Mortgagor by Mortgagee for a variety of purposes, that Mortgagor may guarantee (or otherwise become directly or contingently obligated with respect to) the obligations of others to Mortgagee, and that Mortgagee may, from time to time, acquire from others obligations of Mortgagor to such others, or that Mortgagor may otherwise hereafter be or become further indebted to Mortgagee, and that payment and repayment of all of the foregoing are intended to and shall be part of the indebtedness secured hereby; and

(c)    and any and all renewals, modifications, rearrangements, amendments or extensions of all or any part of the indebtedness, obligations and liabilities described or referred to in Subsections 1.2(a), 1.2(b), preceding.

Mortgagor, and each party at any time claiming an interest in or lien or encumbrance against the Property, agrees that all advances made by Mortgagee from time to time under any of the Loan Documents, and all other portions of the Obligation herein referred to, shall be secured by this Mortgage with priority as if all of the same had been advanced, had arisen or become owing or performable on the date hereof, no reduction of the outstanding principal balance under the Loan Agreement shall extinguish, release or subordinate any rights, titles, interests, liens, security interests, powers or privileges intended, created or arising hereunder or under any other Loan Document, and this Mortgage shall remain in full force and effect as to any subsequent advances or subsequently arising portions of the Obligation without loss of priority until the Obligation is fully paid, performed and satisfied in accordance with the Note, as applicable, all agreements and obligations, if any, of Mortgagee for further advances have been terminated and this Mortgage has been released of record by Mortgagee.

4

## ARTICLE II.
## CERTAIN REPRESENTATIONS, WARRANTIES
## AND COVENANTS OF MORTGAGOR

Section 2.1    Payment and Performance of Obligations. Mortgagor shall pay and perform the Obligations when due in accordance with the provisions of the Loan Documents; and if any Default (hereinafter defined) shall be made in the performance of any of the Obligations, Mortgagee shall have the remedies granted to Mortgagee hereunder, under the Loan Documents and under applicable law.

Section 2.2    Indebtedness Secured. This Mortgage has been given and is intended to secure the full and prompt payment and performance of each and all of the Obligations and any renewal, extension, modification or replacement of any of the Obligations. Except as otherwise provided herein, this Mortgage shall remain in full force and effect with respect to all of the Property until all the Obligations shall have been paid and performed in full. If Mortgagor shall well and truly pay and perform the Obligations at the time and times, and in the manner mentioned in the Loan Documents and shall well and truly abide by and comply with each and every term, covenant and condition set forth in the Loan Documents, then this conveyance shall be and become null and void and shall be released at the expense of Mortgagor but if there shall be any Default, then the Obligations shall become immediately due and payable at the option of Mortgagee, without any notice to Mortgagor or any other party, all of which notices of Default or notices of intent to accelerate or acceleration hereby are waived.

Section 2.3    Title to Property.

(a)    The Mortgagor represents and warrants that: (i) it has an indefeasible estate in fee simple in the Land and Improvements and Accessories; (ii) it has the good and unrestricted right, full power and lawful authority to mortgage the Property; (iii) it has obtained any and all consents and approvals necessary or required for the making of this Mortgage; and (iv) the making of this Mortgage will not violate any contract or agreement to which the Mortgagor is a party.

(b)    Mortgagor does hereby and shall forever warrant and defend its title to and fee simple interest in the Property and the validity and first priority of the lien of this Mortgage to Mortgagee and its successors and assigns, against all claims and demands whatsoever of any Person (hereinafter defined). There are no defenses or offsets or counterclaims to this Mortgage or to any of the Obligations.

(c)    Mortgagor represents and warrants to Mortgagee that any building or portion of any building hereafter constructed on the Land shall be in compliance with all applicable zoning and building codes, ordinances and regulations, shall lie wholly within the boundaries of the Land, and shall be an independent and self-contained operating unit.

(d)    Mortgagor shall execute, acknowledge and deliver to Mortgagee any documents and instruments which Mortgagee may reasonably request from time to time for the better assuring, conveying, assigning, transferring, confirming or perfecting Mortgagee's security and rights under this Mortgage.

Section 2.4    Liens. Mortgagor shall not, directly or indirectly, create or suffer or permit to be created, or to stand, against the Property or any portion thereof, or against the rents, issues and profits therefrom, any lien, charge, mortgage, deed of trust, adverse claim or other encumbrance (herein collectively referred to as a "lien"), whether senior or junior in lien to this Mortgage, other than the lien of this Mortgage and the Permitted Encumbrances; provided, however, that nothing contained in this Section 2.4 shall require

5

Mortgagor to pay any real estate taxes or other Impositions (as hereinafter defined) prior to the time when same are required to be paid under this Mortgage. Mortgagor will keep and maintain the Property free from all liens arising in connection with the supply of labor or materials relating to the construction, alteration, modification or repair of the Improvements or the Property. Mortgagor agrees to discharge the same of record by payment or bond within thirty (30) days after the filing thereof. Notwithstanding anything to the contrary contained herein, in no event shall Mortgagor do or permit to be done, or omit to do or permit the omission of, any act or thing, where such act or omission would impair the security of this Mortgage.

Section 2.5    Impositions. Mortgagor shall pay, at least five (5) days before the date due, all real estate taxes, personal property taxes, assessments, water and sewer rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Land, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever, general and special, ordinary and extraordinary, foreseen and unforeseen, which shall be assessed, levied, confirmed, imposed or become a lien upon or against the Property or any part thereof, or which shall become payable with respect thereto. Mortgagor shall deliver to Mortgagee, within twenty (20) days after the due date of each payment in connection with the Impositions or any assessment for local improvements ("Assessment"), the original or a true photostatic copy of the official receipt evidencing such payment or other proof of payment satisfactory to Mortgagee.

Section 2.6    Insurance.

(a)    Mortgagor shall provide, at its sole cost and expense, and keep in force for the benefit of itself and Mortgagee, with respect to the Land, Improvements and Accessories: (i) insurance against loss or damage by fire, other hazards by so-called "all risk" and "extended coverage," and such other casualties and hazards as Mortgagee shall reasonably require from time to time; (ii) flood insurance if the Property is located in a flood hazard area and earthquake and/or hurricane insurance to the extent that owners of similar buildings in the same county as the Property maintain such insurance; (iii) war risk insurance, when obtainable from the United States government or any agency thereof; (iv) rent insurance; (v) comprehensive general liability insurance against claims for bodily injury, death or property damage in an amount not less than $1,000,000 per occurrence and $2,000,000 in the aggregate; (vi) water damage legal liability insurance; (vii) workers' compensation insurance as required by law, if and when applicable; (viii) business interruption insurance; (ix) prior to any construction on the Property, builder's risk insurance in an amount not less than the replacement value of the Collateral (defined in the Loan Agreement); and (x) such other insurance on the Property or any part thereof or any replacements or substitutions therefor, as Mortgagee may reasonably require.

(b)    The policies of insurance required by Subsection 2.6(a) hereof shall be with companies, in forms and amounts, and for such reasonable periods as Mortgagee shall require from time to time, and shall insure the respective interests of Mortgagor and Mortgagee. The full amount of the proceeds of any insurance covering real property or tangible personal property subject to a lien or security interest in favor of Mortgagee granted pursuant to any of the Loan Documents in the case of each separate loss in excess of Ten Thousand and 00/100 ($10,000.00) Dollars (a "Major Loss"), other than the proceeds from the insurance required under clauses (vi), and (vii) of Subsection 2.6(a) hereof, shall be payable to Mortgagee pursuant to a non-contributing loss payee endorsement satisfactory to Mortgagee. Certificates of Insurance and true photocopies of the original policies and renewals thereof covering the risks required to be insured against in accordance with this Mortgage, bearing satisfactory evidence of payment of all premiums thereon for the succeeding one year period, shall be delivered to and held by Mortgagee, and within five (5) days of demand by Mortgagee Mortgagor shall deliver to Mortgagee the original policies and renewals, replacements or endorsements thereof and shall assign to Mortgagee said

6

policies of insurance as additional security for the indebtedness and other obligations secured hereby. At least twenty (20) days prior to the expiration of each policy required to be provided by Mortgagor, Mortgagor shall deliver Certificates of Insurance evidencing renewal or replacement thereof along with true photocopies of any endorsements or any renewal or replacement policies to Mortgagee with satisfactory evidence of payment of all premiums thereon. All insurance policies required hereunder shall be issued by companies of good standing in the State and rated by A.M. Best's Insurance Reports (or any successor publication of comparable standing) as A VIII or better (or the equivalent rating in the case of a successor publication).

(c)     All insurance policies required in accordance with this Mortgage shall: (1) include effective waivers by the insurer of all rights of subrogation against Mortgagor, Mortgagee, any lessee or other occupant of all or any part of the Property, or any other Person which controls, is controlled by or is under common control with any of the foregoing; (2) provide that the full amount of the proceeds of such insurance (other than the proceeds from the insurance required under clauses (vi) and (vii) of Subsection 2.6(a) hereof) shall, in the case of each separate Major Loss, be payable notwithstanding: (A) any act, failure to act or negligence of or violation of warranties, declarations or conditions contained in such policy by any named insured; (B) the occupation or use of the Improvements or the Land for purposes more hazardous than permitted by the terms thereof; (C) any foreclosure or other action or proceeding taken by Mortgagee pursuant to any provision of this Mortgage; or (D) any change in title to or ownership of the Property; (3) provide that no cancellation, reduction in amount or material change in coverage thereof shall be effective until at least thirty (30) days after receipt by Mortgagee of written notice thereof; (4) include "replacement cost endorsements" if available; and (5) be reasonably satisfactory to Mortgagee in all other respects. Mortgagor shall not permit any condition to exist with respect to the Property which would wholly or partially invalidate any of the insurance thereon.

(d)     Mortgagee shall have the right but not the obligation, on behalf of Mortgagor, to adjust and compromise any claims under such insurance in the case of a Major Loss, collect and receive the proceeds thereof and execute and deliver all proofs of loss, receipts, vouchers, checks, drafts, releases and other documents in connection with such claims. Mortgagee is hereby irrevocably appointed attorney-in-fact for Mortgagor (which appointment is coupled with an interest) for such purposes, and Mortgagor shall, upon request of Mortgagee, promptly execute any proofs of loss, receipts, vouchers, checks, drafts, releases, and other documents in connection with such claims.

(e)     Mortgagee may deduct from the proceeds of the insurance required to be obtained by Mortgagor pursuant to Subsection 2.6(a) hereof, other than the insurance required under clauses (vi) and (vii) thereof, any expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred by it in connection with obtaining such proceeds, and Mortgagee may, at its option, release the balance of such proceeds to Mortgagor for the restoration of the Property ("Restoration") or apply the balance of such proceeds in reduction or satisfaction of all or part of the Obligations, whether or not then due and payable (in such order of priority as Mortgagee shall elect). Upon the occurrence of any Default all of Mortgagor's right, title and interest in and to all such policies, including unearned premiums thereon, shall be deemed assigned to Mortgagee. The application of such insurance proceeds toward the payment or performance of the Obligations shall not be deemed a waiver by Mortgagee of its right to receive payment or performance of the remainder of the Obligations and the interest thereon in accordance with the provisions of the Loan Documents.

(f)     In the event of a sale, transfer or other disposition by Mortgagee of any of the property of Mortgagor, the purchaser, assignee or transferee of such property shall succeed to all of the rights of Mortgagee, including any right to unearned premiums, in and to all policies of insurance which Mortgagor is required to maintain under this Section 2.6 and to all proceeds of such insurance.

7

(g)     Mortgagor's policies of insurance may be maintained under "blanket policies" insuring the Property and other property owned by Mortgagor, provided that such blanket policies shall: (i) separately set forth the amount of the insurance applicable to the Property (except as to the insurance required under clauses (iv), (v) and (vi) of Subsection 2.6(a) hereof), (ii) provide a separate aggregate for each location insured under such policy in an amount not less than $2,000,000, (iii) otherwise comply with the provisions of this Section, and (iv) afford the same protection to Mortgagee as, in Mortgagee's judgment, would be provided by policies individually applicable to the Property.

(h)     Mortgagor shall not obtain or permit to be obtained separate insurance concurrent in form or contributing in the event of loss with the insurance Mortgagor is required to maintain under the provisions of this Section.

Section 2.7     Loan to Value Covenant. If at any one or more time(s) during the term of the Note the then aggregate outstanding and committed principal amount of the Note, plus accrued interest and fees thereon, plus all amounts outstanding under any debts secured by prior liens on the Mortgaged Property, is greater than seventy five percent (75%) of the value of the Mortgaged Property, as determined by Mortgagee based upon Mortgagee's review of any appraisal and such other factors as Mortgagee may deem appropriate, then Mortgagor shall within thirty (30) days following a request by Mortgagee, prepay the Note by an amount sufficient to cause the then outstanding principal amount of the Note, plus accrued interest and fees thereon, to be reduced to an amount equal to or less than seventy five percent (75%) of the value of the Mortgaged Property. The inability of Mortgagor to reduce the principal balance of the Note within thirty (30) days following request by Mortgagee shall be, at Mortgagee's option, an Event of Default, hereunder.

Section 2.8     Condemnation.

(a)     Mortgagor shall give notice to Mortgagee immediately upon Mortgagor's learning of the commencement of any action or proceeding to take all or any part of the Property by exercise of the right of condemnation or eminent domain or of any action or proceeding to close or to alter the grade of any street on or adjoining the Land. Mortgagee may participate together with Mortgagor in any such actions or proceedings in the name of Mortgagee or, whenever necessary, in the name of Mortgagor, and Mortgagor shall deliver to Mortgagee such instruments as Mortgagee shall request to permit such participation. Mortgagor shall not settle any such action or proceeding or agree to accept any award or payment without the prior consent of Mortgagee (which consent Mortgagee may deny in its sole discretion), and the total of all awards made or allowed with respect to all right, title and interest in and to the Property or the portion or portions thereof taken or affected by such condemnation or eminent domain proceeding and any interest thereon (hereinafter collectively called the "Award") is hereby assigned to and shall be paid to Mortgagee and the amount received shall be retained and applied as provided in Subsection 2.7(b) hereof.

(b)     The Obligations may be accelerated at the option of Mortgagee as a result of the exercise of the right of condemnation or eminent domain in respect of all of the Property or any part of the Property which is currently or may prior to the maturity date established in the Note be utilized in the operation of Mortgagor's business or which may, in the sole judgment of Mortgagee, make impracticable the restoration of the Property in a manner which will permit the Property to be used for the purposes for which it was used prior to the exercise of such right of condemnation or eminent domain, in which event Mortgagee shall retain and apply the Award toward payment and performance of the Obligations (in such order of priority as Mortgagee shall elect); provided, however, that to the extent that the Award received by Mortgagee shall exceed the amount required to satisfy in full the then total amount of the Obligations, Mortgagee shall pay over to Mortgagor the amount of such excess and provided, further, that until the actual vesting of title in such proceeding, the Obligations shall continue unimpaired. If there is a taking

8

of a portion of the Property in any such proceeding and Mortgagee does not accelerate the Obligations, then at the option of Mortgagee, the Award shall be: (i) retained and applied by Mortgagee toward the payment or performance of the Obligations in such order of priority as Mortgagee may elect; or (ii) paid over in whole or in part to pay or reimburse Mortgagor for the cost of restoring or reconstructing the Improvements and the Accessories in a manner and on conditions satisfactory to Mortgagee. In no event shall Mortgagee be required to satisfy this Obligation until the Obligations are fully paid and Mortgagee shall not be required to release from the lien of this Mortgage until the Obligations are fully paid any portion of the Property so taken until Mortgagee receives the entire amount of Award for the portion so taken.

(c)     The application of the Award toward payment or performance of the Obligations shall not be deemed a waiver by Mortgagee of its right to receive payment or performance of the balance of the Obligations in accordance with the provisions of the Loan Documents. Mortgagee shall have the right, but shall be under no obligation, to question the amount of the Award, and Mortgagee may accept same without prejudice to the rights that Mortgagee may have to question such amount. In any such condemnation or eminent domain action or proceeding Mortgagee may be represented by attorneys selected by Mortgagee, and all sums paid by Mortgagee in connection with such action or proceeding (including, without limitation, attorneys' fees and disbursements) shall, on demand, be immediately due from Mortgagor to Mortgagee and the same shall be added to the Obligations and shall be secured by this Mortgage.

(d)     Notwithstanding any taking by condemnation or eminent domain, closing of, or alteration of the grade of, any street or other injury to or decrease in value of the Property by any public or quasi-public authority or corporation, the Obligations shall continue to bear interest at the rate payable pursuant to the Note until the Award shall have been actually received by Mortgagee, and any reduction in the Obligations resulting from the application by Mortgagee of the Award shall be deemed to take effect only on the date of such receipt.

Section 2.9     Restoration.     If:  (a) the Improvements or Accessories shall be damaged or destroyed, in whole or in part, by fire or other casualty, or by any taking in condemnation proceedings or the exercise of any right of eminent domain; and (b) Mortgagee releases or agrees to release to Mortgagor the proceeds of any insurance payable to Mortgagee or the proceeds of the Award, less any expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred by Mortgagee in obtaining same, and upon conditions satisfactory to Mortgagee; then Mortgagor shall promptly restore, replace or rebuild the same to as nearly as possible the value, quality and condition they were in immediately prior to such fire or other casualty or taking, with such alterations or changes as may be approved in writing by Mortgagee. Mortgagor shall give immediate notice to Mortgagee of any damage or destruction to the Property by fire or other casualty.

Section 2.10     Deposits for Impositions and Insurance.     Notwithstanding anything to the contrary contained in any of the Loan Documents, upon demand by Mortgagee at any time and from time to time, Mortgagor shall deposit with Mortgagee on the first day of each month an amount equal to one twelfth (1/12th) of the sum of (collectively, the "Annual Payments"); (i) the aggregate annual payments for the Impositions; (ii) the annual insurance premiums on the policies of insurance required to be obtained and kept in force by Mortgagor under this Mortgage; and (iii) all other periodic charges (other than interest and principal under the Note) arising out of the ownership of the Property or any portion thereof which are or with notice or the passage of time or both will become a lien against the Property or any part thereof. In addition, upon demand by Mortgagee at any time and from time to time, Mortgagor shall deposit with Mortgagee such sum of money which, together with such monthly installments, shall be sufficient to pay all of the Annual Payments at least forty-five (45) days prior to the due date thereof. If the amount of any of the

9

Annual Payments are not ascertainable at the time any deposit is required to be made, the deposit shall be made on the basis of Mortgagee's estimate thereof, which Mortgagee may change from time to time. The funds so deposited with Mortgagee shall, provided that no Default shall have occurred under this Mortgage, be applied in payment of all of the Annual Payments when due to the extent that Mortgagor shall have deposited funds with Mortgagee for such purpose. In the event of any Default the funds deposited with Mortgagee may, at the option of Mortgagee, be retained and applied toward the payment of any or all of the Obligations, in such order of priority as Mortgagee shall determine, but no such application shall be deemed to have been made by operation of law or otherwise until actually made by Mortgagee. The whole of the Obligations shall become due and payable at the option of Mortgagee after the failure of Mortgagor to deliver payment of any of such deposits or after the failure of Mortgagor to deliver to Mortgagee, within ten (10) days after request by Mortgagee, a statement certified by an authorized officer of Mortgagor, specifying the current amounts of all of the Annual Payments. At any time when deposits are required to be made under this Section 2.9, Mortgagor shall furnish Mortgagee with a bill for each of the Annual Payments and/or such other documents necessary for their payment at least forty-five (45) days prior to the date they first become due. Upon an assignment of this Mortgage, Mortgagee shall have the right to pay over the balance of such deposits in its possession which have not been applied to the Obligations to the assignee, and thereupon Mortgagee shall be completely released from all liability with respect to such deposits and Mortgagor shall look solely to the assignee in reference thereto. The provisions of the preceding sentence shall apply to each and every assignment or transfer of such deposits to a new assignee.

Mortgagee agrees not to exercise its rights under this Section provided that no Default has occurred and provided that Mortgagor has at all times fully, faithfully and timely complied with all of the provisions of Sections 2.5 and 2.6 of this Article. Nothing contained herein shall be deemed to extend the maturity date for the Loan established in the Note.

### Section 2.11    Maintenance and Alterations.

(a)    Mortgagor shall put, keep and maintain the Land, Improvements and Accessories, and the sidewalks, curbs and alleys adjoining or abutting the same in the same or better order, condition and repair as they were in on the date hereof, and Mortgagor shall make or cause to be made, as and when the same shall become necessary, all structural and non-structural repairs, whether exterior or interior, ordinary or extraordinary, foreseen or unforeseen in a good and workmanlike manner. Mortgagor shall not commit or suffer any waste or abandonment of the Land, the Improvements or Accessories, and shall not demolish or remove or permit the demolition or removal of the Improvements or Accessories, or any part thereof, without the prior consent of Mortgagee in each instance.

(b)    Mortgagor shall not make any alterations to all or any part of the Improvements or Accessories, or construct additions to all or any part of the Improvements or construct any new or additional buildings on the Property, without the prior consent of Mortgagee in each instance, and then only upon terms and conditions satisfactory to Mortgagee.

### Section 2.12    Compliance with Laws.

(a)    Mortgagor shall promptly comply with, or cause to be complied with, all present and future laws, statutes, ordinances, rules, regulations and other requirements of all governmental authorities whatsoever having jurisdiction of or relating to all or any part of the Property and the sidewalks, curbs and alleys adjoining or abutting the Land, and the condition, repair, maintenance, use and occupation thereof if non-compliance therewith would result in imposition of any fine, penalty, lien or criminal liability on Mortgagor or the Property, or would result in commencement of proceedings for foreclosure or forfeiture of Mortgagor's interest in the Property; and Mortgagor shall promptly make, or

10

cause to be made, all changes, alterations and improvements to the Property necessary to comply with all such present and future laws, statutes, ordinances, rules, regulations and other requirements to the extent aforesaid. Mortgagor shall operate the Property in compliance with all applicable laws, statutes, ordinances, rules, regulations and other legal requirements. Mortgagor shall not initiate, support, assist or acquiesce in any change in the zoning classification of the Property or any part thereof, without the prior consent of Mortgagee.

(b) Mortgagor shall promptly perform and observe, or cause to be performed and observed, all of the terms, covenants and conditions of all instruments of record affecting the Property, non-compliance with which may affect the security of this Mortgage, or shall impose any duty or obligation upon Mortgagor or any tenant or other occupant of the Property or any part thereof, and Mortgagor shall do or cause to be done all things necessary to preserve intact and unimpaired any and all easements, appurtenances and other interests and rights in favor, or of constituting any portion of, the Property.

(c) Notwithstanding anything to the contrary contained herein, Mortgagor shall not use or permit the use of the Property in any manner which would impair or adversely affect the value or utility of the Property or increase the risk of fire or other casualty.

Section 2.13   Leasing.

(a) Mortgagor shall not, without Mortgagee's prior approval in each instance, which approval shall not be unreasonably withheld or delayed: (i) enter into or change, amend or modify, in any manner whatsoever, any Lease, License or other agreement for the rental or occupancy of all or any portion of the Property (each a "Lease"); (ii) terminate or cancel, or accept a surrender or suffer or permit any cancellation, termination or surrender or suffer or permit any cancellation, termination or surrender of, any Lease, in any manner whatsoever or (iii) receive, collect or accept, or permit the receipt, collection or acceptance of, any prepayment of rent or other charges under any Lease for more than one month, except that Mortgagor may, at the time of the execution of any Lease, accept rent security deposits, which shall be held by Mortgagor in accordance with Subsection 2.12(b) hereof.

(b) Mortgagor shall at all times fully and promptly comply with, keep and perform all of the terms, covenants, provisions and conditions of any and all Leases on the part of the landlord thereunder to be complied with, kept and performed, and will not do or permit anything to be done which will constitute a breach of any of the terms, covenants, provisions and conditions of any of such Leases. Mortgagor shall enforce the performance and observance of each and every term, covenant, provision and condition of each and every Lease to be performed or observed on the part of the tenant thereunder. Mortgagor shall give prompt notice to Mortgagee of: (i) any notice received by Mortgagor of any default by the landlord or the lessee under any Lease; (ii) the commencement of any action or proceeding by any tenant or lessor the purpose of which shall be the cancellation of any Lease or a diminution or abatement of the rent payable thereunder; or (iii) the interposition by any tenant of any defense or counterclaim in any action or proceeding brought by Mortgagor against such tenant; and Mortgagor will cause a copy of any process, pleading or notice received or served by Mortgagor in reference to any such action, defense or claim to be promptly delivered to Mortgagee. Mortgagor shall hold in trust all security deposits and advance rent given on account of any Lease, and deposit such security in a bank or trust company and shall not mingle such funds with other funds. Mortgagor shall repay or apply such funds only in accordance with the provisions of the applicable Leases.

Section 2.14   Assignment of Rents. Mortgagor hereby absolutely and unconditionally assigns to Mortgagee all of Mortgagor's right, title and interest in and to each Lease whether now existing or

11

hereafter entered into, together with the room revenues, occupancy charges, issues and profits ("Rents") of each such Lease as further security for the payment and performance of the Obligations, and Mortgagor grants to Mortgagee the right to enter the Property for the purpose of collecting the same and to let the Property, or any part thereof, and to apply said Rents after payment of all necessary charges and expenses, on account of the Obligations. This assignment and grant shall continue in effect until the Obligations are fully paid and performed. Mortgagee hereby waives the right to enter the Property for the purpose of collecting Rents, and Mortgagor shall be entitled to collect, receive and use said Rents until the occurrence of a Default under this Mortgage. Mortgagor shall, from time to time after request by Mortgagee, execute, acknowledge and deliver to Mortgagee, in form satisfactory to Mortgagee, separate assignments confirming the foregoing assignment. Mortgagee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Mortgagor under any Lease or other agreement affecting all or any part of the Property, and Mortgagor hereby agrees to indemnify Mortgagee for and save it harmless from, any and all liability arising from any such Lease or other agreement or any assignments thereof, and no assignment of any such Lease or other agreement shall place the responsibility for the control, care, management or repair of all or any part of the Property upon Mortgagee, nor make Mortgagee liable for any negligence in the management, operation, upkeep, repair or control of all or any part of the Property resulting in injury, death or property damage. Mortgagee or the receiver shall be liable to account only for rents and profits actually received by Mortgagee or the receiver as the case may be.

## Section 2.15    No Claims Against Mortgagee.

(a)    Nothing contained in this Mortgage shall constitute any consent or request by Mortgagee, express or implied, for the performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof, or be construed to permit the making of any claim against Mortgagee in respect of labor or services or the furnishing of any materials or other property or any claim that any lien based on the performance of such labor or services or the furnishing of any such materials or other property is prior to the lien of this Mortgage.

(b)    If Mortgagor shall request Mortgagee's approval or consent to any matter and Mortgagee shall fail or refuse to give such consent or approval, Mortgagor shall not be entitled to any damages for any withholding or delay of such approval or consent by Mortgagee, it being intended that Mortgagor's sole remedy shall be an action for injunction or specific performance and that such remedy shall be available only in those cases where Mortgagee shall have expressly agreed in writing not to unreasonably withhold its consent or approval or where as a matter of law Mortgagee may not unreasonably withhold its consent or approval.

## Section 2.16    Mortgagee's Right to Perform Mortgagor's Covenants.

(a)    If Mortgagor shall fail to fully and promptly pay, perform or observe any of the Obligations prior to the expiration of any applicable grace period, then, in any such event, Mortgagee may, at its option, but without any obligation to do so, and without waiving or releasing Mortgagor from any of the Obligations, pay any Obligation or cost or perform any Obligation or act or take such action as Mortgagee deems necessary or desirable in order to cause such Obligation to be paid, performed or observed, as the case may be. Mortgagor hereby expressly grants to Mortgagee, and agrees that Mortgagee shall have, the absolute and immediate right to enter in and upon the Property or any part thereof to such extent and as often as Mortgagee, in its sole discretion, deems necessary or desirable for such purpose. Mortgagee may pay and expend such sums of money as Mortgagee, in its sole discretion, deems necessary or desirable for any such purpose, and Mortgagor hereby agrees to pay to Mortgagee, on demand, all such sums so paid or expended by Mortgagee, together with interest thereon from the date of each such payment or expenditure at the Default Rate established in the Note (hereinafter, the "Default

12

Rate"). Any interest which has been paid by Mortgagor to Mortgagee pursuant to this Section 2.15 in excess of the maximum interest rate permitted by law shall be deemed payment in reduction of the principal amount of the Obligations. All sums paid or expended by Mortgagee pursuant to this Section 2.15, and the interest thereon, shall be added to and included in the Obligations and shall be secured by the lien of this Mortgage.

(b)     Mortgagor hereby irrevocably appoints Mortgagee its true and lawful attorney-in-fact in its name or otherwise, to do any and all acts and to execute any and all documents which may be reasonably necessary or, in the opinion of Mortgagee, desirable to preserve any rights of Mortgagor in, to or under the Leases or to effectuate any rights of Mortgagee under this Section 2.15 or contained elsewhere in this Mortgage. The foregoing power of attorney is coupled with an interest.

Section 2.17     Certificates of Mortgagor. Mortgagor, upon request of Mortgagee, shall certify to Mortgagee or to any proposed assignee of this Mortgage, by an instrument in form satisfactory to Mortgagee, duly acknowledged, the amount then owing on the obligations, the date to which any interest thereon has been paid, and whether any offsets or defenses exist against payment thereof or performance of any Obligation, within five (5) days if the request is personally delivered, or within seven (7) days if the request is made by mail. Mortgagee and any proposed assignee of this Mortgage shall have the right to rely on such certification.

Section 2.18     Inspection and Financial Reports. Mortgagee and its authorized agents and employees shall have the right, at Mortgagee's option, to enter into the Property at all reasonable times for the purpose of inspecting the same. Mortgagor will furnish to Mortgagee, within thirty (30) days after a request therefor, a detailed statement in writing, covering the period of time specified in such request, showing all income derived from the operation of the Property, and all disbursements made in connection therewith, and containing a list of the names of all tenants and occupants of the Property, the portion or portions of the Property occupied by each such tenant and occupant, the rent and other charges payable under the terms of their leases or other agreements and the period covered by such leases or other agreements.

Section 2.19     Accounting and Other Information. Mortgagor will keep books and records of account in accordance with generally accepted accounting principles, in which full, true and correct entries shall be made of all dealings and transactions relative to Mortgagor and the Property. Said books and records of account shall be made available to Mortgagee, at an office of Mortgagor and shall be open to the inspection of Mortgagee and its accountants and its other duly authorized representatives at regular business hours. Mortgagor further covenants that it will, within a reasonable time after any request by Mortgagee, furnish or cause to be furnished to Mortgagee such other information with respect to Mortgagor or the Property as Mortgagee may from time to time reasonably request.

Section 2.20     Assignment. This Mortgage is assignable by Mortgagee without notice to Mortgagor, and any assignment of the same by Mortgagee shall operate to vest in such assignee the same right, title and interest as was vested in Mortgagee and all rights and powers herein conferred, and to release mortgagee from any further obligation or liability hereunder.

Section 2.21     Due on Sale.

(a)     To the extent permitted by law, the Property shall not be sold, transferred or conveyed, in whole or in part, whether voluntarily or involuntarily, by operation of law or otherwise, nor shall Mortgagor lease the entire premises, without, in each instance, the prior written consent of Mortgagee. No mortgage, deed of trust, lien or other encumbrance shall be made or filed against or with respect to the Property, without the prior written consent of Mortgagee. No conditional bill of sale or

13

chattel mortgage shall be made or filed against any Accessories without the prior written consent of Mortgagee. If any such conditional bill of sale or chattel mortgage is made or filed with or without Mortgagee's prior written consent, then after the occurrence of a Default all right, title and interest of Mortgagor in and to all deposits and payments made thereon are hereby assigned to Mortgagee.

(b)    If Mortgagor enters into an installment sale contract or sells, conveys, alienates, assigns, mortgages or transfers the Property, or any part thereof or interest therein in any manner, or leases all or substantially all of the Property or the Improvements, whether voluntary or involuntary, or by operation of law or otherwise, then Mortgagee shall have the right, at its option, at any time thereafter to declare the Obligations immediately due and payable. No waiver of this right shall be effective, nor shall any delay in the exercise thereof operate as a waiver thereof, unless Mortgagee shall have executed and delivered to Mortgagor a written waiver of such right.

(c)    Any sale, assignment, lease, transfer, pledge, or other disposition, whether voluntary or involuntary, by operation of law or otherwise, of any partnership, membership or other ownership interest or shares of stock in Mortgagor, shall be deemed to be a transfer of the Property for the purposes of this Section.

(d)    On the terms and subject to the conditions set forth in this Subsection 2.20(d), within thirty (30) days after (i) receipt by Mortgagee of Mortgagor's written request and (ii) Mortgagor's compliance with the terms and subject to the conditions set forth in this Subsection 2.20(d), portions of the Property (including but not limited to proceeds of any sale permitted under this Subsection 2.20(d) and any other Collateral with respect to the Property encumbered by any other Loan Document) shall be released from the lien of this Mortgage (and UCC-3 partial release statements with respect to such released portion shall be delivered):

(i)    As of the time of Mortgagor's request and at the time of such transfer, no Default has occurred hereunder and remains uncured (nothing herein being deemed to extend any cure period established herein), and no event has occurred that would constitute a Default with the giving of notice, the passage of time or both;

(ii)    The release is to occur prior to the Maturity Date;

(iii)    Mortgagor's delivery to Mortgagee of documentation evidencing a bonafide arms length transaction for the sale of the Property;

(iv)    With respect to each portion of the Property to be released, Mortgagor has obtained all subdivision and other consents, permits and approvals necessary to lawfully release or convey such portion;

(v)    After giving effect to such release and conveyance, the remainder of the Property will continue to have adequate ingress and egress, and adequate capacity for all utilities necessary for development shall be available at the boundary thereof;

(vi)    The instrument to effect such release and conveyance shall be prepared and recorded at no cost to Mortgagee;

(vii)    Simultaneous with the delivery of such release, Mortgagor shall pay to Mortgagee release consideration ("Release Price") of One Hundred Twenty Percent (120%) percent of the allocated loan amount for each of the Released Property, attached hereto as Exhibit "C", or (b) the

14

minimum release amount agreed to by Mortgagee in its sole discretion. The such Release Price shall be applied, upon payment and receipt thereof, in reduction of the outstanding principal amount of the Obligations;

(viii)  Simultaneous with delivery of the Release Price, Mortgagor shall deliver an update endorsement to the policy of title insurance delivered at the closing of the Loan, confirming no change to the Property other than the release of the parcel(s) and

(ix)  Unless the Property is sold in its entirety, simultaneous with delivery of such release, Mortgagor shall deliver an update endorsement to the policies of title insurance delivered at closing of the Loan confirming no change other than the release of such portion of the Property and the release of any other portions previously released pursuant to this Subsection 2.20(d).

## ARTICLE III.
## RESPECTING DEFAULTS AND REMEDIES OF MORTGAGEE

In the event that an Event of Default or default shall have occurred, the remedies available to Mortgagee include, but are not limited to, any and all rights and remedies available hereunder, any and all rights and remedies available at law, in equity, or by statute. Without limiting the foregoing, the rights and remedies available to Mortgagee shall include, but not be limited to, any one or more of the following:

### 3.01 Remedies.

(a) Upon the occurrence of an Event of Default, Mortgagee may:

(i)  Exercise all rights and remedies under the Loan Agreement;

(ii)  Foreclosure. Mortgagee may institute an action of mortgage foreclosure against the Property, or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the Indebtedness, with interest at the highest applicable default rate set forth in the Loan Agreement, together with all other sums due by Mortgagor in accordance with the provisions of this Mortgage and the other Loan Documents, including all sums which may have been loaned by Mortgagee to Mortgagor after the date of this Mortgage, and all sums which may have been advanced by Mortgagee for Taxes, payments on Liens, insurance premiums, utilities or repairs to the Property and other sums which Mortgagee is permitted to advance pursuant to the terms of this Mortgage, all costs of suit, together with interest at such rate on any judgment obtained by Mortgagee from and after the date of any sheriff or other judicial sale until actual payment is made of the full amount due Mortgagee, and all Expenses;

(iii)  Possession. Mortgagee may enter into possession of the Property, with or without legal action, collect therefrom all rentals (which term shall also include sums payable for use and occupation) and, after deducting all costs of collection and administration expense, apply the net rentals to any or all of the following in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect: the payment of any sums due under

15

any Lien, Taxes, insurance premiums and all other carrying charges, and to the maintenance, repair or restoration of the Property, and on account and in reduction of the Indebtedness; in and for that purpose, Mortgagor hereby assigns to Mortgagee all rentals due and to become due under the Leases or rights to use and occupation of the Property hereafter created, as well as all rights and remedies provided in such Leases or at law or in equity for the collection of the rentals. The taking of possession and collections of rents by Mortgagee shall not be construed to be an affirmation of any Leases or acceptance of attornment with respect to any Leases of all or any portion of the Property. Mortgagee, in its discretion, may, as attorney in fact or agent of Mortgagor, or in its own name as Mortgagee and under the powers herein granted, hold, operate, manage and control the Property and conduct the business, if any, thereof, either personally or by its agents, and with full power to use such measures, legal or equitable, as in its discretion or in the discretion of its successors or assigns may be deemed proper or necessary to enforce the payment or security of the avails, rents, issues, and profits of the Property, including actions for the recovery of rent, actions in forcible detainer and actions in distress for rent, and with full power: to cancel or terminate any Leases for any cause or on any ground which would entitle Mortgagor to cancel the same; to elect to disaffirm any Leases which are then subordinate to the lien of this Mortgage; to extend or modify any then existing Leases and to make new Leases, which extensions, modifications and new Leases may provide for terms to expire, or for options to extend or renew terms to expire, beyond the maturity date of the indebtedness hereunder and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such Leases, and the options or other such provisions to be contained therein, shall be binding upon Mortgagor and all persons whose interests in the Property is subject to the lien hereof and upon the purchaser or purchasers at any foreclosure sale, notwithstanding any redemption from sale, discharge of the Mortgage indebtedness, satisfaction of any foreclosure decree, or issuance of any certificate of sale or deed to any purchaser; and to enter into any management, leasing or brokerage agreements covering the Property;

(b) Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any Indebtedness without prejudice to the right of Mortgagee thereafter to bring an action of mortgage foreclosure, or any other action, for any Event of Default by Mortgagor existing at the time the earlier action was commenced;

(c) Mortgagee may require that Mortgagor pay to Mortgagee, on demand, all costs and expenses incurred by Mortgagee in connection with the curing of such Event of Default or the collection of sums secured hereby, including but not limited to cost of any title search and all reasonable attorney's fees;

(d) Any real estate sold pursuant to any writ of execution issued on a judgment obtained by virtue of this Mortgage, or pursuant to any other judicial proceedings under the Mortgage, may be sold in one parcel, as an entirety, or in such parcels, and in such manner or order as Mortgagee, in its sole discretion, may elect;

16