(k)        Insurance Funds. Borrower shall escrow Insurance Premiums in accordance with the Mortgage.

          (l)        All proceeds of any Account(s) and inventory and other Collateral which are delivered to or otherwise received by Lender for application to the Loan provided for herein shall be deemed received as of the date of actual receipt by Lender, and shall be applied by Lender on account of the Obligations upon Lender's receipt of same; provided, however, that no checks, drafts, or other Instruments received by Lender shall constitute payment to Lender unless and until such item of payment has actually been collected by Lender.  For the sole purpose of calculation of interest due to Lender from Borrower, all such proceeds and other payments on account of the Loan provided for in this Agreement, irrespective of the type or form of payment thereof shall not be considered applied on account of the Obligations until actual clearance of such funds.

          (m)        Borrower shall maintain all of its property in good working condition, ordinary wear and tear excepted (including obsolete and abandoned property).

          (n)        Borrower shall, within ten (10) days of the end of each month, deliver to Lender an aging of its Accounts and report of its inventory, and an aging of its accounts payable in such form as may be reasonably acceptable to Lender, and within thirty (30) days of the end of each month, a duly completed accounts receivable reconciliation report in such form as may be reasonably acceptable to Lender.

          (o)        Borrower will continue to hold all necessary licenses and permits for the operations of their business, including but not limited to contract vendor registrations and account numbers.

          (p)        Lender (by any of its officers, employees and agents) shall have the right, at any time or times during Borrower's usual business hours (provided reasonable prior notice is given except if an Event of Default has occurred and is continuing), to inspect the Collateral, all records related thereto (and to make extracts from such records) and the premises upon which any of the Collateral is located, to discuss Borrower's affairs and finances with any person and to verify the amount, quality, quantity, value and condition of, or any other matter relating to, the Collateral.

          (q)    (A)    Lender shall have the right at any time and from time to time, without notice, to notify Account Debtors to make payments to Lender, to endorse all items of payment which may come into its hands payable to Borrower, to take control of any cash or non-cash proceeds of Accounts and of any returned or repossessed goods; to compromise, extend or renew any Account or deal with it as it may deem advisable, and to make exchanges, substitutions or surrenders of Collateral, to notify the postal authorities, after an Event of Default, to deliver all mail, correspondence or parcels addressed to Borrower to Lender at such address as Lender may choose. (B) Borrower herewith appoints Lender or its designee as Attorney-in-Fact to endorse Borrower's name on any checks, notes, acceptances, drafts or any other instrument or document requiring said endorsement and to sign Borrower's name on any invoice or bills of lading relating to any Account, or drafts against its customers, or schedules or confirmatory assignment on Accounts, or notices of assignment, financing statements under the Uniform Commercial Code, and other public records, and in verification of Accounts and in notices to Account Debtors. (C) Lender shall have no obligation to preserve any rights against any Person obligated on any Account, chattel paper, instrument or other item of Collateral.  Lender shall not be permitted to exercise the rights granted to it under the foregoing clauses (A) and (B) prior to an Event of Default.

16

(r)     Borrower will furnish Lender with at least ten (10) days' prior written notice of any change in location of or addition to its chief executive office, the office where it keeps its records concerning its Accounts, its location of Inventory, Equipment and other assets, and other business locations.

(s)     Pay and discharge, and require its subsidiaries to pay and discharge, when due, all taxes, assessments or other governmental charges imposed on them or any of their respective properties, unless the same are currently being contested in good faith by appropriate proceedings and adequate reserves are maintained therefor.

(t)     Operate its properties, and cause those of its subsidiaries to be operated in compliance with all applicable orders, rules and regulations promulgated by the jurisdictions and agencies thereof where such properties are located and duly file or cause to be filed such reports and/or information returns as may be required or appropriate under applicable orders, regulations or law.

(u)     Permit the Lender's representatives and/or agents full and complete access to any or all of the Borrower's and its subsidiaries' properties and financial records, to make extracts from and/or audit such records and to examine and discuss the Borrower's properties, business, finances and affairs with the Borrower's officers and outside accountants.

(v)     Obtain lien releases and lien waivers, in a statutory standard form, as and when Borrower pays contractors, materialmen, laborers providing labor, equipment, or materials to the Mortgaged Property and submit copies of the same to Lender.

(w)     Borrower shall, within ten (10) days of the end of each month, deliver to Lender a report of the Borrower's assets, including without limitation, a report on the status of any development or construction on the Mortgaged Property, in such form as may be acceptable to Lender in its sole discretion.

9.     **Negative Covenants of Borrower.**  To induce Lender to make the Loan pursuant to this Agreement, Borrower hereby covenants and agrees that so long as the Loan shall remain outstanding, Borrower shall not:

(a)     Except for Permitted Encumbrances as set forth in the Mortgage, at any time: (i) create, incur, assume or suffer to exist any mortgage, deed of trust, pledge, security interest, encumbrance, lien or charge of any nature upon or with respect to Borrower's assets and properties or (ii) sign or file under the Uniform Commercial Code of any jurisdiction a financing statement which names Borrower as a debtor or (iii) sign any security agreement authorizing any secured party thereunder to file such financing statement. Borrower further covenants and agrees not to grant any similar negative pledge to any other lender.

(b)     Except as to the sale or disposition of assets which are obsolete or worn out and are no longer used or useful in the conduct of its business, convey, sell, lease, assign, transfer, hypothecate or otherwise dispose of any of its now or hereafter acquired property, business or assets.

(c)     Create, incur, suffer to exist, assume, guaranty, endorse, become a surety, or otherwise become liable for the debt or other obligations of any other Person whether directly or indirectly, or make or incur any advance, purchase commitment, other obligation or loan for the direct or indirect purpose of paying or discharging any such obligations.

(d)    Make any advance, loan, extension of credit or capital contribution to, or purchase any stock, bonds, notes, debentures or other securities of or any assets constituting a business unit of, or make any other investment in any Person.

(e)    Enter into any merger or consolidation or liquidate or wind-up or dissolve itself (or suffer any liquidation or dissolution) or convey, sell, lease, assign, transfer or otherwise dispose (directly or indirectly) of all or substantially all of its property, business or assets or make any material change in its present method of conducting business or permit any corporate guarantor to do any of the foregoing.

(f)    Materially change, amend, alter or modify the bylaws/operating agreement or other governing documents of Borrower or permit any corporate guarantor to do any of the foregoing.

(g)    Enter into or permit any Guarantor to enter into any transaction, including, without limitation, the purchase, sale or exchange of property or the rendering of any service, with any officer, director, shareholder or partner of Borrower or any Guarantor or Affiliate of any of the foregoing.

(h)    Declare or pay any dividends on, distributions on or make any payment on account of, or set apart assets or a sinking fund for the purchase, redemption, defeasance, retirement or other acquisition of, any interest, shares or any class of stock or any warrant or option to purchase any such stock whether now or hereafter outstanding or make any other distribution in respect thereof, directly or indirectly whether in cash or property or obligations.

(i)    Create, incur, suffer to exist any indebtedness, except (i) indebtedness in respect of the Loan; and (ii) indebtedness, if any, outstanding as of the date of this Agreement and shown on the financial statements previously delivered to Lender.

(j)    Transfer, sell, lease or otherwise convey (directly or indirectly) any interest or shares of capital stock or membership or ownership interest in any guarantor.

(k)    Purchase any Inventory or Equipment except in the ordinary course of business from persons customarily in the business of selling such Inventory or Equipment.

(l)    Without prior written consent of Lender, remove the Collateral from its present location, except for the removal of Inventory upon its sale.

(m)    Sell or transfer any Inventory to any Affiliate or subsidiary of Borrower except on arms length terms in the ordinary course of business.

(n)    Sell, lease or transfer any of its equipment (except for abandoned or obsolete equipment) or other assets without the prior written consent of Lender except for sales of inventory in the ordinary course of business to good faith purchasers for value.

(o)    Allow its existence of as a corporation/limited liability company to be other than in good standing and will not, without the prior written consent of Lender, dissolve or liquidate, or merge or consolidate with or acquire or affiliate with any other business entity or form any subsidiary.

(p)    Change its name without furnishing to Lender at least ten (10) days' prior written notice thereof.

(q)     Utilize any trade name, and will not in the future utilize any trade name without furnishing to Lender at least ten (10) days prior written notice thereof.

(r)     Change the nature of its business.

(s)     Sell, assign, transfer or dispose of any of its accounts or notes receivable, with or without recourse, except to the Lender.

(t)     Except after notice to Lender and with Lender's prior written consent, partition or subdivide the Mortgaged Property.

(u)     take any Material Action without the prior written consent of the Independent Manager (or Independent Director, as applicable).

10.     **Events of Default.** The occurrence of any of the following shall constitute an "Event of Default" hereunder:

(a)     failure of Borrower to make any payment of any installment of principal or interest when due under the Note;

(b)     failure of Borrower to pay any other sum when due hereunder or under the Note or any other Loan Document;

(c)     any representation or warranty of Borrower or the Guarantor made herein or in any other Loan Document or in any other writing given to Lender in connection with the Loan shall have been incorrect in any material respect as of the time when the same shall have been made or is nor accurate when a further disbursement is to be made to Borrower;

(d)     the occurrence of an Event of Default under the Mortgage or any other Loan Document;

(e)     the sale, conveyance, assignment, transfer or other disposition or divestiture of Borrower's title to any of the Collateral, or the mortgage or other conveyance of a security interest in, or other encumbrance on any of the Collateral or any interest therein, whether voluntary or involuntary, except as provided herein;

(f)     any merger, consolidation, liquidation or dissolution, or the sale or transfer of all or substantially all of the assets, of the Borrower;

(g)     the transfer (directly or indirectly ) of any of the stock or other ownership interest of Borrower;

(h)     any default in the performance or observance of any term, covenant or agreement to be performed by Borrower or Guarantor in this Loan Agreement or in any Loan Document;

(i)     the use of proceeds of the Loan for any purpose other than the purpose described in Paragraph 6(o);

19

(j)      any Loan Documents for any reason shall cease to be in full force and effect, the liens on the Collateral purported to be created thereby shall cease to be or are not valid and perfected liens having priority over all other liens except any encumbrances specifically permitted under such Loan Documents, or any Guarantor shall assert that it has no liability under the Guaranty to which it is a party;

(k)      one or more judgments or decrees shall be entered against Borrower or any Guarantor (not paid or fully covered by insurance) and all such judgments or decrees shall not have been vacated or discharged, stayed or bonded pending appeal within sixty (60) days from the entry thereof;

(l)      if Borrower or any Guarantor becomes insolvent;

(m)      if Borrower or any Guarantor generally does not pay its debts as they become due and Borrower has failed to make any payment to Lender required by the Loan Documents;

(n)      if Borrower or any Guarantor makes an assignment for the benefit of creditors;

(o)      if Borrower or any Guarantor calls or causes to be called a meeting of creditors for the composition of debts;

(p)      if there shall be filed by or with the consent or authorization of Borrower or any Guarantor a petition in bankruptcy for liquidation or for reorganization, or a custodian, receiver or agent is appointed or authorized to take charge of its properties, or Borrower or any Guarantor authorizes any such action;

(q)      if there shall be filed against Borrower or any Guarantor a petition in bankruptcy, for liquidation, or for reorganization, or a custodian, receiver, or agent is appointed or authorized to take charge of its properties and Borrower or any Guarantor, as the case may be, has not consented to or authorized such action and such action is not dismissed within sixty (60) days; and

(r)      if any license, permit, registration, vendor account or other approval required for the normal operation of Borrower's business or any of the Collateral shall be suspended or shall cease to be in full force and effect.

11.    **Remedies.**

(a)      Upon the occurrence of an Event of Default and at any time thereafter during the continuance of such Event of Default, in addition to any remedies available to Lender under applicable law, Lender may take one or more of the following remedial steps in any order of priority:

(i)      Declare immediately due and payable the outstanding principal balance of the Note, together with all accrued and unpaid interest, fees and other sums or expenses payable thereunder and hereunder and accordingly accelerate payment thereof without presentment, demand, notice of intention to accelerate, notice of acceleration or notice of any other kind, all of which are expressly waived;

(ii)      Take any action at law or in equity against Borrower or the Guarantor (a) to collect the payments then due and thereafter to become due under the Loan Documents, or (b) to enforce performance and observance of any obligation, agreement or covenant of Borrower or such other parties under the Loan Documents;

(iii)    Exercise any and all rights and remedies provided for in the other Loan Documents as they relate to Borrower or any Guarantor.

(iv)    Proceed with or without judicial process to take possession of all or any part of the Collateral provided for herein not already in the possession of Lender and Borrower agrees that upon receipt of notice of Lender's intention to take possession of all or any part of said Collateral, Borrower will do everything reasonably necessary to assemble the Collateral and make same available to Lender at a place to be designated by Lender. Borrower hereby waives any and all rights it may have, by statute, constitution or otherwise to notice from Lender, for Lender to obtain possession, by Court proceedings or otherwise, of the Collateral provided for in this or in any other agreement with Lender;

(v)    So long as Lender acts in a commercially reasonable manner, assign, transfer and deliver at any time or from time to time the whole or any portion of the Collateral or any rights or interest therein in accordance with the Uniform Commercial Code, and without limiting the scope of Lender's rights thereunder, Lender may sell the Collateral at public or private sale, or in any other manner, at such price or prices as Lender may deem best, and either for cash or credit, or for future delivery, at the option of Lender, in bulk or in parcels and with or without having the Collateral at the sale or other disposition. Lender shall have the right to be the purchaser at any public sale. Lender shall have the right to conduct such sales on Borrower's premises or elsewhere and shall have the right to use Borrower's premises without charge for such sales for such time or times as Lender may see fit. Lender is hereby granted license or other right to use, without charge, Borrower's labels, patents, copyrights, rights of use of any name, trade secrets, trade names, trademarks and advertising matter, or any property of a similar nature, as it pertains to the Collateral, in advertising for sale and selling any Collateral and Borrower's rights under all licenses and franchise agreements shall inure to Lender's benefit. Borrower agrees that a reasonable means of disposition of Accounts shall be for Lender to hold and liquidate any and all Accounts. In the event of a sale of the Collateral, or any other disposition thereof, Lender shall apply all proceeds first to all costs and expenses of disposition, including reasonable attorneys' fees, and then to the Obligations of Borrower to Lender;

(vi)    Elect to retain the Collateral or any part thereof in satisfaction of all Obligations due from Borrower to Lender upon notice of such proposed election to Borrower and any other party as may be required by the Uniform Commercial Code; and

(vii)    Lender shall have the right immediately, and without notice or other action to set-off against any of any Borrower's Obligations to Lender any sum owed by Lender in any capacity to any Borrower whether due or not, and Lender shall be deemed to have exercised such right of set-off and to have made a charge against any such sum immediately upon the occurrence of an Event of Default, even though the actual book entries may be made at some time subsequent thereto.

(b)    No remedy conferred in this Agreement or the other Loan Documents is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy conferred herein or now or hereafter existing at law or equity or by statute or otherwise.

12.    **Payment of Expenses.**

(a)    Borrower agrees that it shall pay, within five (5) days after demand, all out-of-pocket expenses incurred by Lender in connection with this transaction including, without limitation, fees and expenses for any title searches required hereunder, recording and filing fees, and reasonable attorneys' fees incurred by Lender in connection with the Loan (including any amendments and

waivers), the preparation of the Loan Documents, the administration of the Loan, inspection of the Mortgaged Property during the course of the Project and the enforcement Lender's rights and remedies under the Loan Documents.

(b)     If Borrower should fail to perform or observe, or to cause to be performed or observed, any covenant or obligation under this Agreement or any of the other Loan Documents, then the Lender, may (but shall be under no obligation to) take such steps as are necessary to remedy any such nonperformance or nonobservance and provide for payment thereof, if any (which shall include, without limitation, steps necessary to cure any defaults of Borrower under any lease).

(c)     All amounts expended or advanced by the Lender pursuant to this Paragraph 12 shall become part of the outstanding principal balance of the Loan and the Note, shall be secured by, among other things, the Mortgage, shall become due and payable by the Borrower upon demand by Lender, and shall bear interest at the Default Rate (such interest to be calculated from the date of such advance by Lender to the date of repayment thereof by Borrower).

13.     **Lender's Right to Assign**.  Lender shall have the right to sell, assign, participate, transfer or dispose of all or any part of its interest in the Loan without the consent or approval of Borrower or Guarantor.

14.     **Default Interest Rate.**  All sums advanced and all expenses incurred by Lender pursuant to any provision of this Agreement or of the other Loan Documents which are not paid when due shall bear interest at the Default Rate set forth in the Note from the date such sum was due until such sum is paid in full and shall be secured by the Mortgage.

15.     **Usury Savings.**  Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid or agreed to be paid hereunder or under the Note exceed the highest lawful rate permitted under applicable usury law (the "Maximum Rate") and the payment obligations of Borrower under this Agreement and the Note are hereby limited accordingly.  If under any circumstances, whether by reason of advancement or acceleration of the maturity of the unpaid principal balance hereof or otherwise, the aggregate amounts paid hereunder or under the Note shall include amounts which by law are deemed interest and which would exceed the Maximum Rate, Borrower stipulates that payment and collection of such excess amounts shall have been and will be deemed to have been the result of a mistake on the part of both Borrower and Lender or the holder of the Note, and the party receiving such excess payments shall promptly credit such excess (only to the extent such payments are in excess of the Maximum Rate) against the unpaid principal balance hereof and any portion of such excess payments not capable of being so credited shall be refunded to Borrower.

16.     **Notices.**  All notices, consents, approvals and requests required or permitted hereunder or under any other Loan Document shall be given in writing and shall be effective for all purposes if hand delivered or sent by (a) certified or registered United States mail, postage prepaid, return receipt requested or (b) expedited prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery, and by telecopier (with answer back acknowledged), addressed as follows (or at such other address and a person as shall be designated from time to time by any party hereto, as the case may be, in a written notice to the other parties hereto in the manner provided for in this Section):

If to Lender:          LOAN FUNDER LLC, SERIES 7693,
                       645 Madison Avenue, Floor 19,
                       New York, NY 10022

22

With a copy to:   LaRocca, Hornik, Rosen, & Greenberg
         83 South Street
         Freehold, New Jersey 07728
         Attention: Jonathan L. Hornik, Esq.
         Facsimile No.: (201) 409-0350


If to Borrower:   LEWISBERRY PARTNERS LLC
         27 Nutt Road
         Phoenixville, PA 19460


With a copy to:

A notice shall be deemed to have been given: in the case of hand delivery, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a business day; or in the case of expedited prepaid delivery and telecopy, upon the first attempted delivery on a business day.

17. **No Waiver.** No course of dealing between Borrower and Lender or any failure or delay on the part of Lender in exercising any rights or remedies hereunder shall operate as a waiver of any rights or remedies of Lender and no single or partial exercise of any rights or remedies hereunder shall operate as a waiver or preclude the exercise of any other rights or remedies hereunder. In the event any agreement contained in this Agreement or the other Loan Documents should be breached and thereafter waived by Lender, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder or thereunder.

18. **Failure to Exercise Rights.** Nothing herein contained shall impose upon Lender any obligation to enforce any terms, covenants or conditions contained in this Agreement and the other Loan Documents. Failure of Lender, in any one or more instances, to insist upon strict performance of any terms, covenants or conditions of this Agreement and the other Loan Documents, shall not be considered or taken as a waiver or relinquishment by Lender of its right to insist upon and to enforce in the future, by injunction or other appropriate legal or equitable remedy, strict compliance with all the terms, covenants and conditions of this Agreement and the other Loan Documents. The consent of Lender to any act or omission by Borrower shall not be construed to be a consent to any other or subsequent act or omission or a waiver of the requirement for Lender's consent to be obtained in any future or other instance.

19. **Prohibition Against Exercise of Rights Applicable Only to Individual Lenders.** Borrower is hereby prohibited from exercising against Lender or Agent any right or remedy which it might otherwise be entitled to exercise against any one or more (but less than all) of the individual parties constituting Lender, including, without limitation, any right of set-off or any defense.

20. **Miscellaneous.**

(a) Choice of Law. **THE LOAN WAS NEGOTIATED IN THE STATE OF NEW YORK, THIS AGREEMENT WAS NEGOTIATED IN THE STATE OF NEW YORK, WAS EXECUTED AND DELIVERED BY BORROWER AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE NOTE WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL**

RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE. THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CHOICE OF LAW CONSIDERATIONS, APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, PRIORITY, ENFORCEMENT AND FORECLOSURE OF THE LIENS AND SECURITY INTERESTS CREATED IN THE REAL PROPERTY COLLATERAL UNDER THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE JURISDICTION IN WHICH THE REAL PROPERTY COLLATERAL IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH JURISDICTION, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN THE VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS, AND THE DEBT OR OBLIGATIONS ARISING HEREUNDER.

(b)    Jurisdiction.    AT LENDER'S ELECTION, TO BE ENTERED IN ITS SOLE DISCRETION, ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BORROWER OR LENDER ARISING OUT OF OR RELATING TO THIS NOTE OR THE OTHER LOAN DOCUMENTS SHALL BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN NEW YORK, AND BORROWER WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING. BORROWER DOES HEREBY DESIGNATE AND APPOINT AN AUTHORIZED AGENT TO RECEIVE AND FORWARD ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND WRITTEN NOTICE OF SAID SERVICE MAILED OR DELIVERED TO BORROWER IN THE MANNER PROVIDED IN THE MORTGAGE, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK. BORROWER (1) SHALL GIVE PROMPT NOTICE TO THE LENDER OF ANY CHANGED ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (2) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK (WHICH OFFICE SHALL BE DESIGNATED AS THE ADDRESS FOR SERVICE OF PROCESS), AND (3) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.

(c)    Borrower and/or Guarantor (as applicable) agrees if Borrower and/or Guarantor is required to make any deduction or withholding of foreign taxes (or taxes imposed because Borrower and/or Guarantor is a foreign person or entity) from any payment due to Lender herein, then the amount payable to Lender upon which such deduction or withholding is based, shall be increased to the extent necessary to ensure that, after all deductions or withholdings, Lender is paid a net amount equal to the amount Lender would have been paid in the absence of such deduction or withholding. At Lender's request, Borrower and/or Guarantor shall provide Lender with documentation adequate to demonstrate payment of such deduction or withholding by Borrower and/or Guarantor under this provision.

(d)     The parties hereto agree that, notwithstanding anything contained herein to the contrary, there shall be required the consent of the Agent, Borrower and Lenders holding Fifty Percent (50%) of the outstanding balance or commitment to lend under the Loan to do any of the following:

(1)     Amend or modify the terms of the Note, this Agreement, the Mortgage and the other Loan Documents or execute any waiver of any material event of default under this Agreement or the other Loan Documents.

(2)     Consent to or permit any substitution, withdrawal or release of any collateral, any Guarantor or any other security securing the payment of the Loan except in accordance with the terms of the Note, this Agreement and the Loan Documents.

(e)     Any condition of this Agreement or any other Loan Document which requires the submission of evidence of the existence or non-existence of a specified fact or facts implies as a condition the existence or non-existence, as the case may be, of such fact or facts, and Lender shall, at all times, be free independently to establish to its reasonable satisfaction and in its absolute discretion such existence or non-existence.

(f)     Borrower and each Guarantor, as the case may be, shall execute and deliver, or cause to be executed and delivered to Lender, all other instruments, certificates and agreements as Lender or Lender's counsel may reasonably require, including, but not limited to, estoppel certificates stating that the Loan is in full force and effect and that there are no defenses or offsets thereto, to effect, confirm or assure the rights, remedies and liens intended to be granted or conveyed to Lender under this Agreement or any other Loan Document.

(g)     A determination that any portion of this Agreement or any of the Loan Documents is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provisions of this Agreement or any Loan Document to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provisions it may apply to other persons or circumstances.

(h)     Without the consent of, or notice to Borrower, Lender may add one or more additional co-agents to this Loan.

(i)     This Agreement supersedes in all respects all prior agreements and understandings relating to the Loan, including, without limitation, the Loan Commitment.

21.     **Successors and Assigns.**

(a)     Borrower may not assign its rights under this Agreement without the prior written consent of Lender. Any such attempted assignment in violation of this Agreement shall be void and of no effect.

(b)     All covenants and agreements in this Agreement shall bind and inure to the benefit of the respective permitted successors and assigns of the parties hereto and any holder or holders of the Note or any portion thereof.

22.     **Waiver of Jury Trial. BORROWER AND LENDER AGREE THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY BORROWER OR LENDER ON OR WITH RESPECT TO THIS AGREEMENT OR ANY**

OTHER LOAN DOCUMENT OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. BORROWER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. FURTHER, BORROWER WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. BORROWER ACKNOWLEDGES AND AGREES THAT THIS SECTION IS A SPECIFIC AND MATERIAL ASPECT OF THIS AGREEMENT AND THAT LENDER WOULD NOT EXTEND CREDIT TO BORROWER (AS APPLICABLE) IF THE WAIVERS SET FORTH IN THIS SECTION WERE NOT A PART OF THIS AGREEMENT.

23. **Releases of Collateral.**

(a) The Lender may release, regardless of consideration, the obligation of any Person or Persons liable for payment of any of the Obligations secured hereby, or may release any part of the Mortgaged Property or any other collateral now or hereafter given to secure the payment of the Obligations or any part thereof, without impairing, reducing or affecting the obligations of the Borrower or Guarantors under the Loan Documents.

(b) Within thirty (30) days of Borrower's request, provided: (i) Borrower is not in default hereunder or under any other Loan Document(s); and (ii) no event has occurred which with the passage of time and/or the giving of notice would constitute a default hereunder or under any other Loan Document(s), Lender shall release portions of the Mortgaged Property from the lien created by the Mortgage ("Released Property") subject to: (i) Borrower's payment to Lender of the Release Price (as hereinafter defined) for the Released Property and (ii) Borrower's delivery to Lender of documentation evidencing a bonafide arms length transaction for the sale of the Released Property. The Release Price for the Released Property shall be equal to the greater of: (y) (i) One Hundred Twenty percent (120%) of the net sale price of the Released Property (subject to reasonable and customary closing adjustments and sales commissions to be approved by Lender in Lender's reasonable discretion); and (ii) One Hundred Twenty percent (120%) of the gross sale price of the Released Property; or (z) such other minimum Release Price as required by Lender in its sole discretion.

24. **Publicity.**

(a) Lender shall have the right to issue news releases, and publicize and/or advertise the fact that it has provided financing with respect to the project and/or the Mortgaged Property and in connection therewith Lender shall have the right to photograph and use pictures of the Mortgaged Property in any such advertisements, brochures, print, media and other copy.

(b) At Lender's request, Borrower, at Lender's cost and expense, shall erect a suitable sign or signs at the Mortgaged Property in a location which is clearly visible to the public and otherwise reasonably acceptable to Lender. The Sign shall be prepared by Lender and may contain, among other things, that financing for the Mortgaged Property is being provided by Lender or another Person and otherwise publicize Lender's or such Person's role in the financing. Lender shall coordinate the placement and maintenance of such signs on the Mortgaged Property with Borrower.

25. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which

shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Agreement may be detached from any counterpart of this Agreement without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Agreement identical in form hereto but having attached to it one or more additional signature pages.

      26.    **Joint and Several Liability**. Notwithstanding anything contained herein to the contrary, if there is more than one Borrower, each Borrower shall be jointly and severally liable for a breach of any and all covenants, representations, warranties, obligations and liabilities under this Agreement.

      27.    **Single Purpose Entity/Separateness**. Notwithstanding anything contained herein to the contrary, Borrower represents, warrants and covenants as follows:

      (a)    Borrower has not owned, does not own and will not own any asset or property other than (i) the Mortgaged Property, and (ii) incidental personal property necessary for the ownership or operation of the Mortgaged Property.

      (b)    Borrower has not engaged and will not engage in any business other than the ownership, management and operation of the Mortgaged Property and Borrower will conduct and operate its business as presently conducted and operated.

      (c)    Borrower will not enter into any contract or agreement with any affiliate of the Borrower, any constituent party of Borrower, any Guarantor of the Loan or any part thereof or any affiliate of any constituent party of Borrower or any Guarantor, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any such party.

      (d)    Except as otherwise set forth herein or in the other Loan Documents, Borrower has not incurred and will not incur any indebtedness, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than the Loan. No indebtedness other than the Loan may be secured (subordinate or pari passu) by the Mortgaged Property.

      (e)    Borrower has not made and will not make any loans or advances to any third party (including any affiliate or constituent party of Borrower, any Guarantor or any affiliate or constituent party of Guarantor), and shall not acquire obligations or securities of its affiliates or any constituent party.

      (f)    Borrower: (i) is solvent and agrees to give prompt notice to Lender of the insolvency or bankruptcy filing of Borrower or any general partner, managing member or controlling shareholder of Borrower, or the death, insolvency or bankruptcy filing of any Guarantor; and (ii) will remain solvent.

      (g)    Borrower has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Borrower will not amend, modify or otherwise change the articles of organization, certificate of formation, certificate of incorporation, articles of incorporation, bylaws or operating agreement or other organizational documents of Borrower.

      (h)    Borrower will maintain all of its books, records, financial statements and bank accounts separate from those of its affiliates and any constituent party of Borrower and Borrower will file its own tax returns. Borrower shall maintain its books, records, resolutions and agreements as official records.

(i) Borrower will be, and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Borrower, any constituent party of Borrower, any Guarantor or any affiliate of any such constituent party or Guarantor), shall correct any known misunderstanding regarding its status as a separate entity, shall conduct business in its own name, shall not identify itself or any of its affiliates as a division or part of the other and shall maintain and utilize separate stationery, invoices and checks.

(j) Borrower will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

(k) Neither Borrower nor any constituent party of Borrower will seek the dissolution, winding up, liquidation, consolidation or merger in whole or in part, of the Borrower.

(l) Borrower will not commingle the funds and other assets of Borrower with those of any affiliate or constituent party of Borrower, any Guarantor, or any affiliate of any constituent party or Guarantor, or any other person.

(m) Borrower has and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party of Borrower, any Guarantor, or any affiliate of any constituent party or Guarantor, or any other Person.

(n) Borrower does not and will not guarantee, become obligated for or hold itself out to be responsible for the debts or obligations of any other person or entity or the decisions or actions respecting the daily business or affairs of any other person or entity.

(o) Borrower will not permit any affiliate or constituent party of Borrower independent access to its bank accounts.

(p) Borrower shall pay the salaries of its own employees and maintain a sufficient number of employees in light of its contemplated business operations.

(q) Borrower shall have at least one (1) Independent Manager or Independent Director, as applicable.

[Remainder of this page intentionally left blank.]

28

**IN WITNESS WHEREOF,** the undersigned have executed this Loan and Security Agreement as of the day and year first set forth above.

Signed in the Presence of:

_____
Name: WILLIAM B. STULL

_____
Name:

BORROWER
**LEWISBERRY PARTNERS LLC**

By: _____
Name: Richard J Puleo
Title: Managing Member

Signed in the Presence of:

_____
Name: WILLIAM B. STULL

Acknowledged and Assented to:

GUARANTOR

_____
Richard J Puleo, individually

_____
Name:

_____
Name: WILLIAM B. STULL

_____
Name:

_____
Lorraine B Puleo, individually

Signed in the Presence of:

LOAN FUNDER LLC, SERIES 7693

_____
Name:

By: _____
Name: _____
Title: Authorized Signatory

_____
Name:

A-1

STATE OF PA )
)ss.:
COUNTY OF LANCASTER

    I certify that on June 26 2019, Richard J Puleo, came before me in person and stated to my satisfaction that he/she:

    (a) made the attached instrument; and

    (b) was authorized to and did execute this instrument on behalf of and as Managing Member of LEWISBERRY PARTNERS LLC (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and members.



_____
NOTARY PUBLIC

STATE OF PA )
)ss.:
COUNTY OF LANCASTER )

Commonwealth of Pennsylvania - Notary Seal
William B. Stull, Notary Public
Lancaster County
My commission expires November 18, 2019
Commission number 1162557

On June 26 2019 before me personally came Richard J Puleo, who being by me duly sworn, did depose and say that he/she signed this instrument as his/her voluntary act and deed.



Commonwealth of Pennsylvania - Notary Seal
William B. Stull, Notary Public
Lancaster County
My commission expires November 18, 2019
Commission number 1162557

_____
NOTARY PUBLIC

STATE OF PA )
)ss.:
COUNTY OF LANCASTER

    I certify that on June 26 2019, Lorraine B. Puleo came before me in person and stated to my satisfaction that he:

    (a) made the attached instrument; and

    (b) was authorized to and did execute this instrument on behalf of and as Authorized Signatory of Loan Funder LLC, Series 7693 (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and its members.

Commonwealth of Pennsylvania - Notary Seal
William B. Stull, Notary Public
Lancaster County
My commission expires November 18, 2019
Commission number 1162557

_____
NOTARY PUBLIC

A-2



*YORK COUNTY RECORDER OF DEEDS*
*28 EAST MARKET STREET*
*YORK, PA 17401*

*Laura Shue - Recorder*
*Tina M. Channell - Deputy*

**Instrument Number - 2021016873**              Book - 2638   Starting Page - 5593
**Recorded On 3/22/2021 At 1:29:49 PM**        * Total Pages - 13
* **Instrument Type - ASSIGNMENT OF MORTGAGE**
  Invoice Number - 1420626
* **Grantor - LEWISBERRY PARTNERS LLC**
* **Grantee - U S BANK TRUST NATIONAL ASSOCIATION-TR**
  User - TMC                                    * Received By:
* **Customer - FRIEDMAN VARTOLO LLP**

* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| RECORDING FEES | $29.00 |
| PIN NUMBER FEES | $300.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $374.75 |

| York County UPI Certification |
|---|
| On March 22, 2021 By KD |

PARCEL IDENTIFICATION NUMBER
270002901470000000
270002901480000000
270002901490000000
270002901500000000
**Total Parcels: 30**

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
# *PLEASE DO NOT DETACH*
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

**\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.**

Book: **2638**  Page: **5605**

When Recorded Return To:
Assignments and Lien Release
Title Clearing and Escrow
1601 LBJ Freeway Suite 150
Farmers Branch, TX 75234

Assessor's/Tax ID No.: 27-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-00-00000, 27-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-00-00000,
27-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-00-00000, 27-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-00-00000, 27-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-00-00000,
27-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-00-00000, 27-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-00-00000, 27-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-00-00000,
27-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-00-00000, 27-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-00-00000, 27-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-00-00000,
27-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-00-00000, 27-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-00-00000, 27-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-00-00000,
27-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-00-00000, 27-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-00-00000, 27-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-00-00000,
27-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-00-00000, 27-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-00-00000, 27-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-00-00000,
27-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-00-00000, 27-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-00-00000, 27-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-00-00000,
27-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-00-00000, 27-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-00-00000, 27-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-00-00000,
27-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-00-00000, 27-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-00-00000, 27-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-00-00000, 27-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-00-00000

## CORPORATE ASSIGNMENT OF MORTGAGE

York, Pennsylvania
Fay Servicing#: [redacted] LEWISBERRY PARTNERS LLC, a Pennsylvania Limited Liability Company" AZ3

Date of Assignment: 3/15/2021
Assignor: Loan Funder LLC, Series 7693, a Delaware Limited Liability Company
Assignee: U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of HOF Grantor
Trust 1, By Fay Servicing, LLC, as Attorney In Fact

I hereby certify the precise address of the within named Assignor is 645 Madison Ave. 19th Floor, NY, NY 10022

Executed By: LEWISBERRY PARTNERS LLC, a Pennsylvania Limited Liability Company
To: Loan Funder LLC, Series 7693, a Delaware Limited Liability Company
Dated: 06-26-2019 Recorded: 07-08-2019 as Instrument/Document 2019028748, Book/Reel/Liber 2525,
Page/Folio 3369 In the County of York, State of Pennsylvania.

Property Address: SEE ATTACHED EXHIBIT A FOR PROPERTY ADDRESS in the Township of Fairview

I do certify that the precise address of U.S. Bank Trust National Association, not in its individual capacity but
solely as trustee of HOF Grantor Trust 1, By Fay Servicing, LLC, as Attorney In Fact  is 60 Livingston Ave EP-MN-
WS3D, Attn: Structured Finance Services – PROF, St. Paul, MN  55107 Attested By: Lucca Scambach

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $8,025,000.00 with interest, secured thereby, and the full benefit of
all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and
conveys unto the said assignee, the assignor's interest under the Security Instrument.

ASSIGNMENT OF MORTGAGE Page 1 of 2

ASSIGNMENT OF MORTGAGE Page 2 of 2

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

Loan Funder LLC, Series 7693, a Delaware Limited Liability Company

On ___3/15/2021___

By: _____

___ Whitewell

STATE OF New York
COUNTY OF New York

On ___3/15/2021___, before me, __Lucas Scimbrook__, a Notary Public in and for
__New York__ in the State of __NY__, personally appeared __Geal Whitewell__ of Loan Funder LLC, Series 7693, a Delaware Limited Liability Company , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Lucas Scimbrook

LUCAS SAMBROOK
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02SA6356034
Qualified in New York County
Commission Expires March 20, 2021

## PROPERTY PARCEL NUMBERS / ADDRESSES

27-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-00-00000  2 KINGSWOOD DR
27-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-00-00000  4 KINGSWWOD DR
27-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-00-00000  6 KINGSWOOD DR
27-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-00-00000  8 KINGSWOOD DR
27-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-00-00000  10 KINGSWOOD DR
27-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-00-00000  12 KINGSWOOD DR
27-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-00-00000  14 KINGSWOOD DR
27-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-00-00000  16 KINGSWOOD DR
27-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-00-00000  18 KINGSWOOD DR
27-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-00-00000  20 KINGSWOOD DR
27-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-00-00000  22 KINGSWOOD DR
27-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-00-00000  24 KINGSWOOD DR
27-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-00-00000  142 SCULLY PLACE
27-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-00-00000  144 SCULLY PLACE
27-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-00-00000  146 SCULLY PLACE
27-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-00-00000  148 SCULLY PLACE
27-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-00-00000  135 SCULLY PLACE
27-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-00-00000  133 SCULLY PLACE
27-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-00-00000  131 SCULLY PLACE
27-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-00-00000  129 SCULLY PLACE
27-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-00-00000  127 SCULLY PLACE
27-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-00-00000  125 SCULLY PLACE
27-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-00-00000  123 SCULLY PLACE
27-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-00-00000  121 SCULLY PLACE
27-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-00-00000  111 SCULLY PLACE
27-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-00-00000  109 SCULLY PLACE
27-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-00-00000  107 SCULLY PLACE
27-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-00-00000  105 SCULLY PLACE
27-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-00-00000  103 SCULLY PLACE
27-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-00-00000  101 SCULLY PLACE

**SCHEDULE "A"**

## LEGAL DESCRIPTION OF THE PROPERTY

ALL THOSE CERTAIN TRACTS of land situated in Fairview Township, York County, Pennsylvania, known and numbered as Lots 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 79, 80, 81, 82 ,83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, and 96 on a final plan of lots for Phases 2 & 3 of Revised Pleasant View Planned Residential Development recorded in the Office of the Recorder of Deeds in and for York County, Pennsylvania in Plan Book SS, Page 709, more particularly bounded and described as follows:

Lot 47, 2 KINGSWOOD DRIVE

·ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 47 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along northern line of Kingswood Drive (private access drive), S 77° 54' 16" W a distance of 45.00' to a point; thence, along Lot 48, N 12° 05' 44" W a distance of 110.00' to a point; thence, along the Lot OSR-2, N 77° 54' 16" E a distance of 29.04' to a point; thence, along the same, S 74° 37' 22" E a distance of 17.98' to a point; thence, along the same, S 12° 05' 44" E a distance of 101.70' to a point and the place of BEGINNING.

Containing 4,884 sq. ft. (0.11 acres) more or less

Account Number:

Lot 48, 4 KINGSWOOD DRIVE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 48 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along northern line of Kingswood Drive (private access drive), S 77° 54' 16" W a distance of 30.00' to a point; thence, along Lot 49, N 12° 05' 44" W a distance of 110.00' to a point; thence, along the Lot OSR-2, N 77° 54' 16" E a distance of 30.00' to a point; thence, along Lot 47, S 12° 05' 44" E a distance of 110.00' to a point and the place of BEGINNING.

Containing 3,300 sq. ft. (0.08 acres) more or less

Account N

Lot 49, 6 KINGSWOOD DRIVE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 49 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along northern line of Kingswood Drive (private access drive), S 77° 54' 16" W a distance of 30.00' to a point; thence , along Lot 50, N 12° 05' 44 W a distance of 110.00' to a point; thence, along the Lot OSR-2, N 77° 54' 16" E a distance of 30.00' to a point; thence, along the lot 48, S 12° 05' 44" E a distance of 110.00' to a point and the place of BEGINNING.

Containing 3,300 sq. ft. (0.08 acres) more or less

Account No.

Lot 50, 8 KINGSWOOD DRIVE

ALL THAT CERTAIN tract of land situate in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 50 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along northern line of Kingswood Drive (private access drive), S 77° 54' 16" W a distance of 30.00' to a point; thence, along Lot 51, N 12° 05' 44" W a distance of 110.00' to a point; thence, along the Lot OSR-2, N 77° 54' 16" E a distance of 30.00' to a point; thence, along the Lot 49, S 12° 05' 44" E a distance of 110.00' to a point and the place of BEGINNING.

Containing 3,300 sq. ft. (0.08 acres) more or less

Account N█████████████████

Lot 51, 10 KINGSWOOD DRIVE

ALL THAT CERTAIN tract of land situate in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 51 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along northern line of Kingswood Drive (private access drive), S 77° 54' 16" W a distance of 30.00' to a point; thence, along Lot 52, N 12° 05' 44" W a distance of 110.00' to a point; thence, along the Lot OSR-2, N 77° 54' 16" E a distance of 30.00' to a point; thence, along the Lot 50, S 12° 05' 44" E a distance of 110.00' to a point and the place of BEGINNING.

Containing: 3,300 sq. ft. (0.08 acres) more or less

Account No█████████████████

Lot 52, 12 KINGSWOOD DRIVE

ALL THAT CERTAIN tract of land situate in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 52 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 53, N 21° 36' 20" W a distance of 39.04' to a point; thence, along Lot 53, N 21° 36' 20" W a distance of 108.98' to a point; thence, along Lot OSR-2, N 72° 35' 18" E a distance of 27.16' to a point; thence, along the same, N 77° 54' 16" E a distance of 30.00' to a point; thence, along Lot 51, S 12° 05' 44" E a distance of 110.00' to a point and the place of BEGINNING.

Containing 5,273 sq. ft. (0.12 acres) more or less

Account No.█████████████

Lot 53, 14 KINGSWOOD DRIVE

ALL THAT CERTAIN tract of land situate in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 53 as shown on the "Final Subdivision Plan of Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along northern right-of-way line of Kingswood Drive (private access drive), S 64° 43' 59" W a distance of 36.17' to a point; thence, along Lot

54, N 37° 22' 42" W a distance of 110.00' to a point; thence, along Lot OSR-2, N 52° 38' 18" E a distance of 30.00'
to a point, thence, along the same, N 72° 35' 18" E a distance of 37.22' to a point; thence, along Lot 52, S 21° 36'
20" E a distance of 108.98' to a point and the place of BEGINNING.

Containing: 5,732 sq. ft. (0.13 acres) more or less

Account No █████████████████████

Lot 54, 16 KINGSWOOD DRIVE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly
bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 54 as shown on the "Final Subdivision Plan for
Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Kingswood Drive
(private access drive), S 52° 37' 18" W a distance of 30.00' to a point; thence along Lot 55, N 37° 22' 42" W a
distance of 110.00' to a point; thence, along Lot OSR-2, N 52° 37' 18" E a distance of 30.00' to a point; thence,
along Lot 53, S 37° 22' 42" E a distance of 110.00' to a point and the place of BEGINNING.

Containing 3,300 sq. ft. (0.08 acres) more or less

Account No. ████████████████████

Lot 55, 18 KINGSWOOD DRIVE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly
bounded and described as follows: ·

BEGINNING at a point said point being the southeast corner of Lot 55 as shown on the "Final Subdivision Plan for
Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Kingswood Drive
(private access drive), S 52° 37' 18" W a distance of 30.00 to a point; thence, along Lot 56, N 37° 22' 42" W a
distance of 110.00' to a point; thence, along Lot OSR-2, N 52° 37' 18" E a distance of 30.00' to a point; thence,
along Lot 54, S 37° 22' 42" E a distance of 110.00' to a point and the place of BEGINNING.

Containing 3,300 sq. ft. (0.08 acres) more or less

Account No. █████████████████████

Lot 56, 20 KINGSWOOD DRIVE

ALL THAT CERTAIN tract of land situate in Fairview Township, York County, Pennsylvania, more particularly
bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 56 as shown on the "Final Subdivision Plan for
Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Kingswood Drive
(private access drive), S 52° 37' 18" W a distance of 30.00' to a point; thence, along Lot 57, N 37° 22' 42" W a
distance of 110.00' to a point, thence, along Lot OSR-2, N 52° 37' 18" E a distance of 30.00' to a point; thence,
along Lot 55, S 37° 22' 42" E a distance of 110.00' to a point and the place of BEGINNING.

Containing 3,300 sq. ft. (0.08 acres) more or less

Account No █████████████████████

Lot 57, 22 KINGSWOOD DRIVE

ALL THAT CERTAIN tract of land situate in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 57 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Kingswood Drive (private access drive), S 52° 37' 18" W a distance of 30.00' to a point; thence, along Lot 58, N 37° 22' 42" W a distance of 110.00' to a point; thence, along Lot OSR-2, N 52° 37' 18" E a distance of 30.00' to a point; thence, along Lot 56, S 37° 22' 42" E a distance of 110.00' to a point and the place of BEGINNING.

Containing 3,300 sq. ft. (0.08 acres) more or less

Account No ███████████████

Lot 58, 24 KINGSWOOD DRIVE

ALL THAT CERTAIN tract of land situate in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 58 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Kingswood Drive (private access drive), S 52° 37' 18" W a distance of 40.00' to a point; thence, along Lot OSR-2, N 37° 22' 42" W a distance of 110.00' to a point; thence, along the same, N 52° 37' 18" E a distance of 40.00' to a point; thence, along Lot 57, S 37° 22' 42" E a distance of 110.00' to a point and the place of BEGINNING.

Containing 4,400 sq. ft. (0.10 acres) more or less

Account No. ███████████████

Lot 79, 142 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northeast corner of Lot 79 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 80, S 11° 54' 18" E a distance of 105.00' to a point; thence, along Tract #3R, S 78°05' 42" W a distance of 29.00' to a point; thence, along the same, N 11° 54' 18" W a distance of 105.00' to a point on the northern right-of-way line of Scully Place; thence, along said right-of-way line, N 78° 05' 42" E a distance of 29.00' to a point and the place of BEGINNING.

Containing 3, 045 sq. ft. (0.07 acres) more or less

Account No ███████████████

Lot 80, 144 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northeast corner of Lot 80 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 81, S 11° 54' 18" E a distance of 105.00' to a point; thence, along Tract #3R, S 78° 05' 42" W a distance of 24.00' to a point;

thence, along Lot 79, N 11° 54' 18" W a distance of 105.00' to a point on the northern right-of-way line of Scully Place; thence, along said right-of-way line, N 78°05'42" E a distance of 24.00' to a point and the place of BEGINNING.

Containing 2,520 sq. ft. (0.06 acres) more or less

Account No

Lot 81, 146 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northeast corner of Lot 81 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 82, S 11° 54' 18" E a distance of 105.00' to a point; thence, along Tract #3R, S 78° 05' 42" W a distance of 24.00' to a point; thence along Lot 80, N 11° 54' 18" W a distance of 105.00' to a point on the northern right-of-way line of Scully Place; thence, along said right-of-way line, N 78° 05' 42" E a distance of 24.00' to a point and the place of BEGINNING.

Containing 2, 520 sq. ft. (0.06 acres) more or less

Account No.

Lot 82, 148 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northeast corner of Lot 82 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Tract #3R, S 11° 54' 18" E a distance of 105.00' to a point; thence, along the same, S 78° 05' 42" W a distance of 29.00' to a point thence, along Lot 81, N 11° 54' 18" W a distance of 105.00' to a point on the northern right-of-way line of Scully Place; thence, along said right-of-way, N 78° 05' 42" E a distance of 29.00' to a point and the place of BEGINNING.

Containing 3,045 sq. ft. (0.07 acres) more or less

Account No

Lot 83, 135 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:
BEGINNING at a point said point being the northwest corner of Lot 83 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 84, N 78° 05' 42" E a distance of 115.00' to a point; thence, along Tract #3R, S 11° 54' 18" E a distance of 29.00' to a point thence, along the same, S 24° 48' 20" W a distance of 12.47' to a point; thence, along the same S 78° 05' 42" W a distance of 98.31' to a point; thence, along the same, N 46° 24' 14" W a distance of 16.31' to a point on the eastern right-of-way line Scully Place; thence, along said right-of-way line, N 11° 54' 18" W a distance of 25.56' to a point and the place of BEGINNING.

Containing 4,385 sq. ft. (0.10 acres) more or less

Account No

Lot 84, 133 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 84 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 85, N 78° 05' 42" E a distance of 115.00' to a point; thence, along Tract #3R, S 11° 54' 18" E a distance of 24.00' to a point thence, along Lot 83, S 78° 05' 42" W a distance of 115.00' to a point on the eastern right-of-way line Scully Place; thence, along said right-of-way line, N 11° 54' 18" W a distance of 24.00' to a point and the place of BEGINNING.

Containing 2,760 sq. ft. (0.06 acres) more or less

Account No. ███████████████

Lot 85, 131 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 85 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 86, N 78° 05' 42" E a distance of 115.00' to a point; thence, along Tract #3R, S 11° 54' 18" E a distance of 24.00' to a point thence, along Lot 84, S 78° 05' 42" W a distance of 115.00' to a point on the eastern right-of-way line Scully Place; thence, along said right-of-way line, N 11° 54' 18" W a distance of 24.00' to a point and the place of BEGINNING.

Containing 2,760 sq. ft. (0.06 acres) more or less

Account N ███████████████

Lot 86, 129 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 86 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 87, N 76° 33' 26" E a distance of 118.00' to a point; thence, along Tract #3R, S 11° 54' 18" E a distance of 38.48 to a point; thence, along Lot 85, S 78° 05' 42" W a distance of 115.00' to a point on the eastern right-of-way line Scully Place; thence, along said right-of-way line, N 11° 54' 18" W a distance of 1.07' to a point on the eastern right-of-way line Scully Place; thence along said right-of-way line, by a curve to the left, having a radius of 200.00 a length of 34.42 having a chord bearing N 16° 50' 07" W a distance of 34.38' to a point and the place of BEGINNING.

Containing 4,282 sq. ft. (0.10 acres) more or less

Account No. ███████████████

Lot 87, 127 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 87 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 88, N 65° 06' 18" E a distance of 115.72' to a point; thence, along Tract #3R, S 24° 53' 42" E a distance of 55.47' to a point; thence, along Lot 86, S 76° 33' 26" W a distance of 118.00' to a point on the eastern right-of-way line Scully Place; thence, along said right-of-way, by a curve to the left having a radius of 200.00' a length of 14.77', and having a chord bearing N 23° 52' 50" W a distance of 14.76' to a point on the eastern right-of-way line Scully Place; thence, along said right-of-way line, N 25° 59' 45" W a distance of 17.29' to a point and the place of BEGINNING.

Containing 5,056 sq. ft. (0.12 acres) more or less

Account No

Lot 88, 125 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 88 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 89, N 65° 06' 18" E a distance of 116.18' to a point; thence, along Tract #3R, S 24° 53' 42" E a distance of 24.00' to a point thence, along Lot 87, S 65° 06' 18" W a distance of 115.72' to a point on the eastern right-of-way line Scully Place; thence, along said righ-of-way line, N 25° 59' 45" W a distance of 24.00' to a point and the place of BEGINNING.

Containing 2,783 sq. ft. (0.06 acres) more or less

Account No

Lot 89, 123 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 89 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 90, N 65° 06' 18" E a distance of 116.64' to a point; thence, along Tract #3R, S 24° 53' 42" E a distance of 24.00' to a point thence, along Lot 88, S 65° 06' 18" W a distance of 116.18' to a point on the eastern right-of-way line Scully Place; thence, along said right-of-way line, N 25° 59' 45" W a distance of 24.00' to a point and the place of BEGINNING.

Containing 2,794 sq. ft. (0.06 acres) more or less

Account No

Lot 90, 121 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 90 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Tract #3R, S 76° 57' 37" E a distance of 107.44' to a point; thence, along the same, S 24° 53' 42" E a distance of 24.00' to a point; thence, along Lot 89, S 65° 06' 18" W a distance of 116.64' to a point on the eastern right-of-way line of Scully Place; thence, along said right-of-way line, N 25° 59' 45" W a distance of 3.64' to a point on the eastern right-of-way

line of Scully Place; thence, along said right-of-way, by a curve to the right, having a radius of 125.00 a length of 85.16, with a chord bearing N 06° 28' 41" W a distance of 83.52' to a point on the eastern right-of-way line of Scully Place; thence, along said right-of-way line, N 13° 02' 23" E a distance of 9.08' to a point and the place of BEGINNING.

Containing 6,859 sq. ft. (0.16 acres) more or less

Account No

Lot 91, 111 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 91 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 92, N 81° 28' 30" E a distance of 115.00' to a point; thence, along Tract #3R, S 08° 31' 30" E a distance of 35.00' to a point; thence, along the same, S 81° 28' 30" W a distance of 35.00' to a point and the place of BEGINNING.

Containing 4,025 sq. ft. (0.09 acres) more or less

Account N

Lot 92, 109 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 92 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 93, N 81° 28' 30" E a distance of 115.00' to a point; thence, along Tract #3R, S 08° 31' 30" E a distance of 24.00' to a point ; thence, along Lot 91, S 81° 28' 30" W a distance of 115.00' to a point on the eastern right-of-way line of Scully Place; thence, along said right-of-way line, N 08° 31' 30" W a distance of 24.00' to a point and place of BEGINNING.

Containing 2,760 sq. ft. (0.06 acres) more or less

Account No

Lot 93, 107 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 93 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 94, N 81° 28' 30" E a distance of 115.00' to a point; thence, along Tract #3R, S 08° 31' 30" E a distance of 24.00' to a point thence, along Lot 92, S 81° 28' 30" W a distance of 115.00' to a point on the eastern right-of-way line of Scully Place; thence, along said right-of-way line, N 08° 31' 30" W a distance of 24.00' to a point and the place of BEGINNING.

Containing 2,760 sq. ft. (0.06 acres) more or less

Account No

Lot 94, 105 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 94 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 95, N 81° 28' 30" E a distance of 115.00' to a point; thence, along Tract #3R, S 08° 31' 30" E  a distance of 24.00' to a point thence, along Lot 93, S 81° 28' 30" W a distance of 115.00' to a point on the eastern right-of-way line of Scully Place; thence, along said right-of-way line, N 08° 31' 30" W a distance of 24.00' to a point and the place of BEGINNING.

Containing 2,760 sq. ft. (0.06 acres) more or less

Account No█████████████████████

Lot 95, 103 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 95 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 96, N 81° 28' 30" E a distance of 115.00' to a point; thence, along Tract #3R, S 08° 31' 30" E a distance of 24.00' to a point thence, along Lot 94, S 81° 28' 30" W a distance of 115.00' to a point on the eastern right-of-way line of Scully Place; thence, along said right-of-way line, N 08° 31' 30" W a distance of 24.00' to a point and the place of BEGINNING.

Containing 2,760 sq. ft. (0.06 acres) more or less

Account No█████████████████████

Lot 96, 101 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the northwest corner of Lot 96 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Tract #3R, N 81° 28' 30" E a distance of 115.00' to a point; thence, along the same, S 08° 31' 30" E a distance of 35.00' to a point; thence along Lot 95, S 81° 28' 30" W a distance of 115.00' to a point on the eastern right-of-way line of Scully Place; thence, along said right-of-way line, N 08° 31' 30" W a distance of 35.00' to a point and the place of BEGINNING.

Containing 4, 025 sq. ft. (0.09 acres) more or less

Account No.█████████████████████