# Exhibit "B"

Case 21-10327-elf Doc 87-1 Filed 02/10/21 Entered 02/10/21 14:04:33 Desc
Exhibit B: Motion to use Cash Collateral Page 2 of 11

Case 21-10327-elf Doc 8 Filed 02/10/21 Entered 02/10/21 14:17:04 Desc Main
Document Page 2 of 11

**UNITED STATES BANKRUPTCY COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: : | |
| : | Chapter 11 |
| **LEWISBERRY PARTNERS, LLC,** : | |
| : | Bankruptcy No. 21-10327 (ELF) |
| Debtor. : | |
| : | |

**MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 361, 363 AND 105 TO: (I) PERMIT USE OF CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION TO PARTIES WITH INTERESTS IN CASH COLLATERAL; (II) SCHEDULE A FINAL HEARING; AND (III) REQUEST FOR EXPEDITED HEARING, REDUCED NOTICE PERIOD AND LIMITED NOTICE**

Lewisberry Partnership, LLC ("Lewisberry" or the "Debtor"), by and through its proposed counsel, Obermayer Rebmann Maxwell & Hippel LLP, hereby requests authority to (i) Permit Use of Cash Collateral and Provide Adequate Protection to Parties with Interests in Cash Collateral pursuant to 11 U.S.C. §§ 105, 361 and 363; (ii) schedule a final hearing; and (iii) for Expedited Hearing, Reduced Notice Period, and Limited Notice Pursuant to Local Bankruptcy Rule 5070-1(f) with respect to same (the "Motion") and in support thereof respectfully represents:

**I.     BACKGROUND**

1.     On February 9, 2021 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), and has continued in possession of its property and operating its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for the relief sought herein are sections 105, 361 and 363 of

4820-3533-4363

title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 5070-1(f) of the Local Bankruptcy Rules ("L.B.R.") for the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"). Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. No creditors' committee has been appointed in this Chapter 11 case by the United States Trustee. No Trustee or examiner has been sought or appointed in the Debtor's Chapter 11 case.

5. Loan Funder LLC, Series 7693 ("Loan Funder") is a Delaware limited liability company with a principal place of business located at 645 Madison Avenue, Floor 19, New York, NY 10022.

6. Fay Servicing, LLC is a mortgage servicing company with a principal place of business located at 901 South 2nd Street, Springfield, IL 62704.

7. In 2019, the Debtor acquired thirty (30) improved townhomes located in Lewisberry, Pennsylvania (collectively, the "Properties" or individually, a "Property") in the community commonly known as Glenbrook Townhomes at Pleasant View ("Glenbrook").[1]

8. In connection with the acquisition of the Properties, on or about June 26, 2019, the Debtor borrowed funds from Loan Funder in the original principal amount of eight million,

---

[1] The Properties are individually identified as follows: Lot 47, 2 Kingswood Drive; Lot 48, 4 Kingswood Drive; Lot 49, 6 Kingswood Drive; Lot 50, 8 Kingswood Drive; Lot 51, 10 Kingswood Drive; Lot 52, 12 Kingswood Drive; Lot 53, 14 Kingswood Drive; Lot 54, 16 Kingswood Drive; Lot 55, 18 Kingswood Drive; Lot 56, 20 Kingswood Drive; Lot 57, 22 Kingswood Drive; Lot 58, 24 Kingswood Drive; Lot 79, 142 Scully Place; Lot 80, 144 Scully Place; Lot 81, 146 Scully Place; Lot 82, 148 Scully Place; Lot 83, 135 Scully Place; Lot 84, 133 Scully Place; Lot 85, 131 Scully Place; Lot 86, 129 Scully Place; Lot 87, 127 Scully Place; Lot 88, 125 Scully Place; Lot 89, 123 Scully Place; Lot 90, 121 Scully Place; Lot 91, 111 Scully Place; Lot 92, 109 Scully Place; Lot 93, 107 Scully Place; Lot 94, 105 Scully Place; Lot 95, 103 Scully Place; Lot 96, 101 Scully Place.

twenty-five thousand dollars ($8,025,000.00) (the "Loan") as memorialized in that certain Commercial Promissory Note (the "Note") and that certain Loan and Security Agreement (the "Security Agreement") each dated June 26, 2019. A copy of the Note and Security Agreement are attached hereto as Exhibits "A" and "B" respectively and each are incorporated herein.

9. As security for the Debtor's obligations to Loan Funder, on or about June 26, 2019, the Debtor granted to Loan Funder a first mortgage on the Properties (the "Lewisberry Mortgage"), as well as a security interest, *inter alia*, in and to all of its present and future fixtures, rents, profits and income from the Properties (the "Lewisberry Collateral") and to the extent that Loan Funder holds a valid, perfected and non-avoidable security interest, which the Debtor disputes, Loan Funder's security interest in the Lewisberry Collateral or in the proceeds thereof constitutes the cash collateral of Loan Funder (the "Cash Collateral"). A copy of the Lewisberry Mortgage is attached hereto as Exhibit "C" and incorporated herein.

10. In addition to the Lewisberry Mortgage and as additional security for the Debtor's obligation to Loan Funder, on or about June 26, 2019, certain members of the Debtor, Richard and Lorraine Puleo (the "Puleos") granted to Loan Funder a first priority mortgage (the "Puleo Mortgage" or together with the Note, the Security Agreement, the Lewisberry Mortgage and all other loan documents, the "Loan Documents") on twenty (20) improved townhomes located in Lewisberry, Pennsylvania (collectively, the "Puleo Properties") also located in Glenbrook, but owned solely in the name of the Puleos. A copy of the Puleo Mortgage is attached hereto as Exhibit "D" and incorporated herein.

11. As of the Petition Date, Loan Funder asserteds a secured claim against the Debtor in the approximate amount of eight million, six hundred thousand dollars ($8,600,000.00).

12. A search of the Pennsylvania Department of State and other public records indicates no other creditors asserting a security interest in the Debtor's Cash Collateral.

13. Since the date of the Note, and without consulting with or obtaining the consent of the Debtor, Loan Funder has turned over servicing of the Loan Documents to Fay, which has repeatedly and intentionally interfered with the operations and contracts of the Debtor in violation of the Loan Documents by, *inter alia*, attempting to charge artificially high release prices to the sale of certain of the Properties, thereby preventing the closing on the sale of certain of the Properties and repeatedly demanding documents that have already been provided to Loan Funder and otherwise breaching its duty of good faith and fair dealing and committing acts of lender liability, thereby forcing the Debtor to seek bankruptcy.

14. In late March 2020, the Debtor expressed concerns to Fay about diminishing rents resulting from the the rapidly developing global pandemic and the economic and logistical havoc it was beginning to reek on the Debtor's business, and requested a deferral of monthly mortgage payments.

15. After what seemed like an interminable delay and near constant followup from the Debtor, Fay eventually consented to accept reduced payments in June of 2020 and the re-evaluate the situation after things stabilized.

16. Since that time, the Debtor has made, and Fay has accepted, reduced payments from the Debtor, all the while Fay insisted that it was working toward restructuring the loan to meet the financial needs of the Debtor.

17. The Debtor, in the normal course of its business, incurs obligations to its independent contractors, customers, and suppliers for a variety of goods and services essential to the continued existence of the Debtor as a going concern.

18. The Debtor has a critical need for the use of its cash and rents in order to continue operations, to pay for liability and hazard insurance, utilities, building maintenance and repair, professional fees, United States Trustee Quarterly Fees, and to meet other ongoing obligations.

19. The Debtor has monthly obligations that must be made in order to properly maintain the Properties and continue its business obligations.

20. The Debtor leases the Properties to residential tenants and it further requires the use of its cash and rents in order to keep the Properties safe and habitable for its tenants.

21. If the Debtor is not able to pay its monthly obligations, its operations will be substantially injured.

22. The Debtor further requires that any interim order authorize its banks to receive, process and honor, and clear checks written on the Debtor's bank accounts in order to make the needed cash collateral payments.

23. Without an immediate and emergent use of its cash, the Debtor's prospects for reorganization are limited. With the use of its cash, the Debtor believes it can operate profitably and will seek to refinance and take out the claim of Loan Funder and Fay pursuant to a Plan of Reorganization.

II. **BASIS FOR THE RELIEF REQUESTED AND THE REASONS THEREFORE**

    A. **Bankruptcy Rule 4001 Statement.**

24. By this Motion, the Debtor seeks authority and requests the entry of an order authorizing the Debtor to, among other things: (i) obtain authority to use cash collateral and grant adequate protection to Loan Funder pursuant to §§ 361, 363, and 105 of the Bankruptcy Code on an interim and final basis.

25. Under and pursuant to Bankruptcy Rule 4001(b)(1)(B)(i) through (iv):

(a) Loan Funder/Fay is the only party with a valid interest in cash collateral.

(b) Cash collateral is to be used in accordance with the Debtor's budget for operational working capital, for the payment of the Debtor's ordinary and necessary expenses, including, liability and hazard insurance, utilities, building maintenance and repair, professional fees, United States Trustee Quarterly Fees and to meet other ongoing obligations.

(c) Cash collateral to extend thirty (30) days on an interim and then final basis.

(d) The Debtor will offer Loan Funder/Fay replacement liens in post-petition rents generated by the Properties as adequate protection.

### B. The Request for Authority To Use Cash Collateral.

26. Section 363(c) of the Bankruptcy Code allows a debtor to use, sell or lease cash collateral if each entity that has an interest in cash collateral consents or the Court authorizes the use. See 11 U.S.C. § 363(c)(2).

27. The Debtor has a critical and immediate need for the use of Cash Collateral and therefore requests authority to use (a) its cash, (b) proceeds of the Lewisberry Collateral, and (c) such other funds that the Debtor obtains post-petition which may be subject to the pre-petition security interests.

28. Without the ability to use cash collateral, the Debtor will suffer immediate and irreparable harm and will be unable to satisfy necessary and ongoing expenses including but not limited to liability and hazard insurance, utilities, building maintenance and repair, professional fees, United States Trustee Quarterly Fees and to meet other ongoing obligations. Without the use of cash collateral, the Debtor will be unable to maintain the property and the estate will be severely harmed.

29. The Debtor requests authority to use cash collateral in the amount detailed in the proposed budget attached hereto as Exhibit "E".

30. Approval of the Debtor's request to use cash collateral and pay the pre-petition wages is in the best interest of the Debtor, its estate, and creditors.

31. The Debtor proposes, to provide adequate protection to the Loan Funder/Fay in the form of a first lien upon and security interest in all of the Debtor's now existing and hereafter acquired remts.

32. Pursuant to § 361(2) of the Bankruptcy Code, the providing of a replacement lien can constitute adequate protection. It is well settled that "[a]dequate protection must be applied in light of the peculiar facts of each case and upon equitable considerations arising therefrom." H.R. 95-595, 95th Cong., 1st Sess. 339 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787.." Although adequate protection is not defined in the Bankruptcy Code, 11 U.S.C. § 361 provides for three, nonexclusive forms of adequate protection. Those forms are: (1) periodic cash payment; (2) additional or replacement lien; and (3) the "indubitable equivalent" of the secured creditor's interest in the property. 11 U.S.C. § 361. See In re Swedeland Development Group, Inc., 16 F.3d 552 (3d Cir. 1994). Adequate protection is provided to ensure that a secured creditor receives the value of its bargain. What constitutes the appropriate "value" is to be determined by the court on a case by case basis. In re O'Connor, 808 F.2d 1393 at 1396 (10th Cir. 1987). In this case, the granting of replacement liens will provide adequate protection of their interests of Loan Funder/Fay while at the same time allowing the Debtor to continue to operate its business.

33. In accordance with Bankruptcy Rule 4001(b)(2), the Debtor requests that the use of cash collateral be approved on an interim basis to prevent irreparable harm to the Debtor and then be finally approved at a subsequent hearing upon further notice to parties in interest.

34. In accordance with Bankruptcy Rule 4001(b)(2), the Debtor requests that the final hearing be scheduled so that at least fifteen (15) days notice has been provided to parties in interest.

35. The entry of any Order authorizing the use of cash collateral is without prejudice to the rights of the Debtor, its creditors, any trustee appointed herein, or other parties in interest, to contest the validity, extent, or priority of any rights granted pursuant to pre-petition agreements or any security interest arising out of or related to pre-petition agreements with Loan Funder/Fay.

36. In order to maintain the Debtor's operations, the Debtor requires the use of cash collateral for the payment of expenses as more specifically set forth in the Budget. Through the payment of the above-referenced expenses the Debtor will be able, not only to maintain the status quo, but also to facilitate its reorganization and enhance the collateral.

37. The Debtor also seeks approval of the use of cash collateral in an amount of ten percent (10%) more than what is permitted in the budget in the event of unforeseen expenses.

38. Unless the Debtor can continue to use cash to operate, it will be unable to reorganize and enhance the collateral, all to the great detriment of its creditors.

39. The Debtor respectfully submits that it can operate profitably during the Debtor's Chapter 11 case.

40. The cessation of the Debtor's business would not only be injurious to creditors but would result in the potential cessation of essential services and repairs necessary to maintain the Properties and would severely impact the occupancy of the Debtor's residential tenants.

41. Accordingly, the Debtor has an urgent and in fact critical need for the use of cash.

## III. REQUEST FOR EXPEDITED RELIEF

42. In accordance with L.B.R. 5070-1(f), and 9014-1, the Debtor seeks expedited consideration of the Motion. The Debtor requests approval of the request for expedited consideration pursuant to L.B.R. 9014-2.

43. Pursuant to L.B.R. 5070-1(f)(3), this request for expedited consideration may be stated as part of the Motion.

44. The Debtor respectfully submits that expedited consideration of the Motion is necessary to protect the interests of the Debtor. Without the immediate ability to use cash collateral, the Debtor will be unable to satisfy necessary and ongoing expenses causing significant harm to the Debtor and its creditors, and the families occupying the Debtor's Properties.

45. The Debtor respectfully requests that an expedited hearing be scheduled on the Motion at the earliest date convenient to the Court's calendar, and further requests that the notice period be reduced accordingly.

46. The Debtor further believes that an expedited hearing will not prejudice any of the Debtor's creditors or any party in interest.

47. Contemporaneously with the filing of the Motion, a copy was forwarded to Loan Funder/Fay, the United States Trustee and all parties requesting notice pursuant to Federal Rule of Bankruptcy Procedure 2002 via electronic means, facsimile, hand delivery, or next day mail.

4820-3533-4363

9

48. Counsel to the Debtor has provided notice as required by L.B.R. 5070-1(f)(1) but has not yet received a response.

49. The Debtor is seeking to shorten notice of this Motion such that it will be heard on the earliest date that can be accommodated by the Court.

50. Furthermore, the Debtor also seeks to limit notice and requests: (a) that this Court permit notice of the hearing to be served facsimile, next day mail or by electronic means including the Court's CM/ECF system, upon (i) the Office of the United States Trustee; (ii) Loan Funder/Fay; and (iii) all parties who have timely filed requests for notice in this proceeding under Bankruptcy Rule 2002; and (b) that this Court limit the notice period accordingly. The Debtor believes that such notice is sufficient under the circumstances for the expedited hearing.

51. Reduction of the time periods in question is not prohibited under Fed. R. Bankr. P. 9006(c)(2) and the rules listed therein.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order in the form attached hereto: (i) authorizing the Debtor's use of cash collateral pursuant to §§ 361 and 363 of the Bankruptcy Code on the terms and conditions provided for herein; (ii) granting adequate protection; (iii) scheduling a final hearing; and (iv) providing for such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: February 12, 2021

By: ___/s/ Edmond M. George___
Edmond M. George, Esquire
Michael D. Vagnoni, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3140
*Proposed Counsel to Lewisberry Partners, LLC*

4820-3533-4363

10