**RIGHT, AND ANY WAIVER GRANTED FOR ONE OCCASION SHALL NOT OPERATE AS A WAIVER IN THE EVENT OF ANY SUBSEQUENT DEFAULT. MAKER FURTHER WAIVES TRIAL BY JURY AND ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY, AND ONLY AFTER CONSIDERATION OF THE RAMIFICATIONS OF THE WAIVER BY ITS ATTORNEY.**

13. **Binding Effect.** This Note shall be binding on Maker, its successors and assigns and shall inure to the benefit of Lender, any holder hereof, its successors and assigns.

14. **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of New York. The Maker acknowledges and agrees that the transaction evidenced by this Note was negotiated and accepted in the State of New York and the performance of the obligations hereunder shall be deemed to be performed in the State of New York.

15. **Joint and Several.** Should this Note be signed by more than one Maker, references in this Note to Maker in the singular shall include the plural and all obligations herein contained shall be joint and several of each signer hereof.

16. **Maximum Rate.** Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid or agreed to be paid hereunder exceed the highest lawful rate permitted under applicable usury law (the "Maximum Rate") and the payment obligations of Maker under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the maturity of the unpaid principal balance hereof or otherwise, the aggregate amounts paid on this Note shall include amounts which by law are deemed interest and which would exceed the Maximum Rate, Maker stipulates that payment and collection of such excess amounts shall have been and will be deemed to have been the result of a mistake on the part of both Maker and the holder of this Note, and the party receiving such excess payments shall promptly credit such excess (to the extent only of such payments in excess of the Maximum Rate) against the unpaid principal balance hereof and any portion of such excess payments not capable of being so credited shall be refunded to Maker.

17. **Rights Cumulative.** The rights and remedies of Lender shall be cumulative and not in the alternative, and shall include all rights and remedies granted herein, in any document referred to herein or executed and/or delivered in connection herewith, and under all applicable laws, and the exercise of any one or more of them will not be a waiver of any other.

18. **Severability.** If any term, clause, or provision hereof shall be adjudged to be invalid or unenforceable by a court of appropriate jurisdiction, the validity and enforceability of the remainder shall not be affected thereby and each such term, clause, or provision shall be valid and enforceable to the fullest extent permitted by law.

19. **Payments Past Maturity.** Maker hereby authorizes Lender, at Lender's sole discretion, to instruct Lender's servicer or subservicer to continue accepting payments from Maker past the then original Maturity Date of this Note at the original terms stated herein and in the other Loan Documents. Maker hereby authorizes Lender and its servicer and subservicer to either (i) initiate, and/or continue the initiation of, ACH direct debit transactions from Maker's bank account supplied to Lender or its servicer or subservicer; and/or (ii) otherwise accept monthly payments due and owing on this Note in the form of paper checks or as otherwise agreed by and between Maker and Lender's servicer or subservicer. If the then original Maturity Date of this Note has passed, the continued acceptance of payments by Lender shall be at the sole and absolute discretion of Lender, and Lender

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

shall not be obligated to accept such payments. Lender reserves the right to cease or discontinue acceptance of any such payments from Maker at any time and to pursue all of its available remedies under this Note and the other Loan Documents.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

**IN WITNESS WHEREOF**, the undersigned have executed this Commercial Promissory Note as of June 26, 2019.

**BORROWER**
**LEWISBERRY PARTNERS LLC**

By: _____

Name: Richard J Puleo

Title:   Managing Member

STATE OF $PA$               )
                                          )ss.:
COUNTY OF LANCASTER )

I certify that on June 26 2019, Richard J Puleo, came before me in person and stated to my satisfaction that he/she:

(a) made the attached instrument; and

(b) was authorized to and did execute this instrument on behalf of and as Managing Member of LEWISBERRY PARTNERS LLC (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and members.

_____

NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
William B. Stull, Notary Public
Lancaster County
My commission expires November 18, 2019
Commission number 1162557

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

## EXHIBIT A

24 Kingswood Drive, Lewisberry, PA
22 Kingswood Drive, Lewisberry, PA
18 Kingswood Drive, Lewisberry, PA
20 Kingswood Drive, Lewisberry, PA
16 Kingswood Drive, Lewisberry, PA
14 Kingswood Drive, Lewisberry, PA
12 Kingswood Drive, Lewisberry, PA
10 Kingswood Drive, Lewisberry, PA
8 Kingswood Drive, Lewisberry, PA
6 Kingswood Drive, Lewisberry, PA
4 Kingswood Drive, Lewisberry, PA
2 Kingswood Drive, Lewisberry, PA

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

# Exhibit C

Case 21-10322-eff Doc 715-14 Filed 02/06/21 Entered 02/06/21 16:20:43 Desc
Exhibit D: Motion to Sell Page 23 of 49 Page 6 of 25

Page **1** of **47**

PREPARED BY AND, AFTER
RECORDING, RETURN TO:

LaRocca, Hornik, Rosen, & Greenberg
83 South Street
Freehold, New Jersey 07728
Attention: Jonathan L. Hornik, Esq.

Parcel No.

This mortgage is an open end mortgage that secures future advances

### OPEN – ENDED COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND FIXTURE FILING

THIS MORTGAGE, made as of this **June 26, 2019** by **LEWISBERRY PARTNERS LLC,** a Pennsylvania limited liability company having its principal place of **27 Nutt Road, Phoenixville, PA 19460** ("Mortgagor" or "Borrower", as the case maybe), and from **LOAN FUNDER LLC, SERIES 7693,** a Delaware limited liability company having its principal place of business at **645 Madison Avenue, Floor 19, New York, NY 10022** (hereinafter referred to as "Mortgagee" or "Lender" as the case maybe).

## W I T N E S S E T H

WHEREAS, Mortgagee has agreed to lend and Mortgagor has agreed to borrow the principal sum of **Eight Million Twenty Five Thousand and 00/100 dollars ($8,025,000.00)** ("Loan"), on the terms and conditions provided herein and in the Loan Documents (as hereinafter defined);

WHEREAS, Mortgagor has executed and delivered to Mortgagee, among other things, that certain Loan and Security Agreement (as same may be amended, restated or modified from time to time, "Loan Agreement") and that certain Promissory Note (as same may be amended, restated or modified from time to time, "Note") both of even date herewith, evidencing the Loan; and

WHEREAS, Mortgagor expects to derive benefit from the Loan and has agreed to secure the Loan by, among other things, the grant of this Mortgage to Mortgagee.

WHEREAS, Mortgagor is indebted to Mortgagee by virtue of a commercial loan transaction (the "Loan") in the sum of **Eight Million Twenty Five Thousand and 00/100 dollars ($8,025,000.00)**as evidenced by (1) a certain Commercial Promissory Note in the principal amount of **Eight Million Twenty Five Thousand and 00/100 dollars ($8,025,000.00)** (as same may be amended, restated, or modified from time to time, the "Note") dated **June 26, 2019** executed by Mortgagor and delivered to Mortgagee, with all amounts remaining unpaid thereon being finally due and payable on **June 26, 2049** and (2) that certain Loan Agreement (as same may be amended, restated, or modified from time to time, "Loan Agreement") of even date herewith;

WHEREAS, the terms and repayment of such obligations of the Mortgagor are set forth in the Note;

WHEREAS, to secure payment and performance of the indebtedness and obligations represented by the Note, the Mortgagor is hereby executing this Mortgage in favor of the Mortgagee;

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Mortgage and Security Agreement

WHEREAS, Mortgagee has agreed to provide financing for the each of the premises located at: **Lots 47 through 96 located in Phase 2 & 3 of the P Lewisberry, PA**; and

WHEREAS, Mortgagor has agreed to grant Mortgagee a mortgage in the Premises as collateral for the refinancing of the premises located at: **Lots 47 through 96 located in Phase 2 & 3 of the P Lewisberry, PA;** and

WHEREAS, Mortgagor represents and warrants that it has full power and authority to execute and deliver the Note, this Mortgage, and all other documents, agreements and instruments required of it by Mortgagee in connection with the making of the Loan (the Note, this Mortgage, Loan Agreement and all such other documents, agreements and instruments executed and delivered by Mortgagor in connection with the Loan being sometimes collectively referred to herein as the "Loan Documents")(all capitalized terms used herein but not defined herein shall have the meaning ascribed in the Loan Agreement).

NOW, THEREFORE, Mortgagor hereby covenants and agrees with Mortgagee as follows:

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that in order to secure Mortgagor's obligations under the Loan Documents, including the payment of principal and interest, late fees, attorneys' fees, costs and disbursements, the full and prompt payment and performance of all of the indebtedness, obligations, covenants, agreements and liabilities of Mortgagor to Mortgagee, together with all interest and other charges thereon, whether direct or indirect, existing, contingent or otherwise, due or to become due, under or arising out of or in connection with the Loan Agreement and any future modifications thereof and any other instruments or documents delivered in connection herewith or therewith and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Mortgagor has mortgaged, granted, bargained, sold, conveyed, aliened, released, transferred, warranted and confirmed, and does hereby mortgage, grant, bargain, sell, convey, alien, release, transfer, warrant and confirm unto Mortgagee, and to all its successors and assigns forever, the following described property (collectively, the "Property"):

A.      The real estate located in County of York, State of Pennsylvania (the "State") more particularly described in Exhibit A attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim, together with all right, title and interest of Mortgagor in and to (a) all streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the real property or the Improvements (as hereinafter defined);

(b) any strips or gores between the real property and abutting or adjacent properties; and (c) all water and water rights, timber, crops and mineral interests pertaining to the real property (such real estate and other rights, titles and interests being hereinafter sometimes called "Land");

B.      All buildings, structures and other improvements or any part thereof, now or hereafter situated on or under the Land and all restorations and replacements thereof ("Improvements");

C.      All fixtures and systems and articles of personal property, of every kind and character, now owned or hereafter acquired by Mortgagor (Mortgagor's successors or assigns), which are now or hereafter attached to the Land or the Improvements, or used in or necessary to complete the proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing, including, but without limiting the foregoing, all of the following items now owned or hereafter acquired by Mortgagor, any and all fixtures, systems, heating, ventilating, air conditioning, refrigerating, plumbing, water, sewer, lighting, generating,

2

cleaning, storage, incinerating, waste disposal, sprinkler, fire extinguishing, communications, transportation (of people or things, including, but not limited to, stairways, elevators, escalators and conveyors), data processing, security and alarm, laundry, food or drink preparation, storage of serving, gas, electrical and electronic, water, and recreational uses or purposes; all tanks, pipes, wiring, conduits, ducts, doors, partitions, floor coverings, wall coverings, windows, window screens and shades, awnings, fans, motors, engines and boilers; motor vehicles; decorative items and art objects; and files , records and books of account (all of which are herein sometimes referred to together as "Accessories");

D.    All (a) plans and specifications for the Improvements; (b) approvals, entitlements and contracts relating to the Land or the Improvements or the Accessories or any part thereof; (c) deposits including, but not limited to, Mortgagor's rights in tenants' security deposits (if any), deposits with respect to utility services to the Land or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Document (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles, notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (d) permits, licenses, franchises, bonds, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (e) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (f) other properties, rights, titles and interests, if any, specified in any Section or any Article of this Mortgage as being part of the Property;

E.    All proceeds, products, consideration, compensation and recoveries, direct or consequential, cash and noncash, of or arising from, as the case may be, (a) the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C) and (D); (b) any sale, lease or other disposition thereof; (c) each policy of insurance relating thereto (including premium refunds); (d) the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law; and (e) any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and

F.    All other interests of every kind and character, and proceeds thereof, which Mortgagor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E) and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests.

TO HAVE AND TO HOLD the Property, unto Mortgagee and Mortgagee's successors, substitutes or assigns, for the uses and purposes herein set forth, forever, together with all rights, privileges, hereditaments and appurtenances in anyway appertaining or belonging thereto, subject only to the "Permitted Encumbrances" listed on Exhibit B attached hereto to the extent that the same are valid, subsisting and affect the Property, free from all rights and benefits under and by virtue of any applicable homestead exemption or similar laws, which said rights and benefits Mortgagor does hereby expressly release and waive.

PROVIDED ALWAYS, that these presents are upon the express condition, that if Mortgagor shall pay unto Mortgagee, its successors or assigns, all Indebtedness due under the terms of the Loan Documents and shall pay and perform the Obligation (as hereinafter defined), without any deduction or credit for any amount payable for taxes in accordance with the terms of the said Note, and hereof, then this mortgage shall cease, determine and become null and void; otherwise to remain in full force and effect.

3

## ARTICLE I.
## THE OBLIGATION

Section 1.1    Mortgagee.  The expression "this Mortgage," as used herein, shall mean this Mortgage, and all rights, title, interest, liens, security interests, powers and privileges created hereby or arising by virtue hereof. This Mortgage is given to secure payment and performance of the Obligation, including the indebtedness described in Section 1.2.  The word "Mortgagee," as used herein, shall mean **LOAN FUNDER LLC, SERIES 7693,** a Delaware limited liability company having its principal place of business at **40 West 57th Street, 20th floor, Suite 2040, New York, NY 10019**.

Section 1.2    Obligation.  The word "Obligation", "Obligations" or the word "Indebtedness," as used herein, shall mean all of the indebtedness, obligations and liabilities described as follows:

(a)    the indebtedness, obligations and liabilities of Mortgagor arising under any documents evidencing, securing, or now or hereafter executed in connection with the Loan (each a "Loan Document"; collectively "Loan Documents") evidencing the Loan; and

(b)    all other and additional indebtedness, liabilities and obligations, of every kind and character, of Mortgagor now or hereafter existing in favor of Mortgagee, regardless of whether they are direct, indirect, primary, secondary, joint, several, joint and several, liquidated, unliquidated, fixed or contingent, and regardless of whether the same may, prior to their acquisition by Mortgagee, be or have been payable to some other person or entity, it being the intention and contemplation of Mortgagor and Mortgagee that future advances may be made to Mortgagor by Mortgagee for a variety of purposes, that Mortgagor may guarantee (or otherwise become directly or contingently obligated with respect to) the obligations of others to Mortgagee, and that Mortgagee may, from time to time, acquire from others obligations of Mortgagor to such others, or that Mortgagor may otherwise hereafter be or become further indebted to Mortgagee, and that payment and repayment of all of the foregoing are intended to and shall be part of the indebtedness secured hereby; and

(c)    and any and all renewals, modifications, rearrangements, amendments or extensions of all or any part of the indebtedness, obligations and liabilities described or referred to in Subsections 1.2(a), 1.2(b), preceding.

Mortgagor, and each party at any time claiming an interest in or lien or encumbrance against the Property, agrees that all advances made by Mortgagee from time to time under any of the Loan Documents, and all other portions of the Obligation herein referred to, shall be secured by this Mortgage with priority as if all of the same had been advanced, had arisen or become owing or performable on the date hereof, no reduction of the outstanding principal balance under the Loan Agreement shall extinguish, release or subordinate any rights, titles, interests, liens, security interests, powers or privileges intended, created or arising hereunder or under any other Loan Document, and this Mortgage shall remain in full force and effect as to any subsequent advances or subsequently arising portions of the Obligation without loss of priority until the Obligation is fully paid, performed and satisfied in accordance with the Note, as applicable, all agreements and obligations, if any, of Mortgagee for further advances have been terminated and this Mortgage has been released of record by Mortgagee.

## ARTICLE II.
## CERTAIN REPRESENTATIONS, WARRANTIES
## AND COVENANTS OF MORTGAGOR

Section 2.1      Payment and Performance of Obligations.  Mortgagor shall pay and perform the Obligations when due in accordance with the provisions of the Loan Documents; and if any Default (hereinafter defined) shall be made in the performance of any of the Obligations, Mortgagee shall have the remedies granted to Mortgagee hereunder, under the Loan Documents and under applicable law.

Section 2.2      Indebtedness Secured.  This Mortgage has been given and is intended to secure the full and prompt payment and performance of each and all of the Obligations and any renewal, extension, modification or replacement of any of the Obligations.  Except as otherwise provided herein, this Mortgage shall remain in full force and effect with respect to all of the Property until all the Obligations shall have been paid and performed in full.  If Mortgagor shall well and truly pay and perform the Obligations at the time and times, and in the manner mentioned in the Loan Documents and shall well and truly abide by and comply with each and every term, covenant and condition set forth in the Loan Documents, then this conveyance shall be and become null and void and shall be released at the expense of Mortgagor but if there shall be any Default, then the Obligations shall become immediately due and payable at the option of Mortgagee, without any notice to Mortgagor or any other party, all of which notices of Default or notices of intent to accelerate or acceleration hereby are waived.

Section 2.3      Title to Property.

(a)      The Mortgagor represents and warrants that: (i) it has an indefeasible estate in fee simple in the Land and Improvements and Accessories; (ii) it has the good and unrestricted right, full power and lawful authority to mortgage the Property; (iii) it has obtained any and all consents and approvals necessary or required for the making of this Mortgage; and (iv) the making of this Mortgage will not violate any contract or agreement to which the Mortgagor is a party.

(b)      Mortgagor does hereby and shall forever warrant and defend its title to and fee simple interest in the Property and the validity and first priority of the lien of this Mortgage to Mortgagee and its successors and assigns, against all claims and demands whatsoever of any Person (hereinafter defined).  There are no defenses or offsets or counterclaims to this Mortgage or to any of the Obligations.

(c)      Mortgagor represents and warrants to Mortgagee that any building or portion of any building hereafter constructed on the Land shall be in compliance with all applicable zoning and building codes, ordinances and regulations, shall lie wholly within the boundaries of the Land, and shall be an independent and self-contained operating unit.

(d)      Mortgagor shall execute, acknowledge and deliver to Mortgagee any documents and instruments which Mortgagee may reasonably request from time to time for the better assuring, conveying, assigning, transferring, confirming or perfecting Mortgagee's security and rights under this Mortgage.

Section 2.4      Liens.  Mortgagor shall not, directly or indirectly, create or suffer or permit to be created, or to stand, against the Property or any portion thereof, or against the rents, issues and profits therefrom, any lien, charge, mortgage, deed of trust, adverse claim or other encumbrance (herein collectively referred to as a "lien"), whether senior or junior in lien to this Mortgage, other than the lien of this Mortgage and the Permitted Encumbrances; provided, however, that nothing contained in this Section 2.4 shall require

5

Mortgagor to pay any real estate taxes or other Impositions (as hereinafter defined) prior to the time when same are required to be paid under this Mortgage. Mortgagor will keep and maintain the Property free from all liens arising in connection with the supply of labor or materials relating to the construction, alteration, modification or repair of the Improvements or the Property. Mortgagor agrees to discharge the same of record by payment or bond within thirty (30) days after the filing thereof. Notwithstanding anything to the contrary contained herein, in no event shall Mortgagor do or permit to be done, or omit to do or permit the omission of, any act or thing, where such act or omission would impair the security of this Mortgage.

Section 2.5     Impositions. Mortgagor shall pay, at least five (5) days before the date due, all real estate taxes, personal property taxes, assessments, water and sewer rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Land, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever, general and special, ordinary and extraordinary, foreseen and unforeseen, which shall be assessed, levied, confirmed, imposed or become a lien upon or against the Property or any part thereof, or which shall become payable with respect thereto. Mortgagor shall deliver to Mortgagee, within twenty (20) days after the due date of each payment in connection with the Impositions or any assessment for local improvements ("Assessment"), the original or a true photostatic copy of the official receipt evidencing such payment or other proof of payment satisfactory to Mortgagee.

Section 2.6     Insurance.

(a)     Mortgagor shall provide, at its sole cost and expense, and keep in force for the benefit of itself and Mortgagee, with respect to the Land, Improvements and Accessories: (i) insurance against loss or damage by fire, other hazards by so-called "all risk" and "extended coverage," and such other casualties and hazards as Mortgagee shall reasonably require from time to time; (ii) flood insurance if the Property is located in a flood hazard area and earthquake and/or hurricane insurance to the extent that owners of similar buildings in the same county as the Property maintain such insurance; (iii) war risk insurance, when obtainable from the United States government or any agency thereof; (iv) rent insurance; (v) comprehensive general liability insurance against claims for bodily injury, death or property damage in an amount not less than $1,000,000 per occurrence and $2,000,000 in the aggregate; (vi) water damage legal liability insurance; (vii) workers' compensation insurance as required by law, if and when applicable; (viii) business interruption insurance; (ix) prior to any construction on the Property, builder's risk insurance in an amount not less than the replacement value of the Collateral (defined in the Loan Agreement); and (x) such other insurance on the Property or any part thereof or any replacements or substitutions therefor, as Mortgagee may reasonably require.

(b)     The policies of insurance required by Subsection 2.6(a) hereof shall be with companies, in forms and amounts, and for such reasonable periods as Mortgagee shall require from time to time, and shall insure the respective interests of Mortgagor and Mortgagee. The full amount of the proceeds of any insurance covering real property or tangible personal property subject to a lien or security interest in favor of Mortgagee granted pursuant to any of the Loan Documents in the case of each separate loss in excess of Ten Thousand and 00/100 ($10,000.00) Dollars (a "Major Loss"), other than the proceeds from the insurance required under clauses (vi), and (vii) of Subsection 2.6(a) hereof, shall be payable to Mortgagee pursuant to a non-contributing loss payee endorsement satisfactory to Mortgagee. Certificates of Insurance and true photocopies of the original policies and renewals thereof covering the risks required to be insured against in accordance with this Mortgage, bearing satisfactory evidence of payment of all premiums thereon for the succeeding one year period, shall be delivered to and held by Mortgagee, and within five (5) days of demand by Mortgagee Mortgagor shall deliver to Mortgagee the original policies and renewals, replacements or endorsements thereof and shall assign to Mortgagee said

policies of insurance as additional security for the indebtedness and other obligations secured hereby. At least twenty (20) days prior to the expiration of each policy required to be provided by Mortgagor, Mortgagor shall deliver Certificates of Insurance evidencing renewal or replacement thereof along with true photocopies of any endorsements or any renewal or replacement policies to Mortgagee with satisfactory evidence of payment of all premiums thereon. All insurance policies required hereunder shall be issued by companies of good standing in the State and rated by A.M. Best's Insurance Reports (or any successor publication of comparable standing) as A VIII or better (or the equivalent rating in the case of a successor publication).

(c)     All insurance policies required in accordance with this Mortgage shall: (1) include effective waivers by the insurer of all rights of subrogation against Mortgagor, Mortgagee, any lessee or other occupant of all or any part of the Property, or any other Person which controls, is controlled by or is under common control with any of the foregoing; (2) provide that the full amount of the proceeds of such insurance (other than the proceeds from the insurance required under clauses (vi) and (vii) of Subsection 2.6(a) hereof) shall, in the case of each separate Major Loss, be payable notwithstanding: (A) any act, failure to act or negligence of or violation of warranties, declarations or conditions contained in such policy by any named insured; (B) the occupation or use of the Improvements or the Land for purposes more hazardous than permitted by the terms thereof; (C) any foreclosure or other action or proceeding taken by Mortgagee pursuant to any provision of this Mortgage; or (D) any change in title to or ownership of the Property; (3) provide that no cancellation, reduction in amount or material change in coverage thereof shall be effective until at least thirty (30) days after receipt by Mortgagee of written notice thereof; (4) include "replacement cost endorsements" if available; and (5) be reasonably satisfactory to Mortgagee in all other respects. Mortgagor shall not permit any condition to exist with respect to the Property which would wholly or partially invalidate any of the insurance thereon.

(d)     Mortgagee shall have the right but not the obligation, on behalf of Mortgagor, to adjust and compromise any claims under such insurance in the case of a Major Loss, collect and receive the proceeds thereof and execute and deliver all proofs of loss, receipts, vouchers, checks, drafts, releases and other documents in connection with such claims. Mortgagee is hereby irrevocably appointed attorney-in-fact for Mortgagor (which appointment is coupled with an interest) for such purposes, and Mortgagor shall, upon request of Mortgagee, promptly execute any proofs of loss, receipts, vouchers, checks, drafts, releases, and other documents in connection with such claims.

(e)     Mortgagee may deduct from the proceeds of the insurance required to be obtained by Mortgagor pursuant to Subsection 2.6(a) hereof, other than the insurance required under clauses (vi) and (vii) thereof, any expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred by it in connection with obtaining such proceeds, and Mortgagee may, at its option, release the balance of such proceeds to Mortgagor for the restoration of the Property ("Restoration") or apply the balance of such proceeds in reduction or satisfaction of all or part of the Obligations, whether or not then due and payable (in such order of priority as Mortgagee shall elect). Upon the occurrence of any Default all of Mortgagor's right, title and interest in and to all such policies, including unearned premiums thereon, shall be deemed assigned to Mortgagee. The application of such insurance proceeds toward the payment or performance of the Obligations shall not be deemed a waiver by Mortgagee of its right to receive payment or performance of the remainder of the Obligations and the interest thereon in accordance with the provisions of the Loan Documents.

(f)     In the event of a sale, transfer or other disposition by Mortgagee of any of the property of Mortgagor, the purchaser, assignee or transferee of such property shall succeed to all of the rights of Mortgagee, including any right to unearned premiums, in and to all policies of insurance which Mortgagor is required to maintain under this Section 2.6 and to all proceeds of such insurance.

7

(g)　　Mortgagor's policies of insurance may be maintained under "blanket policies" insuring the Property and other property owned by Mortgagor, provided that such blanket policies shall: (i) separately set forth the amount of the insurance applicable to the Property (except as to the insurance required under clauses (iv), (v) and (vi) of Subsection 2.6(a) hereof), (ii) provide a separate aggregate for each location insured under such policy in an amount not less than $2,000,000, (iii) otherwise comply with the provisions of this Section, and (iv) afford the same protection to Mortgagee as, in Mortgagee's judgment, would be provided by policies individually applicable to the Property.

(h)　　Mortgagor shall not obtain or permit to be obtained separate insurance concurrent in form or contributing in the event of loss with the insurance Mortgagor is required to maintain under the provisions of this Section.

Section 2.7　　Loan to Value Covenant. If at any one or more time(s) during the term of the Note the then aggregate outstanding and committed principal amount of the Note, plus accrued interest and fees thereon, plus all amounts outstanding under any debts secured by prior liens on the Mortgaged Property, is greater than seventy five percent (75%) of the value of the Mortgaged Property, as determined by Mortgagee based upon Mortgagee's review of any appraisal and such other factors as Mortgagee may deem appropriate, then Mortgagor shall within thirty (30) days following a request by Mortgagee, prepay the Note by an amount sufficient to cause the then outstanding principal amount of the Note, plus accrued interest and fees thereon, to be reduced to an amount equal to or less than seventy five percent (75%) of the value of the Mortgaged Property. The inability of Mortgagor to reduce the principal balance of the Note within thirty (30) days following request by Mortgagee shall be, at Mortgagee's option, an Event of Default, hereunder.

Section 2.8　　Condemnation.

(a)　　Mortgagor shall give notice to Mortgagee immediately upon Mortgagor's learning of the commencement of any action or proceeding to take all or any part of the Property by exercise of the right of condemnation or eminent domain or of any action or proceeding to close or to alter the grade of any street on or adjoining the Land.　Mortgagee may participate together with Mortgagor in any such actions or proceedings in the name of Mortgagee or, whenever necessary, in the name of Mortgagor, and Mortgagor shall deliver to Mortgagee such instruments as Mortgagee shall request to permit such participation. Mortgagor shall not settle any such action or proceeding or agree to accept any award or payment without the prior consent of Mortgagee (which consent Mortgagee may deny in its sole discretion), and the total of all awards made or allowed with respect to all right, title and interest in and to the Property or the portion or portions thereof taken or affected by such condemnation or eminent domain proceeding and any interest thereon (hereinafter collectively called the "Award") is hereby assigned to and shall be paid to Mortgagee and the amount received shall be retained and applied as provided in Subsection 2.7(b) hereof.

(b)　　The Obligations may be accelerated at the option of Mortgagee as a result of the exercise of the right of condemnation or eminent domain in respect of all of the Property or any part of the Property which is currently or may prior to the maturity date established in the Note be utilized in the operation of Mortgagor's business or which may, in the sole judgment of Mortgagee, make impracticable the restoration of the Property in a manner which will permit the Property to be used for the purposes for which it was used prior to the exercise of such right of condemnation or eminent domain, in which event Mortgagee shall retain and apply the Award toward payment and performance of the Obligations (in such order of priority as Mortgagee shall elect); provided, however, that to the extent that the Award received by Mortgagee shall exceed the amount required to satisfy in full the then total amount of the Obligations, Mortgagee shall pay over to Mortgagor the amount of such excess and provided, further, that until the actual vesting of title in such proceeding, the Obligations shall continue unimpaired. If there is a taking

8

of a portion of the Property in any such proceeding and Mortgagee does not accelerate the Obligations, then at the option of Mortgagee, the Award shall be: (i) retained and applied by Mortgagee toward the payment or performance of the Obligations in such order of priority as Mortgagee may elect; or (ii) paid over in whole or in part to pay or reimburse Mortgagor for the cost of restoring or reconstructing the Improvements and the Accessories in a manner and on conditions satisfactory to Mortgagee. In no event shall Mortgagee be required to satisfy this Mortgage until the Obligations are fully paid and Mortgagee shall not be required to release from the lien of this Mortgage until the Obligations are fully paid any portion of the Property so taken until Mortgagee receives the entire amount of Award for the portion so taken.

(c)     The application of the Award toward payment or performance of the Obligations shall not be deemed a waiver by Mortgagee of its right to receive payment or performance of the balance of the Obligations in accordance with the provisions of the Loan Documents. Mortgagee shall have the right, but shall be under no obligation, to question the amount of the Award, and Mortgagee may accept same without prejudice to the rights that Mortgagee may have to question such amount. In any such condemnation or eminent domain action or proceeding Mortgagee may be represented by attorneys selected by Mortgagee, and all sums paid by Mortgagee in connection with such action or proceeding (including, without limitation, attorneys' fees and disbursements) shall, on demand, be immediately due from Mortgagor to Mortgagee and the same shall be added to the Obligations and shall be secured by this Mortgage.

(d)     Notwithstanding any taking by condemnation or eminent domain, closing of, or alteration of the grade of, any street or other injury to or decrease in value of the Property by any public or quasi-public authority or corporation, the Obligations shall continue to bear interest at the rate payable pursuant to the Note until the Award shall have been actually received by Mortgagee, and any reduction in the Obligations resulting from the application by Mortgagee of the Award shall be deemed to take effect only on the date of such receipt.

Section 2.9     Restoration. If: (a) the Improvements or Accessories shall be damaged or destroyed, in whole or in part, by fire or other casualty, or by any taking in condemnation proceedings or the exercise of any right of eminent domain; and (b) Mortgagee releases or agrees to release to Mortgagor the proceeds of any insurance payable to Mortgagee or the proceeds of the Award, less any expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred by Mortgagee in obtaining same, and upon conditions satisfactory to Mortgagee; then Mortgagor shall promptly restore, replace or rebuild the same to as nearly as possible the value, quality and condition they were in immediately prior to such fire or other casualty or taking, with such alterations or changes as may be approved in writing by Mortgagee. Mortgagor shall give immediate notice to Mortgagee of any damage or destruction to the Property by fire or other casualty.

Section 2.10     Deposits for Impositions and Insurance. Notwithstanding anything to the contrary contained in any of the Loan Documents, upon demand by Mortgagee at any time and from time to time, Mortgagor shall deposit with Mortgagee on the first day of each month an amount equal to one twelfth (1/12th) of the sum of (collectively, the "Annual Payments"); (i) the aggregate annual payments for the Impositions; (ii) the annual insurance premiums on the policies of insurance required to be obtained and kept in force by Mortgagor under this Mortgage; and (iii) all other periodic charges (other than interest and principal under the Note) arising out of the ownership of the Property or any portion thereof which are or with notice or the passage of time or both will become a lien against the Property or any part thereof. In addition, upon demand by Mortgagee at any time and from time to time, Mortgagor shall deposit with Mortgagee such sum of money which, together with such monthly installments, shall be sufficient to pay all of the Annual Payments at least forty-five (45) days prior to the due date thereof. If the amount of any of the

9

Annual Payments are not ascertainable at the time any deposit is required to be made, the deposit shall be made on the basis of Mortgagee's estimate thereof, which Mortgagee may change from time to time. The funds so deposited with Mortgagee shall, provided that no Default shall have occurred under this Mortgage, be applied in payment of all of the Annual Payments when due to the extent that Mortgagor shall have deposited funds with Mortgagee for such purpose. In the event of any Default the funds deposited with Mortgagee may, at the option of Mortgagee, be retained and applied toward the payment of any or all of the Obligations, in such order of priority as Mortgagee shall determine, but no such application shall be deemed to have been made by operation of law or otherwise until actually made by Mortgagee. The whole of the Obligations shall become due and payable at the option of Mortgagee after the failure of Mortgagor to deliver payment of any of such deposits or after the failure of Mortgagor to deliver to Mortgagee, within ten (10) days after request by Mortgagee, a statement certified by an authorized officer of Mortgagor, specifying the current amounts of all of the Annual Payments. At any time when deposits are required to be made under this Section 2.9, Mortgagor shall furnish Mortgagee with a bill for each of the Annual Payments and/or such other documents necessary for their payment at least forty-five (45) days prior to the date they first become due. Upon an assignment of this Mortgage, Mortgagee shall have the right to pay over the balance of such deposits in its possession which have not been applied to the Obligations to the assignee, and thereupon Mortgagee shall be completely released from all liability with respect to such deposits and Mortgagor shall look solely to the assignee in reference thereto. The provisions of the preceding sentence shall apply to each and every assignment or transfer of such deposits to a new assignee.

Mortgagee agrees not to exercise its rights under this Section provided that no Default has occurred and provided that Mortgagor has at all times fully, faithfully and timely complied with all of the provisions of Sections 2.5 and 2.6 of this Article. Nothing contained herein shall be deemed to extend the maturity date for the Loan established in the Note.

### Section 2.11    Maintenance and Alterations.

(a)    Mortgagor shall put, keep and maintain the Land, Improvements and Accessories, and the sidewalks, curbs and alleys adjoining or abutting the same in the same or better order, condition and repair as they were in on the date hereof, and Mortgagor shall make or cause to be made, as and when the same shall become necessary, all structural and non-structural repairs, whether exterior or interior, ordinary or extraordinary, foreseen or unforeseen in a good and workmanlike manner. Mortgagor shall not commit or suffer any waste or abandonment of the Land, the Improvements or Accessories, and shall not demolish or remove or permit the demolition or removal of the Improvements or Accessories, or any part thereof, without the prior consent of Mortgagee in each instance.

(b)    Mortgagor shall not make any alterations to all or any part of the Improvements or Accessories, or construct additions to all or any part of the Improvements or construct any new or additional buildings on the Property, without the prior consent of Mortgagee in each instance, and then only upon terms and conditions satisfactory to Mortgagee.

### Section 2.12    Compliance with Laws.

(a)    Mortgagor shall promptly comply with, or cause to be complied with, all present and future laws, statutes, ordinances, rules, regulations and other requirements of all governmental authorities whatsoever having jurisdiction of or relating to all or any part of the Property and the sidewalks, curbs and alleys adjoining or abutting the Land, and the condition, repair, maintenance, use and occupation thereof if non-compliance therewith would result in imposition of any fine, penalty, lien or criminal liability on Mortgagor or the Property, or would result in commencement of proceedings for foreclosure or forfeiture of Mortgagor's interest in the Property; and Mortgagor shall promptly make, or

cause to be made, all changes, alterations and improvements to the Property necessary to comply with all such present and future laws, statutes, ordinances, rules, regulations and other requirements to the extent aforesaid. Mortgagor shall operate the Property in compliance with all applicable laws, statutes, ordinances, rules, regulations and other legal requirements. Mortgagor shall not initiate, support, assist or acquiesce in any change in the zoning classification of the Property or any part thereof, without the prior consent of Mortgagee.

(b)     Mortgagor shall promptly perform and observe, or cause to be performed and observed, all of the terms, covenants and conditions of all instruments of record affecting the Property, non-compliance with which may affect the security of this Mortgage, or shall impose any duty or obligation upon Mortgagor or any tenant or other occupant of the Property or any part thereof, and Mortgagor shall do or cause to be done all things necessary to preserve intact and unimpaired any and all easements, appurtenances and other interests and rights in favor, or of constituting any portion of, the Property.

(c)     Notwithstanding anything to the contrary contained herein, Mortgagor shall not use or permit the use of the Property in any manner which would impair or adversely affect the value or utility of the Property or increase the risk of fire or other casualty.

Section 2.13     Leasing.

(a)     Mortgagor shall not, without Mortgagee's prior approval in each instance, which approval shall not be unreasonably withheld or delayed: (i) enter into or change, amend or modify, in any manner whatsoever, any Lease, License or other agreement for the rental or occupancy of all or any portion of the Property (each a "Lease"); (ii) terminate or cancel, or accept a surrender or suffer or permit any cancellation, termination or surrender or suffer or permit any cancellation, termination or surrender of, any Lease, in any manner whatsoever or (iii) receive, collect or accept, or permit the receipt, collection or acceptance of, any prepayment of rent or other charges under any Lease for more than one month, except that Mortgagor may, at the time of the execution of any Lease, accept rent security deposits, which shall be held by Mortgagor in accordance with Subsection 2.12(b) hereof.

(b)     Mortgagor shall at all times fully and promptly comply with, keep and perform all of the terms, covenants, provisions and conditions of any and all Leases on the part of the landlord thereunder to be complied with, kept and performed, and will not do or permit anything to be done which will constitute a breach of any of the terms, covenants, provisions and conditions of any of such Leases. Mortgagor shall enforce the performance and observance of each and every term, covenant, provision and condition of each and every Lease to be performed or observed on the part of the tenant thereunder. Mortgagor shall give prompt notice to Mortgagee of: (i) any notice received by Mortgagor of any default by the landlord or the lessee under any Lease; (ii) the commencement of any action or proceeding by any tenant or lessor the purpose of which shall be the cancellation of any Lease or a diminution or abatement of the rent payable thereunder; or (iii) the interposition by any tenant of any defense or counterclaim in any action or proceeding brought by Mortgagor against such tenant; and Mortgagor will cause a copy of any process, pleading or notice received or served by Mortgagor in reference to any such action, defense or claim to be promptly delivered to Mortgagee. Mortgagor shall hold in trust all security deposits and advance rent given on account of any Lease, and deposit such security in a bank or trust company and shall not mingle such funds with other funds. Mortgagor shall repay or apply such funds only in accordance with the provisions of the applicable Leases.

Section 2.14     Assignment of Rents. Mortgagor hereby absolutely and unconditionally assigns to Mortgagee all of Mortgagor's right, title and interest in and to each Lease whether now existing or

11

hereafter entered into, together with the room revenues, occupancy charges, issues and profits ("Rents") of each such Lease as further security for the payment and performance of the Obligations, and Mortgagor grants to Mortgagee the right to enter the Property for the purpose of collecting the same and to let the Property, or any part thereof, and to apply said Rents after payment of all necessary charges and expenses, on account of the Obligations. This assignment and grant shall continue in effect until the Obligations are fully paid and performed. Mortgagee hereby waives the right to enter the Property for the purpose of collecting Rents, and Mortgagor shall be entitled to collect, receive and use said Rents until the occurrence of a Default under this Mortgage. Mortgagor shall, from time to time after request by Mortgagee, execute, acknowledge and deliver to Mortgagee, in form satisfactory to Mortgagee, separate assignments confirming the foregoing assignment. Mortgagor shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Mortgagor under any Lease or other agreement affecting all or any part of the Property, and Mortgagor hereby agrees to indemnify Mortgagee for and save it harmless from, any and all liability arising from any such Lease or other agreement or any assignments thereof, and no assignment of any such Lease or other agreement shall place the responsibility for the control, care, management or repair of all or any part of the Property upon Mortgagee, nor make Mortgagee liable for any negligence in the management, operation, upkeep, repair or control of all or any part of the Property resulting in injury, death or property damage. Mortgagee or the receiver shall be liable to account only for rents and profits actually received by Mortgagee or the receiver as the case may be.

Section 2.15    No Claims Against Mortgagee.

(a)    Nothing contained in this Mortgage shall constitute any consent or request by Mortgagee, express or implied, for the performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof, or be construed to permit the making of any claim against Mortgagee in respect of labor or services or the furnishing of any materials or other property or any claim that any lien based on the performance of such labor or services or the furnishing of any such materials or other property is prior to the lien of this Mortgage.

(b)    If Mortgagor shall request Mortgagee's approval or consent to any matter and Mortgagee shall fail or refuse to give such consent or approval, Mortgagor shall not be entitled to any damages for any withholding or delay of such approval or consent by Mortgagee, it being intended that Mortgagor's sole remedy shall be an action for injunction or specific performance and that such remedy shall be available only in those cases where Mortgagee shall have expressly agreed in writing not to unreasonably withhold its consent or approval or where as a matter of law Mortgagee may not unreasonably withhold its consent or approval.

Section 2.16    Mortgagee's Right to Perform Mortgagor's Covenants.

(a)    If Mortgagor shall fail to fully and promptly pay, perform or observe any of the Obligations prior to the expiration of any applicable grace period, then, in any such event, Mortgagee may, at its option, but without any obligation to do so, and without waiving or releasing Mortgagor from any of the Obligations, pay any Obligation or cost or perform any Obligation or act or take such action as Mortgagee deems necessary or desirable in order to cause such Obligation to be paid, performed or observed, as the case may be. Mortgagor hereby expressly grants to Mortgagee, and agrees that Mortgagee shall have, the absolute and immediate right to enter in and upon the Property or any part thereof to such extent and as often as Mortgagee, in its sole discretion, deems necessary or desirable for such purpose. Mortgagee may pay and expend such sums of money as Mortgagee, in its sole discretion, deems necessary or desirable for any such purpose, and Mortgagor hereby agrees to pay to Mortgagee, on demand, all such sums so paid or expended by Mortgagee, together with interest thereon from the date of each such payment or expenditure at the Default Rate established in the Note (hereinafter, the "Default

12

Rate"). Any interest which has been paid by Mortgagor to Mortgagee pursuant to this Section 2.15 in excess of the maximum interest rate permitted by law shall be deemed payment in reduction of the principal amount of the Obligations. All sums paid or expended by Mortgagee pursuant to this Section 2.15, and the interest thereon, shall be added to and included in the Obligations and shall be secured by the lien of this Mortgage.

(b)    Mortgagor hereby irrevocably appoints Mortgagee its true and lawful attorney-in-fact in its name or otherwise, to do any and all acts and to execute any and all documents which may be reasonably necessary or, in the opinion of Mortgagee, desirable to preserve any rights of Mortgagor in, to or under the Leases or to effectuate any rights of Mortgagee under this Section 2.15 or contained elsewhere in this Mortgage. The foregoing power of attorney is coupled with an interest.

Section 2.17    Certificates of Mortgagor.  Mortgagor, upon request of Mortgagee, shall certify to Mortgagee or to any proposed assignee of this Mortgage, by an instrument in form satisfactory to Mortgagee, duly acknowledged, the amount then owing on the obligations, the date to which any interest thereon has been paid, and whether any offsets or defenses exist against payment thereof or performance of any Obligation, within five (5) days if the request is personally delivered, or within seven (7) days if the request is made by mail. Mortgagee and any proposed assignee of this Mortgage shall have the right to rely on such certification.

Section 2.18    Inspection and Financial Reports.  Mortgagee and its authorized agents and employees shall have the right, at Mortgagee's option, to enter into the Property at all reasonable times for the purpose of inspecting the same. Mortgagor will furnish to Mortgagee, within thirty (30) days after a request therefor, a detailed statement in writing, covering the period of time specified in such request, showing all income derived from the operation of the Property, and all disbursements made in connection therewith, and containing a list of the names of all tenants and occupants of the Property, the portion or portions of the Property occupied by each such tenant and occupant, the rent and other charges payable under the terms of their leases or other agreements and the period covered by such leases or other agreements.

Section 2.19    Accounting and Other Information.  Mortgagor will keep books and records of account in accordance with generally accepted accounting principles, in which full, true and correct entries shall be made of all dealings and transactions relative to Mortgagor and the Property. Said books and records of account shall be made available to Mortgagee, at an office of Mortgagor and shall be open to the inspection of Mortgagee and its accountants and its other duly authorized representatives at regular business hours. Mortgagor further covenants that it will, within a reasonable time after any request by Mortgagee, furnish or cause to be furnished to Mortgagee such other information with respect to Mortgagor or the Property as Mortgagee may from time to time reasonably request.

Section 2.20    Assignment.  This Mortgage is assignable by Mortgagee without notice to Mortgagor, and any assignment of the same by Mortgagee shall operate to vest in such assignee the same right, title and interest as was vested in Mortgagee and all rights and powers herein conferred, and to release mortgagee from any further obligation or liability hereunder.

Section 2.21    Due on Sale.

(a)    To the extent permitted by law, the Property shall not be sold, transferred or conveyed, in whole or in part, whether voluntarily or involuntarily, by operation of law or otherwise, nor shall Mortgagor lease the entire premises, without, in each instance, the prior written consent of Mortgagee. No mortgage, deed of trust, lien or other encumbrance shall be made or filed against or with respect to the Property, without the prior written consent of Mortgagee. No conditional bill of sale or

chattel mortgage shall be made or filed against any Accessories without the prior written consent of Mortgagee. If any such conditional bill of sale or chattel mortgage is made or filed with or without Mortgagee's prior written consent, then after the occurrence of a Default all right, title and interest of Mortgagor in and to all deposits and payments made thereon are hereby assigned to Mortgagee.

(b)     If Mortgagor enters into an installment sale contract or sells, conveys, alienates, assigns, mortgages or transfers the Property, or any part thereof or interest therein in any manner, or leases all or substantially all of the Property or the Improvements, whether voluntary or involuntary, or by operation of law or otherwise, then Mortgagee shall have the right, at its option, at any time thereafter to declare the Obligations immediately due and payable. No waiver of this right shall be effective, nor shall any delay in the exercise thereof operate as a waiver thereof, unless Mortgagee shall have executed and delivered to Mortgagor a written waiver of such right.

(c)     Any sale, assignment, lease, transfer, pledge, or other disposition, whether voluntary or involuntary, by operation of law or otherwise, of any partnership, membership or other ownership interest or shares of stock in Mortgagor, shall be deemed to be a transfer of the Property for the purposes of this Section.

(d)     On the terms and subject to the conditions set forth in this Subsection 2.20(d), within thirty (30) days after (i) receipt by Mortgagee of Mortgagor's written request and (ii) Mortgagor's compliance with the terms and subject to the conditions set forth in this Subsection 2.20(d), portions of the Property (including but not limited to proceeds of any sale permitted under this Subsection 2.20(d) and any other Collateral with respect to the Property encumbered by any other Loan Document) shall be released from the lien of this Mortgage (and UCC-3 partial release statements with respect to such released portion shall be delivered):

(i)     As of the time of Mortgagor's request and at the time of such transfer, no Default has occurred hereunder and remains uncured (nothing herein being deemed to extend any cure period established herein), and no event has occurred that would constitute a Default with the giving of notice, the passage of time or both;

(ii)     The release is to occur prior to the Maturity Date;

(iii)     Mortgagor's delivery to Mortgagee of documentation evidencing a bonafide arms length transaction for the sale of the Property;

(iv)     With respect to each portion of the Property to be released, Mortgagor has obtained all subdivision and other consents, permits and approvals necessary to lawfully release or convey such portion;

(v)     After giving effect to such release and conveyance, the remainder of the Property will continue to have adequate ingress and egress, and adequate capacity for all utilities necessary for development shall be available at the boundary thereof;

(vi)     The instrument to effect such release and conveyance shall be prepared and recorded at no cost to Mortgagee;

(vii)     Simultaneous with the delivery of such release, Mortgagor shall pay to Mortgagee release consideration ("Release Price") of One Hundred Twenty Percent (120%) percent of the allocated loan amount for each of the Released Property, attached hereto as Exhibit "C", or (b) the

minimum release amount agreed to by Mortgagee in its sole discretion. The such Release Price shall be applied, upon payment and receipt thereof, in reduction of the outstanding principal amount of the Obligations;

(viii)  Simultaneous with delivery of the Release Price, Mortgagor shall deliver an update endorsement to the policy of title insurance delivered at the closing of the Loan, confirming no change to the Property other than the release of the parcel(s) and

(ix)  Unless the Property is sold in its entirety, simultaneous with delivery of such release, Mortgagor shall deliver an update endorsement to the policies of title insurance delivered at closing of the Loan confirming no change other than the release of such portion of the Property and the release of any other portions previously released pursuant to this Subsection 2.20(d).

## ARTICLE III.
## RESPECTING DEFAULTS AND REMEDIES OF MORTGAGEE

In the event that an Event of Default or default shall have occurred, the remedies available to Mortgagee include, but are not limited to, any and all rights and remedies available hereunder, any and all rights and remedies available at law, in equity, or by statute. Without limiting the foregoing, the rights and remedies available to Mortgagee shall include, but not be limited to, any one or more of the following:

**3.01 Remedies.**

(a)  Upon the occurrence of an Event of Default, Mortgagee may:

(i)  Exercise all rights and remedies under the Loan Agreement;

(ii)  Foreclosure. Mortgagee may institute an action of mortgage foreclosure against the Property, or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the Indebtedness, with interest at the highest applicable default rate set forth in the Loan Agreement, together with all other sums due by Mortgagor in accordance with the provisions of this Mortgage and the other Loan Documents, including all sums which may have been loaned by Mortgagee to Mortgagor after the date of this Mortgage, and all sums which may have been advanced by Mortgagee for Taxes, payments on Liens, insurance premiums, utilities or repairs to the Property and other sums which Mortgagee is permitted to advance pursuant to the terms of this Mortgage, all costs of suit, together with interest at such rate on any judgment obtained by Mortgagee from and after the date of any sheriff or other judicial sale until actual payment is made of the full amount due Mortgagee, and all Expenses;

(iii)  Possession. Mortgagee may enter into possession of the Property, with or without legal action, collect therefrom all rentals (which term shall also include sums payable for use and occupation) and, after deducting all costs of collection and administration expense, apply the net rentals to any or all of the following in such order and amounts as Mortgagee, in Mortgagee's sole discretion, may elect: the payment of any sums due under

15

any Lien, Taxes, insurance premiums and all other carrying charges, and to the maintenance, repair or restoration of the Property, and on account and in reduction of the Indebtedness; in and for that purpose, Mortgagor hereby assigns to Mortgagee all rentals due and to become due under the Leases or rights to use and occupation of the Property hereafter created, as well as all rights and remedies provided in such Leases or at law or in equity for the collection of the rentals. The taking of possession and collections of rents by Mortgagee shall not be construed to be an affirmation of any Leases or acceptance of attornment with respect to any Leases of all or any portion of the Property. Mortgagee, in its discretion, may, as attorney in fact or agent of Mortgagor, or in its own name as Mortgagee and under the powers herein granted, hold, operate, manage and control the Property and conduct the business, if any, thereof, either personally or by its agents, and with full power to use such measures, legal or equitable, as in its discretion or in the discretion of its successors or assigns may be deemed proper or necessary to enforce the payment or security of the avails, rents, issues, and profits of the Property, including actions for the recovery of rent, actions in forcible detainer and actions in distress for rent, and with full power: to cancel or terminate any Leases for any cause or on any ground which would entitle Mortgagor to cancel the same; to elect to disaffirm any Leases which are then subordinate to the lien of this Mortgage; to extend or modify any then existing Leases and to make new Leases, which extensions, modifications and new Leases may provide for terms to expire, or for options to extend or renew terms to expire, beyond the maturity date of the indebtedness hereunder and beyond the date of the issuance of a deed or deeds to a purchaser or purchasers at a foreclosure sale, it being understood and agreed that any such Leases, and the options or other such provisions to be contained therein, shall be binding upon Mortgagor and all persons whose interests in the Property is subject to the lien hereof and upon the purchaser or purchasers at any foreclosure sale, notwithstanding any redemption from sale, discharge of the Mortgage indebtedness, satisfaction of any foreclosure decree, or issuance of any certificate of sale or deed to any purchaser; and to enter into any management, leasing or brokerage agreements covering the Property;

(b) Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any Indebtedness without prejudice to the right of Mortgagee thereafter to bring an action of mortgage foreclosure, or any other action, for any Event of Default by Mortgagor existing at the time the earlier action was commenced;

(c) Mortgagee may require that Mortgagor pay to Mortgagee, on demand, all costs and expenses incurred by Mortgagee in connection with the curing of such Event of Default or the collection of sums secured hereby, including but not limited to cost of any title search and all reasonable attorney's fees;

(d) Any real estate sold pursuant to any writ of execution issued on a judgment obtained by virtue of this Mortgage, or pursuant to any other judicial proceedings under the Mortgage, may be sold in one parcel, as an entirety, or in such parcels, and in such manner or order as Mortgagee, in its sole discretion, may elect;

16

(e) Upon, or at any time after the filing of an action to foreclose this Mortgage, the court in which such action is filed may, at the request of Mortgagee, appoint a receiver of the Property. Such appointment may be made either before or after sale, with notice to Mortgagor, without regard to the solvency or insolvency of Mortgagor at the time of application for such receiver and without regard to either the then value of the Property, the adequacy or inadequacy of any remedy available at law, or the solvency or insolvency of any other person liable to pay the Indebtedness, and Mortgagee hereunder or any agent of Mortgagee may be appointed as such receiver. Such receiver shall have the power to perform all of the acts permitted Mortgagee pursuant to subsection (b) (ii) above and such other powers which may be necessary or are customary in such cases for the protection, possession, control, management and operation of the Property during such period;

(f) Mortgagee may, at its sole option, disaffirm and cancel any Leases which are subordinate to this Mortgage at any time before the expiration of sixty (60) days after Mortgagee acquires the legal title to the Property by sheriff's deed or any other transfer of legal title to the Property pursuant to the exercise of a remedy hereunder or otherwise, even though Mortgagee shall have enforced such Leases, collected rents thereunder or taken any action that might be deemed by law to constitute an affirmance of the Leases. Such disaffirmance shall be made by written notice addressed to the applicable tenants at the Property or, at Mortgagee's option, such other address of such tenants as may be provided in the Leases;

(g) Mortgagor, for itself and for all persons hereafter claiming through or under it or who may at any time hereafter become holders of a Lien junior to the lien of this Mortgage, hereby expressly waives and releases all rights to direct the order in which any of the Property shall be sold in the event of any sale or sales pursuant hereto and to have any of the Property and/or any other property now or hereafter constituting security for any of the Indebtedness marshaled upon any foreclosure of this Mortgage or of any other security for any of said indebtedness;

(h) If Mortgagor is an occupant of part or all of the Property, Mortgagor shall immediately upon any acceleration after an Event of Default hereunder surrender the possession thereof to Mortgagee and if they remain in possession, such possession shall be as tenant at sufferance of Mortgagee, and Mortgagor shall pay monthly in advance to Mortgagee such rent for the premises so occupied as Mortgagee may reasonably demand, and in default of so doing Mortgagor or may be dispossessed by summary proceedings or otherwise with or without any action being brought to foreclose this Mortgage and without applying for a receiver to collect the rents. In case of the appointment of a receiver of rents and profits of the Property, the covenants of this Section may be enforced by such receiver;

(i) Upon any sale made under or by virtue of this Section 3.01, Mortgagee may bid for and then acquire the Property or any part thereof and in lieu of paying cash therefore may make settlement for the purchase price by crediting upon the Indebtedness of Mortgagor the net sales price after deducting therefrom the expenses of the sale and the costs of the action

and any other sums which the Mortgagee is authorized to deduct under this Mortgage or under any of the Loan Documents; and

(j) If Mortgagee shall have the right to foreclose this Mortgage, Mortgagor authorizes Mortgagee at its option to foreclose this mortgage subject to the rights of any tenants of the Property, and the failure to make any such tenants parties defendant to any such foreclosure proceeding and to foreclose their rights will not be asserted by Mortgagor as a defense to any proceeding instituted by Mortgagee to collect the Indebtedness or any deficiency remaining unpaid after the foreclosure sale of the Property, it being expressly understood and agreed, however, that nothing herein contained shall prevent Mortgagee from asserting in any proceeding disputing the amount of the deficiency or the sufficiency of any bid at such foreclosure sale, that any such tenancies adversely affect the value of the Property.

(k) UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, MORTGAGOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA, DESIGNATED BY MORTGAGEE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, TO SIGN AN AGREEMENT FOR ENTERING IN ANY COURT OF COMPETENT JURISDICTION A PRAECIPE FOR WRIT OF SUMMONS OR A COMPLAINT PROVIDING FOR CONFESSION OF JUDGMENT IN EJECTMENT FOR POSSESSION OF THE PROPERTY AND TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, FOR THE RECOVERY BY MORTGAGEE OF POSSESSION OF THE PROPERTY, WITHOUT ANY STAY OF EXECUTION, FOR WHICH THIS MORTGAGE, OR A COPY HEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY BE ISSUED FORTHWITH, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER, MORTGAGOR HEREBY RELEASING AND AGREEING TO RELEASE MORTGAGEE AND SAID ATTORNEYS FROM ALL ERRORS AND DEFECTS WHATSOEVER OF ANY NATURE IN ENTERING ANY SUCH JUDGMENT OR IN CAUSING ANY SUCH WRIT OR PROCESS TO BE ISSUED. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED THE SAME SHALL BE DISCONTINUED OR POSSESSION OF THE PROPERTY SHALL REMAIN IN OR BE RESTORED TO THE MORTGAGOR, MORTGAGEE SHALL HAVE THE RIGHT FOR THE SAME EVENT OF DEFAULT OR ANY SUBSEQUENT EVENT OF DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS AS ABOVE PROVIDED TO RECOVER POSSESSION OF THE PROPERTY. MORTGAGEE MAY BRING SUCH ACTION IN EJECTMENT BEFORE OR AFTER THE INSTITUTION OF FORECLOSURE PROCEEDINGS UPON THIS MORTGAGE, OR AFTER JUDGMENT THEREON OR AFTER SALE OF THE PROPERTY BY THE SHERIFF.

(l) MORTGAGOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ATTORNEYS OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR

ELSEWHERE, AT ANY TIME FOLLOWING AN EVENT OF DEFAULT HEREUNDER WHICH IS CONTINUING TO APPEAR FOR MORTGAGOR IN SUCH COURT AND CONFESS JUDGMENT AGAINST MORTGAGOR FOR THE AMOUNT FOR WHICH MORTGAGOR MAY BE OR BECOME LIABLE TO MORTGAGEE UNDER THIS MORTGAGE OR THE LOAN DOCUMENTS, AND PAYMENT OF WHICH IS SECURED BY THE PROPERTY, AS EVIDENCED BY AN AFFIDAVIT SIGNED BY AN OFFICER OF MORTGAGEE, SETTING FORTH THE AMOUNT THEN DUE, PLUS REASONABLE ATTORNEYS' FEES AND COSTS OF SUIT, WITH RELEASE OF PROCEDURAL ERRORS AND WITHOUT RIGHT OF APPEAL AND FOR SO DOING THIS MORTGAGE OR A COPY HEREOF VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT, IT BEING AGREED THAT THE FOREGOING AUTHORIZATION IS A POWER COUPLED WITH AN INTEREST. MORTGAGOR WAIVES THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO CONFESS JUDGMENT SHALL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD TO BE INVALID, VOIDABLE OR VOID, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS MORTGAGEE SHALL ELECT UNTIL ALL INDEBTEDNESS OF MORTGAGOR TO MORTGAGEE HAS BEEN PAID IN FULL.

(m) MORTGAGOR ACKNOWLEDGES THAT IT HAS HAD THE ASSISTANCE OF COUNSEL IN THE REVIEW AND EXECUTION OF THIS MORTGAGE AND FURTHER ACKNOWLEDGES THAT THE MEANING AND EFFECT OF THE FOREGOING CONFESSION OF JUDGMENT HAVE BEEN FULLY EXPLAINED TO MORTGAGOR BY SUCH COUNSEL.

**3.02 Rights and Remedies Cumulative.**

(a)    The rights and remedies of Mortgagee as provided in this Mortgage and the other Loan Documents and in the warrants attached thereto or contained therein shall be cumulative and concurrent; may be pursued separately, successively or together against Mortgagor or against the Property, or both, at the sole discretion of Mortgagee, and may be exercised as the need to exercise them shall arise. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

(b)    Any failure by Mortgagee to insist upon strict performance by Mortgagor of any of the provisions of this Mortgage or the other Loan Documents shall not be deemed to be a waiver of any of the terms or provisions of the Mortgage or the other Loan Documents, and Mortgagee shall have the right thereafter to insist upon strict performance by Mortgagor of any and all of them.

(c)    Neither Mortgagor nor any other person now or hereafter obligated for payment of all or any part of the sums now or hereafter secured by this Mortgage shall be relieved or discharged of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or of any other person so obligated to take action to foreclose on this Mortgage or otherwise enforce any provisions of this Mortgage or the other Loan Documents, or by reason of the release, regardless of consideration, of all or any part of the security held for the Indebtedness, or by reason of consenting to the granting of any

easements or recordation of restrictive covenants affecting the Property or by reason of any agreement or stipulation between any subsequent owner of the Property and Mortgagee extending the time or amount of payment or modifying the terms of this Mortgage or the other Loan Documents without first having obtained the consent of Mortgagor or such other person; and in the latter event Mortgagor and all such other persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Mortgagee.

(d)     Mortgagee may release, regardless of consideration, any part of the security held for the Indebtedness without, as to the remainder of the security, in any way impairing or affecting the lien of this Mortgage or its priority over any subordinate lien.

(e)     For payment of the Indebtedness secured hereby Mortgagee may resort to any other security therefore held by Mortgagee in such order and manner as Mortgagee may elect.

(f)     The receipt by Mortgagee of any sums from Mortgagor after the date on which Mortgagee elects to accelerate the Indebtedness by reason of an Event of Default hereunder shall not constitute a cure or waiver of such default or a reinstatement of this Mortgage or the other Loan Documents unless Mortgagee expressly agrees, by written notice to Mortgagor, that such payment shall be accepted as a cure or waiver of the default.

(g)     ALL OF THE RIGHTS AND REMEDIES OF THE MORTGAGEE AND ALL OF THE INDEBTEDNESS OF THE MORTGAGOR UNDER THIS MORTGAGE SHALL SURVIVE THE ENTRY OF A JUDGMENT HEREUNDER OR UNDER THE NOTE OR OTHERWISE, AND SHALL CONTINUE THEREAFTER. THE MORTGAGOR AND THE MORTGAGEE INTEND THAT ALL SUCH RIGHTS, REMEDIES AND INDEBTEDNESS SHALL NOT BE EXTINGUISHED OR MERGED INTO ANY SUCH JUDGMENT AND SHALL CONTINUE IN EFFECT UNTIL THE INDEBTEDNESS IS PAID IN FULL.

**3.03 Mortgagor's Waivers**.  Mortgagor hereby waives and releases:

(a)     all procedural errors, defects and imperfections in any proceeding instituted by Mortgagee under the Note, this Mortgage or any of the other Loan Documents;

(b)     all benefit that might accrue to Mortgagor by virtue of any present or future law, exempting the Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale on execution, or providing for any stay of execution, exemption from civil process or extension of time for payment; and

(c)     unless specifically required herein, all notices of Mortgagor's default or of Mortgagee's election to exercise, or Mortgagee's actual exercise of, any option under the Leases, the Note, this Mortgage or the other Loan Documents.

**3.04 Consequential Damages**.  Neither Mortgagee nor agent or attorney of Mortgagee shall be liable for any consequential damages arising from any breach of contract, tort or other wrong relating to the establishment, administration or collection of the Indebtedness.

Section 3.1     Possession After Foreclosure.  If the liens or security interests hereof shall be foreclosed by power of Mortgagee's sale, by judicial action or otherwise, the purchaser at any such sale shall receive, as an incident to Mortgagee's ownership, immediate possession of the property purchased, and if Mortgagor or Mortgagor's successors shall hold possession of said property or any part thereof, subsequent to foreclosure, Mortgagor and Mortgagor's successors shall be considered as tenants at sufferance of the