purchaser at foreclosure sale (without limitation of other rights or remedies, at a reasonable rental per day, due and payable daily, based upon the value of the portion of the Property so occupied), and anyone occupying such portion of the Property after demand is made for possession thereof shall be guilty of forcible detainer and shall be subject to eviction and removal, forcible or otherwise, with or without process of law, and all damages by reason thereof are hereby expressly waived.

Section 3.2    Application of Proceeds.  The proceeds from any sale, lease or other disposition made pursuant to this Article, or the proceeds from the surrender of any insurance policies required to be maintained hereunder, or any rental collected by Mortgagee from the Property, or sums received pursuant to Section 5.1 hereof, or proceeds from insurance which Mortgagee elects to apply to the Obligation pursuant to Section 5.2 hereof, shall be applied by Mortgagee as follows: first, to the payment of all expenses of advertising, selling and conveying the Property or part thereof, including reasonable attorneys' fees and a reasonable commission to Mortgagee not to exceed Five (5%) percent of the proceeds of the sale; second, to accrued interest on the Obligation; third, to principal on the matured portion of the Obligation; fourth, to prepayment of the unmatured portion, if any, of the Obligation applied to installments of principal in inverse order of maturity; and fifth, the balance, if any, remaining after the full and final payment and performance of the Obligation to the person or persons legally entitled thereto.

Section 3.3    Abandonment of Sale.  In the event a foreclosure hereunder is commenced by Mortgagee in accordance with Subsection 3.2(c) hereof, Mortgagee may, at any time before the sale, abandon the sale, and may then institute suit for the collection of the Obligation and for the foreclosure of the liens and security interests hereof.  If Mortgagee should institute a suit for the collection of the Obligation and for a foreclosure of the liens and security interests hereof, Mortgagee may, at any time before the entry of a final judgment in said suit, dismiss the same and sell the Property or any part thereof in accordance with the provisions of this Mortgage.

Section 3.4    Payment of Fees.  If any part of the Obligation shall be collected or enforced by legal proceedings, whether through a probate or bankruptcy court or otherwise, or shall be placed in the hands of an attorney for collection after maturity, whether matured by the expiration of time or by an option given to the beneficiary to mature same, or if Mortgagee becomes a party to any suit where this Mortgage or the Property or any part thereof is involved, Mortgagor agrees to pay Mortgagee's reasonable attorneys' and collection fees, and such fees shall be and become a part of the Obligation.

Section 3.5    Indemnification of Mortgagee.  Except for gross negligence or willful misconduct, Mortgagee shall not be liable for any act or omission or error of judgment.  Mortgagee may rely on any document believed by Mortgagee in good faith to be genuine.  All money received by Mortgagee shall, until used or applied as herein provided, be held in trust, but need not be segregated (except to the extent required by law), and Mortgagee shall not be liable for interest thereon.  Mortgagor shall indemnify Mortgagee against all liability and expenses which Mortgagee may incur in the performance of Mortgagee's duties hereunder.

Section 3.6    Release of Collateral.  Mortgagee may release, regardless of consideration, the obligation of any Person or Persons liable for payment of any of the Obligations secured hereby, or may release any part of the Property or any other collateral now or hereafter given to secure the payment of the Obligations or any part thereof, without impairing, reducing or affecting the obligations of Mortgagor under the Loan Documents, the remainder of the security of this Mortgage or the priority of the rights created by this Mortgage.

Section 3.7    Partial Foreclosure.  Mortgagee may from time to time, to the extent permitted by law, take action to recover any sums, whether interest, principal or any other sums required to be paid under

21

the Loan Documents, as the same become due, without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing when such earlier action was commenced. Mortgagee may, to the extent permitted by law, at the Mortgage's option, cause this Mortgage to be foreclosed for any portion of the Obligations or any other sums secured hereby which are then due and payable subject to the continuing lien of this Mortgage for the balance of the secured Obligations not then due.

## ARTICLE IV.
## SECURITY AGREEMENT

Section 4.1    Security Agreement.    This Mortgage is also a security agreement between Mortgagor, as debtor, and Mortgagee, as secured party. The security interest created hereby is specifically intended to cover and include all leases of the Property, if any, presently existing or hereafter entered into (herein, together with all amendments and supplements thereto made as provided therein, called the "Leases"), between Mortgagor (or parties acting on behalf of Mortgagor), as lessor or as successor to or assignee from the lessor, and tenants which occupy the Property under the Leases, including all extended terms and all extensions and renewals of the terms thereof, as well as any amendments to or replacements of said Leases, together with all the right, title and interest of Mortgagor, as lessor thereunder, including, without limiting the generality of the foregoing, the present and continuing right to make claim for, collect, receive and receipt for any and all of the rents, charges and other revenues, rents, income, revenues, issues and profits and moneys payable as damages or in lieu of rent and moneys payable as the purchase price of the Property or any part thereof or of awards or claims for money and other sums of money payable or receivable thereunder howsoever payable, and to bring actions and proceedings thereunder or for the enforcement thereof, and to do any and all things which Mortgagor or any lessor is or may become entitled to do under the Leases, provided, that this provision shall not impair or diminish any obligation of Mortgagor under the Leases, nor shall any obligation be imposed upon Mortgagee. Mortgagor, from time to time, upon each request of Mortgagee, promptly shall (a) execute and deliver to Mortgagee all financing statements as required by Mortgagee in order to establish or maintain the validity, perfection or priority of the security interest with respect to the Accessories or fixtures; (b) pay to Mortgagee on demand all costs of preparation and filing of financing statements pursuant hereto and all costs of Code searches reasonably required by Mortgagee; and (c) give to Mortgagee a certificate in form satisfactory to Mortgagee listing all trade names of Mortgagor and under which Mortgagor operates or intends to operate the Property or any part thereof, and give to Mortgagee advance written notice of any proposed change of any such trade name and of any change of name (or trade name or assumed name), identity or structure of Mortgagor.

## ARTICLE V.
## SPECIAL PROVISIONS

Section 5.1    Condemnation Proceeds.    Mortgagee shall be entitled to receive any and all sums which may be awarded or become payable to Mortgagor for the condemnation of the Property or any part thereof, for public or quasi-public use, or by virtue of private sale in lieu thereof, and any sums which may be awarded or become payable to Mortgagor for damages caused by public works or construction on or near the Property. All such sums are hereby assigned to Mortgagee and Mortgagor shall, upon request of Mortgagee, make, execute, acknowledge and deliver any and all additional assignments and documents as may be necessary from time to time to enable Mortgagee to collect and receipt for any such sums. Mortgagee shall not be, under any circumstances, liable or responsible for failure to collect, or exercise diligence in the collection of, any of such sums. Any sums received by Mortgagee as a result of condemnation shall be applied to installments on the Obligation in inverse order of maturity.

Section 5.2    Insurance Proceeds.  The proceeds of any and all insurance upon the Property shall be collected by Mortgagee and Mortgagee shall have the option, in Mortgagee's sole discretion, to apply any proceeds so collected either to the restoration of the Property or to the liquidation of the Obligation.

Section 5.3    Right to Accelerate Upon Transfer.  If Mortgagor shall sell, convey, assign or transfer all or any part of the Property or any interest therein or (except as expressly otherwise provided in Section 2.20) any beneficial interest in Mortgagor, Mortgagee may, at Mortgagee's option, without demand, presentment, protest, notice of protest, notice of intent to accelerate, notice of acceleration or other notice, or any other action, all of which are hereby waived by Mortgagor and all other parties obligated in any manner on the Obligation, declare the Obligation to be immediately due and payable, which option may be exercised at any time following such sale, conveyance, assignment, lease or transfer, and upon such declaration the entire unpaid balance of the Obligation shall be immediately due and payable.  Mortgagee may, in Mortgagee's sole discretion and at Mortgagor's request, decide not to exercise said option, in which event Mortgagee's forbearance may be predicated on such terms and conditions as Mortgagee may, in Mortgagee's sole discretion, require, including, but not limited to, Mortgagee's approval of the transferee's credit worthiness and management ability, the execution and delivery to Mortgagee by transferee prior to the sale, transfer, assignment, lease or conveyance of an assumption agreement containing such terms as Mortgagee may require, including, but not limited to, a payment of a part of the principal amount of the Obligation, an increase in the rate of interest payable on the Obligation, the payment of an assumption fee, a modification of the terms of the Obligation and such other terms as Mortgagee may require, or Mortgagee may require any of such modifications of the terms of the Obligation without requiring an assumption thereof by the transferee.  Should the Property be sold, traded, transferred, assigned, exchanged, leased or otherwise disposed of without the prior consent of Mortgagee and should payment of any portion of the Obligation thereafter be accepted by Mortgagee, such acceptance shall not be deemed a waiver of the requirement of Mortgagee's consent in writing thereto or with respect to any other sale, trade, transfer, assignment, exchange, lease or other disposition.

Section 5.4    Subordinate Financing.  If Mortgagor, without the prior written consent of Mortgagee, executes or delivers any pledge, security agreement, mortgage or deed of trust covering all or any portion of the Property (hereinafter called "Unauthorized Subordinate Mortgage"), Mortgagee may, at Mortgagee's option, which option may be exercised at any time following such pledge, security agreement, mortgage or deed of trust, without demand, presentment, protest, notice of protest, notice of intent to accelerate, notice of acceleration or other notice, or any other action, all of which are hereby waived by Mortgagor and all other parties obligated in any manner on the Obligation, declare the Obligation to be immediately due and payable.  In the event of consent by Mortgagee to the granting of a subordinate mortgage, or in the event the above-described right of Mortgagee to declare the Obligation to be immediately due and payable upon the granting of a Unauthorized Subordinate Mortgage without the prior written consent of Mortgagee is determined by a court of competent jurisdiction to be unenforceable under the provisions of any applicable law, Mortgagor will not execute or deliver any subordinate mortgage unless (i) it shall contain express covenants to the effect: (a) that the subordinate mortgage is in all respects unconditionally subject and subordinate to the lien and security interest evidenced by this Mortgage and each term and provision hereof; (b) that if any action or proceeding shall be instituted to foreclose the subordinate mortgage (regardless of whether the same is a judicial proceeding or pursuant to a power of sale contained therein), no tenant of any portion of the Property will be named as a party defendant, nor will any action be taken with respect to the Property which would terminate any occupancy or tenancy of the Property without the prior consent of Mortgagee; (c) that the rents and profits, if collected through a receiver or by the holder of the subordinate mortgage, shall be applied first to the obligations secured by this Mortgage, including principal and interest due and owing on or to become due and owing under the Loan Agreement and the other indebtedness secured hereby, and then to the payment of maintenance, operating charges, taxes,

23

assessments, and disbursements incurred in connection with the ownership, operation and maintenance of the Property; and (d) that if any action or proceeding shall be brought to foreclose the subordinate mortgage (regardless of whether the same is a judicial proceeding or pursuant to a power of sale contained therein), notice of the commencement thereof will be given to Mortgagee contemporaneously with the commencement of such action or proceeding; and (ii) a copy thereof shall have been delivered to Mortgagee not less than ten (10) days prior to the date of the execution of such subordinate mortgage. Notwithstanding anything contained herein to the contrary, this provisions shall only be enforceable to the extent permitted under the laws of the State.

Section 5.5    Intentionally Deleted.

Section 5.6    Taxes Imposed on Mortgagee. Mortgagor shall pay any taxes (except any federal, state, or local income taxes measured by the income of Mortgagee from all sources) imposed on Mortgagee by reason of its ownership of this Mortgage and the Note.

Section 5.7    Recording, Filing and Other Fees. Mortgagor shall pay all recording and filing fees, all recording taxes and all other costs and expenses in connection with the preparation, execution and recordation and other manner of perfection of the Loan Documents, and shall reimburse Mortgagee on demand for all costs and expenses of any kind incurred by Mortgagee in connection therewith (including, without limitation, attorneys' fees). Mortgagor will, at any time on request of Mortgagee, execute or cause to be executed financing statements, continuation statements, security agreements, or the like, in respect of any Accessories. Mortgagor shall pay all filing fees, including fees for filing continuation statements, in connection with such financing statements.

Section 5.8    No Release. Mortgagor and any other Person now or hereafter obligated for the payment or performance of all or any part of the Obligations shall not be released from paying and performing such Obligations and the lien of this Mortgage shall not be affected by reason of: (a) the failure of Mortgagee to comply with any request of Mortgagor, or of any other Person so obligated, to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage or of any of the Obligations secured by this Mortgage; (b) the release, regardless of consideration, of the obligations of any Person or Persons liable for payment or performance of the Obligations or any part thereof; or (c) any agreement or stipulation extending the time of payment or modifying the terms of the Note, and in the event of such agreement or stipulation, Mortgagor and all such other Persons shall remain liable under the Loan Documents, as amended by such agreement or stipulation unless expressly released and discharged in writing by Mortgagee.

Section 5.9    Interest After Maturity. The principal amount of the Obligations and any other amounts secured by this Mortgage and, to the extent permitted by law, any accrued interest thereon, shall bear interest from and after maturity, whether or not resulting from acceleration, at the Default Rate, but this shall not constitute an extension of time for payment of the Obligations or such other amounts or accrued interest. In the event that an action to enforce this Mortgage or the other Loan Documents results in the entry of a judgment (in foreclosure or otherwise) against the Mortgagor and/or Guarantor, interest on the judgment shall continue to accrue at the Default Rate through the date of satisfaction of the judgment debt in full, and not at the statutory post-judgment rate of interest. Mortgagor waives any right and/or claim to have the post-judgment interest accrue at the statutory rate.

Section 5.10    Indemnification Against Liabilities. To the extent not caused by the gross negligence or willful misconduct of Mortgagee, Mortgagor will protect, indemnify, save harmless and defend Mortgagee from and against any and all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) imposed

upon or incurred by or asserted against Mortgagee by reason of: (a) any accident or injury to or death of Persons or loss of or damage to or loss of the use of property occurring on or about the Property or any part thereof or the adjoining sidewalks or curbs, if any, streets, alleys or ways; (b) any use, non-use or condition of the Property or any part thereof or the adjoining sidewalks or curbs, if any, streets, alleys or ways; (c) any failure on the part of Mortgagor to perform or comply with any of the terms of the Mortgage; (d) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof made or suffered to be made by or on behalf of Mortgagor; (e) any negligence or tortious act on the part of Mortgagor or any of its agents, contractors, lessees, licensees or invitees; or (f) any work in connection with any alterations, changes, new construction or demolition of the Property. Mortgagor will pay and save Mortgagee harmless against any and all liability with respect to any intangible personal property tax or similar imposition of the Governing Jurisdiction or any subdivision or authority thereof now or hereafter in effect, to the extent that the same may be payable by Mortgagee in respect of this Mortgage, the Note or the indebtedness secured thereby. All amounts payable to Mortgagee under this Section 5.10 shall be payable on demand and shall be deemed indebtedness secured by this Mortgage and any such amounts which are not paid within ten (10) days after demand therefor by Mortgagee shall bear interest at the Default Rate from the date of such demand. If any action, suit or proceeding is brought against Mortgagee by reason of any such occurrences, Mortgagor, upon request of Mortgagee, will, at Mortgagor's expense, resist and defend such action, suit or proceeding or cause the same to be resisted or defended by counsel designated by Mortgagor and approved by Mortgagee, as the case may be.

Section 5.11    Notice of Acceleration.  Whenever Mortgagee in this Mortgage is given the option to accelerate the maturity of all or part of the Obligation upon a Default, Mortgagee may, to the extent permitted by law, do so without prior notice or demand to or upon Mortgagor except as otherwise specifically provided herein.

Section 5.12    Mortgagor's Representations.  Mortgagor represents and warrants that: (a) it is duly organized, validly existing and in good standing under the laws of the State of Pennsylvania, and has the right and power and has obtained all necessary authorization to execute and deliver this Mortgage and the other Loan Documents to which it is a party and to perform its obligations thereunder in accordance with the terms thereof; (b) the consent of any governmental body, agency or entity is not required (or if required has been obtained) in connection with the execution and delivery of this Mortgage; (c) the execution, delivery, and performance by Mortgagor of the Loan Documents does not: (i) violate: (A) any existing provision of law, rule, or regulation; (B) Mortgagor's articles of organization and regulations; (C) any provision of any indenture, agreement or other instrument of which Mortgagor is a party or by which it is bound; or (D) any order of any court or other agency of government binding upon Mortgagor; or (ii) result in the creation of any lien, charge, or encumbrance other than the lien created by this Mortgage; and (d) the Obligations are not also secured, directly or indirectly, by "margin securities" or "stock" as defined, respectively, in Regulation G and Regulation U issued by the Board of Governors of the Federal Reserve System.

Section 5.13    After Acquired Property.  To the extent permitted by law, all real or personal property now or hereafter attached to, adjoining or used for or in connection with the Property or any part thereof which is acquired by Mortgagor on or after the date hereof shall, immediately upon the acquisition thereof by Mortgagor, and without any further mortgage, conveyance, assignment, security agreement or transfer, become subject to the lien of this Mortgage.  Mortgagor shall execute, acknowledge and deliver to Mortgagee any documents and instruments which Mortgagee may reasonably request from time to time for better assuring, conveying, assigning, transferring, confirming or perfecting Mortgagee's security and rights under this Mortgage.

Section 5.14    Further Assurances. Mortgagor will, at its sole cost and expense, within ten (10) days of a request by Mortgagee for the same, do, execute, acknowledge and deliver and appropriately file

and record, all and every such further acts, conveyances, mortgages, assignments, financing statements, supplemental mortgages, notices, estoppel certificates and assurances as Mortgagee shall, from time to time, require for accomplishing the purposes of this Mortgage and shall pay the expenses of the filing or recording of the same and reimburse Mortgagee for its reasonable legal expenses incurred in connection with the preparation or review thereof. In default of any such execution, acknowledgement, delivery, filing or recording, Mortgagee may, without limitation, exercise the rights conferred upon it in Section 2.15 hereof to execute, acknowledge and file or record any such instrument for and on behalf of Mortgagor, as attorney-in-fact of Mortgagor (which appointment is coupled with an interest and irrevocable), and shall be entitled to reimbursement for its reasonable expenses in connection therewith.

Section 5.15    Compliance with International Trade Control Laws and OFAC Regulations. Mortgagor is not now nor shall it be at any time prior to or at the Closing an individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity (collectively, a "Person") with whom a United States citizen, entity organized under the laws of the United States or its territories or entity having its principal place of business within the United States or any of its territories (collectively, a "U.S. Person"), is prohibited from transacting business of the type contemplated by this Agreement, whether such prohibition arises under United States law, regulation, executive orders and lists published by the Office of Foreign Assets Control, Department of the Treasury ("OFAC") (including those executive orders and lists published by OFAC with respect to Persons that have been designated by executive order or by the sanction regulations of OFAC as Persons with whom U.S. Persons may not transact business or must limit their interactions to types approved by OFAC ("Specially Designated Nationals and Blocked Persons")) or otherwise. Neither Mortgagor nor any Person who owns an interest in Mortgagor (collectively, a "Mortgagor Party") is now nor shall be at any time prior to or at the Closing a Person with whom a U.S. Person, including a "financial institution" as defined in 31 U.S.C. 5312 (a)(z), as periodically amended ("Financial Institution"), is prohibited from transacting business of the type contemplated by this Agreement, whether such prohibition arises under United States law, regulation, executive orders and lists published by the OFAC (including those executive orders and lists published by OFAC with respect to Specially Designated Nationals and Blocked Persons) or otherwise.

Section 5.16    Mortgagor's Funds. Mortgagor has taken, and shall continue to take until the Maturity Date on the Note, such measures as are required by applicable law to assure that the funds used to pay to Mortgagee are derived: (i) from transactions that do not violate United States law nor, to the extent such funds originate outside the United States, do not violate the laws of the jurisdiction in which they originated; and (ii) from permissible sources under United States law and to the extent such funds originate outside the United States, under the laws of the jurisdiction in which they originated.

Section 5.17    Anti-Money Laundering Laws. To the best of Mortgagor's knowledge after making due inquiry, neither Mortgagor nor any Mortgagor Party, nor any Person providing funds to Mortgagor: (i) is under investigation by any governmental authority for, or has been charged with, or convicted of, money laundering, drug trafficking, terrorist-related activities, any crimes which in the United States would be predicate crimes to money laundering, or any violation of any Anti Money Laundering Laws (as hereinafter defined in this Section); (ii) has been assessed civil or criminal penalties under any Anti-Money Laundering Laws; or (iii) has had any of its funds seized or forfeited in any action under any Anti Money Laundering Laws. For purposes of this Subsection (i), the term "Anti-Money Laundering Laws" shall mean all applicable laws, regulations and sanctions, state and federal, criminal and civil, that: (w) limit the use of and/or seek the forfeiture of proceeds from illegal transactions; (x) limit commercial transactions with designated countries or individuals believed to be terrorists, narcotics dealers or otherwise engaged in activities contrary to the interests of the United States; (y) require identification and documentation of the

26

parties with whom a Financial Institution conducts business; or (z) are designed to disrupt the flow of funds to terrorist organizations. Such laws, regulations and sanctions shall be deemed to include the USA PATRIOT Act of 2001, Pub. L. No. 107-56 (the "Patriot Act"), the Bank Secrecy Act of 1970, as amended, 31 U.S.C. Section 5311 et. seq., the Trading with the Enemy Act, 50 U.S.C. App. Section 1 et. seq., the International Emergency Economic Powers Act, 50 U.S.C. Section 1701 et. seq., and the sanction regulations promulgated pursuant thereto by the OFAC, as well as laws relating to prevention and detection of money laundering in 18 U.S.C. Sections 1956 and 1957.

Section 5.18    Mortgagor Compliance with Patriot Act. Mortgagor is in compliance with any and all applicable provisions of the Patriot Act.

Section 5.19    Cooperation with Mortgagee. For a period of two (2) years after the Maturity Date on the Note, Mortgagor agrees to cooperate with Mortgagee, and to cause each Mortgagor Party to cooperate with Mortgagee, in providing such additional information and documentation on Mortgagor's and each Mortgagor Party's legal or beneficial ownership, policies, procedures (to the extent required by applicable laws) and sources of funds as Mortgagee deems reasonably necessary or prudent to enable Mortgagee to comply with Anti-Money Laundering Laws now in existence or hereafter enacted or amended.

Section 5.20    Mortgagor's representations, warranties and agreements set forth in this Agreement shall survive the Closing or termination of this Agreement. Mortgagor hereby acknowledges and agrees that it is a requirement of this Agreement and of Mortgagor's obligations hereunder that all of Mortgagor's representations and warranties contained herein shall be true and correct on the date hereof and remain true and correct through and including the Maturity Date of the Note, and that any inaccuracy in Mortgagor's representations and warranties and/or Mortgagor's failure to notify Mortgagee prior to the Maturity Date of the Note of any inaccuracies therein shall be defaults by Mortgagor under this Agreement.

## ARTICLE VI.
### MISCELLANEOUS

Section 6.1    Release. If all of Mortgagor's obligations under the Loan Documents are paid in full in accordance with the terms of the Loan Documents, no event of default then exists under the Loan Documents, and if Mortgagor shall well and truly perform all of Mortgagor's covenants contained herein, then this conveyance shall become null and void and be released at Mortgagor's request and expense.

Section 6.2    Rights Cumulative. Mortgagee shall have all rights, remedies and recourse granted herein, in the Loan Documents and available at law or in equity (including, without limitation, those granted by the Code and applicable to the Property or any portion thereof), and the same (a) shall be cumulative and concurrent; (b) may be pursued separately, successively or concurrently against Mortgagor or others obligated for the Obligation or any part thereof, or against any one or more of them, or against the Property, at the sole discretion of Mortgagee; (c) may be exercised as often as occasion therefor shall arise, it being agreed by Mortgagor that the exercise, discontinuance of the exercise of or failure to exercise any of the same shall in no event be construed as a waiver or release thereof or of any other right, remedy or recourse; and (d) are intended to be, and shall be, nonexclusive. All rights and remedies of Mortgagee hereunder and under the other Loan Documents shall extend to any period after the initiation of foreclosure proceedings, judicial or otherwise, with respect to the Property.

Section 6.3    Waiver. Any and all covenants in this Mortgage may, from time to time, by instrument in writing signed by Mortgagee and delivered to Mortgagor, be waived to such extent and in such manner as Mortgagee may desire, but no such waiver shall ever affect or impair Mortgagee's rights, remedies, powers, privileges, liens, titles and security interests hereunder except to the extent so specifically

stated in such written instrument. No waiver of any default on the part of Mortgagor or a breach of any of the provisions of this Mortgage or of any Loan Document shall be considered a waiver of any other or subsequent default or breach, and no delay or omission in exercising or enforcing the rights and powers herein granted shall be construed as a waiver of such rights and powers, and likewise no exercise or enforcement of any rights or powers hereunder shall be held to exhaust such rights and powers, and every such right and power may be exercised from time to time. No notice to or demand on Mortgagor in any case shall of itself entitle Mortgagor to any other or further notice or demand in similar or other circumstances. The granting of any consent or approval by Mortgagee shall be limited to the specific instance and shall not waive or exhaust the requirement of consent or approval in any other instance. Except as otherwise specified herein, in any instance hereunder where Mortgagee's approval or consent is required or the exercise of Mortgagee's judgment is required, the granting or denial of such approval or consent and the exercise of such judgment shall be within the sole discretion of Mortgagee, and Mortgagee shall not for any reason or to any extent, be required to grant such approval or consent or exercise such judgment in any particular manner regardless of the reasonableness of the request or of Mortgagee's judgment.

Section 6.4    Payments. Acceptance by Mortgagee of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be a default.

Section 6.5    Intentionally Deleted.

Section 6.6    Change of Security. Any part of the Property may be released, regardless of consideration, by Mortgagee from time to time without impairing, subordinating or affecting in any way the lien, security interest and other rights hereof against the remainder. The lien, security interest and other rights granted hereby shall not be affected by any other security taken for the Obligation or any part thereof. The taking of additional security, or the extension, renewal or rearrangement of the Obligation or any part thereof, shall not release or impair the lien, security interest and other rights granted hereby, or affect the liability of any endorser or guarantor or improve the right of any junior lienholder; and this Mortgage, as well as any instrument given to secure any renewal, extension or rearrangement of the Obligation or any part thereof, shall be and remain a first and prior lien, except as otherwise provided herein, on all of the Property not expressly released until the Obligation is fully paid and performed.

Section 6.7    Controlling Agreement. The parties hereto intend to conform strictly to the applicable usury laws. All agreements between Mortgagor (and any other party liable for any part of the Obligation) and Mortgagee, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no event whatsoever, whether by reason of acceleration of the maturity of the Obligation or otherwise, shall the interest contracted for, charged or received by Mortgagee hereunder or otherwise exceed the maximum amount permissible under applicable law. If from any circumstances whatsoever interest would otherwise be payable to Mortgagee in excess of the maximum lawful amount, the interest payable to Mortgagee shall be reduced automatically to the maximum amount permitted under applicable law. If Mortgagee shall ever receive anything of value deemed interest under applicable law which would apart from this provision be in excess of the maximum lawful amount, the amount which would have been excessive interest shall be applied to the reduction of the principal amount owing on the Obligation in inverse order of maturity and not to the payment of interest, or if such amount which would have been excessive interest exceeds the unpaid principal balance of the Obligation, such excess shall be refunded to Mortgagor, or to the maker of the Note or other evidence of indebtedness if other than Mortgagor. All interest paid or agreed to be paid to Mortgagee shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full stated term, including any renewal or extension, of such indebtedness so that the amount of interest on account of such indebtedness does not exceed the maximum permitted by applicable law. The terms and provisions of this Section shall control and

supersede every other provision of all existing and future agreements between Mortgagor, the maker of the Note or other evidence of indebtedness if other than Mortgagor, and Mortgagee.

Section 6.8    Effect of Transfer on Mortgagor's Liability.    If the ownership (legal or beneficial) of the Property or any part thereof becomes vested in a person other than Mortgagor, or in the event of a change in ownership (legal or beneficial) of any Mortgagor other than an individual, Mortgagee may, without notice to or consent of Mortgagor or Mortgagor's successors, deal with such successor or successors in interest with reference to this Mortgage and the Obligation either by way of forbearance on the part of Mortgagee, or extension of time of payment of the Obligation, or release of all or any part of the Property or any other property securing payment of the Obligation, or otherwise, without in any way modifying or affecting Mortgagee's rights and liens hereunder or the liability of Mortgagor or any other party liable for payment of the Obligation, in whole or in part.

Section 6.9    Waiver of Right to Marshal.    Mortgagor hereby waives all rights of marshaling in event of any foreclosure of the liens and security interests hereby created.

Section 6.10    Subrogation.    To the extent that proceeds of the Obligation are used to renew, extend or pay any outstanding debt or to perform any obligation, such proceeds have been advanced by Mortgagee at Mortgagor's request, and Mortgagee shall be subrogated to all liens, security interests, rights, priorities, powers, titles, equities and interests owned or held by any owner or holder of such outstanding debt or obligation, however remote, irrespective of whether the same are released of record, and all of the same are recognized as valid and subsisting and are renewed, continued and preserved in force to secure the Obligation; provided, however, that if and to the extent Mortgagee desires in each case, the terms and provisions hereof and of the other Loan Documents shall govern the rights and remedies of Mortgagee and shall supersede the terms, provisions, rights, and remedies under any lien, security interest, charge or other encumbrance to which Mortgagee is subrogated hereunder.

Section 6.11    Covenant to Perform.    Mortgagor and each subsequent owner of the Property, or any part thereof, covenants and agrees that Mortgagor and any subsequent owner will perform or cause to be performed, each and every condition, term, provision and covenant of this Mortgage.

Section 6.12    Notices.    All notices, consents, approvals and requests required or permitted hereunder or under any other Loan Document shall be given in writing and shall be effective for all purposes if hand delivered or sent by (a) certified or registered United States mail, postage prepaid, return receipt requested or (b) expedited prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery, and by telecopier (with answer back acknowledged), addressed as follows (or at such other address and a person as shall be designated from time to time by any party hereto, as the case may be, in a written notice to the other parties hereto in the manner provided for in this Section):

| If to Mortgagee: | LOAN FUNDER LLC, SERIES 7693,<br>645 Madison Avenue, Floor 19,<br>New York, NY 10022 |
|---|---|
| With a copy to: | LaRocca, Hornik, Rosen, & Greenberg<br>83 South Street<br>Freehold, New Jersey 07728<br>Attention: Jonathan L. Hornik, Esq.<br>Facsimile No.: (732) 409-0350 |

29

remedies hereunder shall operate as a waiver or preclude the exercise of any other rights or remedies hereunder.

(b)     Wherever pursuant to this Mortgage, Mortgagee exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Mortgagee, the decision of Mortgagee to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Mortgagee and shall be final and conclusive.

(c)     This Mortgage shall be construed without any regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted.

(d)     All terms and words used in this Mortgage, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require.

(e)     The paragraph headings in this Mortgage are for convenience of reference only and shall not limit or otherwise affect any of the terms hereof.

(f)     If any words or phrases in this Mortgage have been stricken out or otherwise eliminated, this Mortgage shall be construed as if the words or phrases so stricken out or otherwise eliminated were never included in this Mortgage and no implication or inference shall be drawn from the fact that said words or phrases were so stricken out or otherwise eliminated.

(g)     The words "herein," "hereby," "hereunder," and words of similar import shall be construed to refer to this Mortgage as a whole, and not to any particular Section, unless expressly so stated.

(h)     All covenants contained herein shall inure to the benefit of and shall be binding upon the Mortgagor and Mortgagee and shall run with the Property until the Obligations have been satisfied.

(i)     Mortgagor is hereby prohibited from exercising against Mortgagee any right or remedy which it might otherwise be entitled to exercise against any one or more (but less than all) of the individual parties constituting Mortgagee, including, without limitation, any right of set-off or any defense.

Section 6.16     Mortgagor's Waivers.  Mortgagor, for itself and its successors and assigns, hereby irrevocably waives and releases to the extent permitted by law, and whether now or hereafter in force, (a) the benefit of any and all valuation and appraisement laws; (b) any right of redemption after the date of any sale of the Property upon foreclosure, whether statutory, common law or otherwise, in respect of the Property; (c) all exemption laws whatsoever and all moratoriums, extensions or stay laws or rules, or orders of Court in the nature of any one or more of them; and (d) all right and possibility of dower, curtesy and homestead in and to the Property.

Section 6.17     Environmental Matters.

(a)     Mortgagor represents and warrants that to the best of its knowledge, there are no Hazardous Substances or Hazardous Materials (hereinafter defined) in or on the Property, other than such as may have been disclosed to Mortgagee in writing prior to the date hereof.

31

(b)     Without Mortgagee's prior consent, which may be granted or withheld in Mortgagee's sole discretion, Mortgagor shall make or permit no use of the Property that would involve the generation, storage, treatment, discharge, handling, refining, release or disposal of any Hazardous Substances.

(c)     At its sole cost and expense, Mortgagor shall, and shall cause any tenant or occupant of the Property to, comply with all applicable federal, state and local laws, rules, regulations and orders with respect to the discharge, generation, removal, transportation, storage, treatment and handling of Hazardous Substances, including but not limited to the Federal Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended by the Superfund Amendment and Reauthorization Act of 1986, the federal Resource Conservation and Recovery Act, as amended, the Federal Water Pollution Control Act, the Federal Clean Air Act, the federal regulations promulgated pursuant to any of the foregoing, and any and all environmental, health, or safety laws of the State, as amended from time to time, and any regulations promulgated thereunder, pay immediately when due the cost of removal of Hazardous Substances, and keep the Property free and clear of any lien imposed pursuant to such laws, rules, regulations or orders. In the event Mortgagor fails to do so, Mortgagee may declare this Mortgage to be in default.

(d)     Mortgagor shall indemnify Mortgagee and hold Mortgagee harmless from and against all loss, cost, damage and expense (including, without limitation, reasonable attorneys' fees and costs incurred in the investigation, defense and settlement of claims) that Mortgagee may incur as a result of or in connection with the assertion against Mortgagee or the Property of any claim relating to the presence or removal of any hazardous waste or substance referred to in this paragraph, or compliance with any federal, state or local laws, rules, regulations or orders relating thereto unless such claim arises solely from Mortgagee's gross negligence or willful misconduct.

(e)     The term "Hazardous Substances" or "Hazardous Materials" as used in this Mortgage shall include, without limitation, gasoline, petroleum products, explosives, radioactive materials, polychlorinated biphenyls or related or similar materials, or any other substance or material defined as a hazardous or toxic substance or material by any federal, state or local law, ordinance, rule, or regulation.

(f)     Mortgagor shall notify Mortgagee immediately in writing upon learning of:

(i)     any spill, discharge or release of any Hazardous Substances on or near the Property that may involve a cleanup cost of One Thousand and 00/100 ($1,000.00) Dollars or more;

(ii)     any circumstances that may result in a violation of this Section 6.17;

(iii)     any governmental inquiry or inspection is undertaken or notice issued by any governmental agency or any source whatsoever with respect to Hazardous Materials on, from, affecting, or used, stored or discharged by any occupant of, the Property.

(g)     If any investigation, environmental report or governmental investigation or order indicates that there may exist any damage or risk to the Property, or any liability of Mortgagor relating to any Hazardous Materials, or other environmental conditions with respect to the Property, then Mortgagee may require Mortgagor to furnish immediately an indemnity bond in an amount determined by Mortgagee, in its discretion, to be sufficient to pay all actual and estimated cleanup costs and to protect against any liens that may arise with respect to such potential cleanup costs.  Mortgagee's demand that

32

Mortgagor post any bond or other security shall not be a waiver of any default or of any other right or remedy available to Mortgagee.

(h)     The obligations and liabilities of Mortgagor under this <u>Section 6.17</u> shall survive any entry of a judgment of foreclosure or the delivery of a deed in lieu of foreclosure of this Mortgage.

Section 6.18     <u>Asbestos</u>.

(a)     Mortgagor represents and warrants that, to the actual knowledge of Mortgagor, there is no friable asbestos or any material containing asbestos and deemed hazardous by federal, state or local laws, rules, regulations or orders respecting such material ("Asbestos") on the Property.

(b)     Mortgagor shall not install or permit to be installed Asbestos in the Property. With respect to any such material currently present in the Property, Mortgagor shall promptly comply with such federal, state or local laws, rules, regulations or orders at Mortgagor's sole cost and expense. If Mortgagor shall fail to comply with any such law, rule, regulation or order such failure shall constitute an Event of Default.

(c)     Mortgagor (x) shall protect, defend, indemnify and hold Mortgagee harmless from and against all loss, cost, damage and expense (including, without limitation, reasonable attorneys' fees and costs incurred in the investigation, defense and settlement of claims) that Mortgagee may incur as a result of or in connection with the assertion against Mortgagee or the Property of any claim relating to (i) the presence or removal of any asbestos or asbestos containing substance, including, without limitation, the cost of such removal, or (ii) compliance with any federal, state or local laws, rules, regulations or orders relating thereto, and (y) guarantees to Mortgagee the payment of all costs and expenses which may be incurred by Mortgagee in performing any Asbestos remedial action not performed (or caused to be performed) by Mortgagor as required under this Mortgage.

(d)     The obligations and liabilities of Mortgagor under this <u>Section 6.18</u> shall survive any entry of a judgment of foreclosure or the delivery of a deed in lieu of foreclosure of this Mortgage.

Section 6.19     <u>Modifications</u>.  This Mortgage, the Note and all other Obligations are subject to Modification (as defined below).  To the extent permitted by law, this Mortgage secures all Modifications from the date upon which this Mortgage was originally recorded, including future loans and extensions of credit and changes in the interest rate, due date, amount or other terms and conditions of any Obligations.

"Modification" shall have the meaning set forth in <u>N.J.S.A.</u> 46:9-8.2 et seq., which statute relates, inter alia, to changes in the interest rate, due date or other terms or conditions of a "mortgage loan," or future advances pursuant to a "line of credit," as defined in that statute.

Section 6.20     <u>No Cooperative or Condominium</u>.  Mortgagor shall not operate the Property, or permit same to be operated as a cooperative or condominium building(s) in which the tenants or occupants participate in the ownership, control, or management of the Property or any part thereof, as tenants, stockholders or otherwise.

Section 6.21     <u>Severability</u>.  If any provision of this Mortgage or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Mortgage nor the application of such provision to any other person or circumstances shall be affected thereby, but rather the same shall be enforced to the greatest extent permitted by law.  If the rights and liens created by this Mortgage shall be held by a court of competent jurisdiction to be invalid or

unenforceable as to any part of the Obligation, the portion of the Obligation which as the result of such invalidity or unenforceability is no longer secured by the liens and security interests herein granted shall be completely paid prior to the payment of the portion, if any, of the Obligation which shall continue to be secured hereunder, and all payments made on the Obligation shall be considered to have been paid on and applied first to the complete payment of the unsecured portion of the Obligation.

Section 6.22    Headings; Construction.    The headings which have been used throughout this Mortgage have been inserted for convenience of reference only and do not constitute matter to be construed in interpreting this Mortgage. Words of any gender used in this Mortgage shall be held and construed to include any other gender and words in the singular number shall be held to include the plural, and vice versa, unless the context requires otherwise. The words "herein," "hereof," "hereunder" and other similar compounds of the words "here" when used in this Mortgage shall refer to the entire Mortgage and not to any particular provision or section.

Section 6.23    Counterparts.    This Mortgage has simultaneously been executed in a number of identical counterparts, each of which, for all purposes, shall be deemed an original. If any Mortgagor is a corporation, this instrument is executed, acknowledged and delivered by Mortgagor's officers hereunto duly authorized.

Section 6.24    GOVERNING LAW.    THIS MORTGAGE AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAWS CONSIDERATIONS AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, PRIORITY, ENFORCEMENT AND FORECLOSURE OF THE LIENS AND SECURITY INTERESTS CREATED IN THE MORTGAGED PROPERTY UNDER THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE OF Pennsylvania, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF THE STATE, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN THE VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS, AND THE DEBT OR OBLIGATIONS ARISING HEREUNDER (BUT THE FOREGOING SHALL NOT BE CONSTRUED TO LIMIT LENDER'S RIGHTS WITH RESPECT TO SUCH SECURITY INTEREST CREATED IN THE STATE OF Pennsylvania).

Section 6.25    JURISDICTION.    AT MORTGAGEE'S ELECTION, TO BE ENTERED IN ITS SOLE DISCRETION, ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST MORTGAGOR OR MORTGAGEE ARISING OUT OF OR RELATING TO THIS MORTGAGE (OTHER THAN AN ACTION FOR JUDICIAL FORECLOSURE OR TO APPOINT A RECEIVER), THE NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN NEW YORK, AND MORTGAGOR WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND MORTGAGOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING. MORTGAGOR DOES HEREBY DESIGNATE AND APPOINT AN AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND NOTICE OF SAID SERVICE OF MORTGAGOR MAILED OR DELIVERED TO MORTGAGOR IN THE MANNER PROVIDED IN THE MORTGAGE, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON MORTGAGOR IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW

YORK. MORTGAGOR SHALL GIVE PROMPT NOTICE TO MORTGAGEE OF ANY CHANGED ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK (WHICH OFFICE SHALL BE DESIGNATED AS THE ADDRESS FOR SERVICE OF PROCESS), AND SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR.

Section 6.26 PROVISIONAL REMEDIES: FORECLOSURE AND INJUNCTIVE RELIEF. Nothing shall be deemed to apply to limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or non-judicially against any real or personal property collateral, or to exercise judicial or non-judicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver) or (d) pursue rights against Borrower or any other party in a third party proceeding in action bought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding.

Section 6.27 WAIVER OF JURY TRIAL. MORTGAGOR AND MORTGAGEE HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULL TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH -REGARD TO THE NOTE, THIS MORTGAGE, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MORTGAGOR AND MORTGAGEE, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. MORTGAGEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MORTGAGOR.

Section 6.28 Copy of Mortgage. Mortgagor hereby declares and acknowledges that it has received, without charge, a true copy of this Mortgage.

Section 6.29 PENNSYLVANIA POWER OF ATTORNEY PROVISION. If this Mortgage includes any provision which is deemed to be a power of attorney subject to Section 5601.3 of Chapter 56 of the Pennsylvania Probate, Estates and Fiduciaries Code (a "POA Provision"), each POA Provision is hereby modified to include an irrevocable waiver by each principal of the agent's duties set forth in Section 5601.3(b) of said chapter. Without further modifying any POA Provision, each undersigned party hereby acknowledges that in view of the commercial nature of the relationship between the parties hereto, there is no expectation that the agent shall have a duty under any POA Provision to act in the best interest of any principal thereunder, and it is agreed that the agent shall have no such duty.

Section 6.30 Reinstatement Period. Mortgagor's time to reinstate shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Mortgage.

Section 6.31 Purchase Money Mortgage. If any of the debt secured by this Mortgage is lent to Mortgagor to acquire title to the Property, this Mortgage shall be a purchase money mortgage.

Section 6.32    Interest Rate After Judgment.  Mortgagor agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**MORTGAGOR HEREBY ACKNOWLEDGES THAT IT HAS RECEIVED WITHOUT CHARGE A TRUE COPY OF THIS MORTGAGE.**

[Signatures follow on the next page.]

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage and Security Agreement as of the date first above written.

Name: WILLIAM B. STULL

Name:

MORTGAGOR:
**LEWISBERRY PARTNERS LLC**

By: _____
Name:  Richard J Puleo
Title:  Managing Member

STATE OF (PA)
      )ss.:
COUNTY OF (LANC)

I certify that on June 26, 2019, Richard J Puleo came before me in person and stated to my satisfaction that he/she:

(a) made the attached instrument; and

(b) was authorized to and did execute this instrument on behalf of and as Managing Member of LEWISBERRY PARTNERS LLC (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and its members.

_____
NOTARY PUBLIC

> Commonwealth of Pennsylvania - Notary Seal
> William B. Stull, Notary Public
> Lancaster County
> My commission expires November 18, 2019
> Commission number 1162567

37

STATE OF PA )
    )ss.:
COUNTY OF LANC. )

  I certify that on June __, 2019, Richard J Puleo came before me in person and stated to my satisfaction that he/she:

  (a) made the attached instrument; and

  (b) was authorized to and did execute this instrument on behalf of and as Managing Member of LEWISBERRY PARTNERS LLC (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and its members.

             _____
             NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
William B. Stull, Notary Public
Lancaster County
My commission expires November 18, 2019
Commission number 1182557

**EXHIBITS:**

A - Property Description

B - Permitted Encumbrances

C-  Allocated Loan Amounts

# EXHIBIT A

## PROPERTY DESCRIPTION

ALL THOSE CERTAIN TRACTS of land situated in Fairview Township, York County, Pennsylvania, known and numbered as Lots 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77 and 78 on a final plan of lots for Phases 2 & 3 of Revised Pleasant View Planned Residential Development recorded in the Office of the Recorder of Deeds in and for York County, Pennsylvania in Plan Book SS, Page 709, more particularly bounded and described as follows:

LOT 59, 100 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 59 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 60, South 81° 28' 30" West a distance of 115.00' to a point; thence, along Tract #3R, North 8° 31' 30" West a distance of 41.00' to a point; thence, along the same, North 81° 28' 30" East a distance of 115.00' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way, South 8° 31' 30" East a distance of 41.00' to a point and the place of BEGINNING.

CONTAINING: 4,715 square feet, more or less (0.11 acres)

ACCOUNT NO. 2700029015900000000

LOT 60, 102 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 60 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along the Lot 61, South 81° 28' 30" West a distance of 22.00' to point; thence, along the Lot 59, North 81° 28' 30" East a distance of 115.00' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way line, South 8° 31' 30" East a distance of 22.00' to a point, the place of BEGINNING.

CONTAINING: 2,530 square feet, more or less (0.06 acres)

ACCOUNT NO. 2700029016000000000

LOT 61, 104 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 61 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 62, South 81° 28' 30" West a distance of 115.00' to a point; thence, along Tract #3R, North 08° 31' 30" West a distance of 22.00' to a point; thence, along Lot 60, North 81° 28' 30" East a distance of 115.00' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way line, South 08° 31' 30" East a distance of 22.00' to a point and the place of BEGINNING.

CONTAINING: 2,530 square feet, more or less (0.06 acres)

ACCOUNT NO. 2700029016100000000

A-1

LOT 62, 106 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 62 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 63, South 81° 28' 30" West a distance of 115.00' to a point; thence, along Tract #3R, North 08° 31' 30" West a distance of 22.00' to a point; thence, along Lot 61, North 81° 28' 30" East a distance of 115.00' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way line, South 08° 31' 30" East a distance of 22.00' to a point and the place of BEGINNING.

CONTAINING: 2,530 square feet, more or less. (0.06 acres)

ACCOUNT NO. 270002901620000000

LOT 63, 108 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 63 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 64, South 81° 31' 30" West a distance of 22.00' to a point; thence, along Lot 62, North 81° 28' 30" East a distance of 115.00' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way line, S 08° 31' 30" East a distance of 22.00' to a point and the place of BEGINNING.

CONTAINING: 2,530 square feet (0.06 acres)

ACCOUNT NO. 270002901630000000

LOT 64, 110 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 64 as shown on the "Final Subdivision Plan for Phase 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Tract #3R, South 81° 28' 30" West a distance of 115.00' to a point; thence, along the same, North 08° 31' 30" West a distance of 41.00' to a point; thence, along Lot 63, North 81° 28' 30" East a distance of 115.00' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way line, South 08° 31' 30" East a distance of 41.00' to a point and the place of BEGINNING.

CONTAINING: 4,715 square feet, more or less (0.11 acres)

ACCOUNT NO. 270002901640000000

LOT 65, 114 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeast corner of Lot 65 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 66, North 81° 35' 58" West a distance of 122.46' to a point; thence, along Tract #3R, North 07° 22' 17" East a distance of

34.42' to a point; thence, along the same, North 81° 28' 30" East a distance of 22.63' to a point; thence, along the same, North 81° 35' 58" West a distance of 96.78' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way, by a curve to the right with a radius of 275.00' with a length of 41.30', and a chord bearing South 01° 56' 13" West a distance of 41.26' to a point and place of BEGINNING.

CONTAINING: 4,890 square feet (0.11 acres)

ACCOUNT NO. 270002901650000000

LOT 66, 116 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 66 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 67, North 81° 35' 58" West a distance of 122.01' to a point; thence, along Tract #3R, North 07° 22' 17" East a distance of 22.00' to a point; thence, along the Lot 65, South 81° 35' 58" East a distance of 122.46' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way, by a curve to the right with a radius of 275.00' with a length of 22.01', and a chord bearing South 08° 31' 54" West a distance of 22.00' to a point and place of BEGINNING.

CONTAINING: 2,692 square feet, more or less (0.06 acres)

ACCOUNT NO. 270002901660000000

LOT 67, 118 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 67 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 68, North 81° 35' 58" West a distance of 120.04" to a point; thence, along Tract #3R, North 07° 22' 17" East a distance of 22.00' to a point; thence, along Lot 66, South 81° 35' 58" East a distance of 122.01' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way, by a curve to the right with a radius of 275.00' with a length of 10.63', and a chord bearing South 11° 55' 55" West a distance of 10.63' to a point; thence, along said right-of-way line, South 13° 02' 23" West a distance of 11.43' to a point and the place of BEGINNING.

CONTAINING: 2,664 square feet, more or less (0.06 acres)

ACCOUNT NO. 270002901670000000

LOT 68, 120 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 68 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 69, North 76° 57' 37" West a distance of 115.00' to a point; thence, along Tract #3R, North 07° 22' 17" East distance of 47.01' to a point; thence, along Lot 67, South 81° 35' 58" East a distance of 120.04' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way line, South 13° 02' 23" West a distance of 56.48' to a point and the place of BEGINNING.

CONTAINING: 6,069 square feet, more or less (0.14 acres)

ACCOUNT NO. 270002901680000000

LOT 69, 122 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 69 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 70 North 76° 57' 37" West a distance of 115.00 to a point; thence, along Tract #3R, North 13° 02' 23" East a distance of 48.64' to a point; thence, along Lot 68, South 76° 57' 37" East a distance of 115.00 to a point on the western right-of-way line of Scully Place; thence, along said right-of-way line, South 13° 02' 23" West a distance of 48.64 to a point and the place of BEGINNING.

CONTAINING: 5,594 square feet, more or less (0.13 acres)

LOT 70, 124 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 70 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 71, North 76° 57' 37" West a distance of 115.00' to a point; thence, along Tract #3R, North 13° 02' 23" East a distance of 22.00' to a point; thence, along Lot 69, South 76° 57' 37" East a distance of 115.00 to a point on the western right-of-way line of Scully Place; thence, along said right-of-way line, South 13° 02' 23" West a distance of 22.00' to a point and the place of BEGINNING.

CONTAINING: 2,530 square feet, more or less (0.06 acres)

ACCOUNT NO. 270002901700000000

LOT 71, 126 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 71 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 72, North 76° 57' 37" West a distance of 115.00' to a point; thence, along Tract #3R, North 13° 02' 23" East a distance of 22.00' to a point; thence, along Lot 70, South 76° 57' 37" East a distance of 115.00 to a point on the western right-of-way line of Scully Place; thence, along said right-of-way line, South 13° 02' 23" West a distance of 22.00' to a point and the place of BEGINNING.

CONTAINING: 2,530 square feet, more or less (0.06 acres)

ACCOUNT NO. 270002901710000000

LOT 72, 128 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 72 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 73,

B-3

North 76° 57' 37" West a distance of 115.59' to a point; thence, along Tract #3R, North 13° 02' 23" East a distance of 22.00' to a point; thence, along Lot 71, South 76° 57' 37" East a distance of 115.00' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way line, South 13° 02' 23" West a distance of 2.46' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way, by a curve to the left, with a radius of 325.00 a length of 19.55, with a chord bearing South 11° 18' 59" West a distance of 19.55' to a point and the place of BEGINNING.

CONTAINING: 2,534 square feet, more or less (0.06 acres)

ACCOUNT NO. 270002901720000000

LOT 73, 130 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 73 as shown on the "Final Subdivision Plan for Phase 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 74, North 76° 57' 37" West a distance of 117.67' to a point; thence, along Tract #3R, North 13° 02' 23" East a distance of 22.00' to a point; thence, along Lot 72, South 76° 57' 37" East a distance of 115.59' to a point on the western right-of-way line of Scully Place; thence, along said right-of-way by a curve to the left, with a radius of 325.00 a length of 22.10, with a chord bearing South 07° 38' 41" West a distance of 22.10' to a point and the place of BEGINNING.

CONTAINING: 2,563 square feet, more or less. (0.06 acres)

ACCOUNT NO. 270002901730000000

LOT 74, 132 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 74 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 75, South 88° 32' 06" West a distance of 122.41' to a point; thence, along Tract #3R, North 11° 54' 18" West a distance of 16.25' to a point; thence, along the same, North 13° 02' 23" East a distance of 55.78' to a point; thence, along Lot 73, South 76° 57' 37" East a distance of 117.67' to a point on the western right-of-way line of Scully Place; thence along said right-of-way, by a curve to the left, with a radius of 325.00 a length of 40.62, with a chord bearing South 02° 06' 57" West a distance of 40.60' to a point and place of BEGINNING.

CONTAINING: 6,802 square feet, more or less (0.16 acres)

ACCOUNT NO. 270002901740000000

LOT 75, 134 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 75 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 75, South 78° 05' 42" West a distance of 115.38' to a point; thence along Tract #3R, North 11° 54' 18" West a distance of 65.39' to a point; thence along Lot 74, North 88° 32' 06" East a distance of 122.41' to a point on the western right-of-way line of Scully Place; thence along said right-of-way, by a curve to the left having a radius of

325.00' a length of 43.53' and having a chord bearing South 05° 18' 06" East a distance of 43.50' to a point and the place of BEGINNING.

CONTAINING: 6,407 sq. feet (0.15 acres) more or less.

Account Number: 270002901750000000

LOT 76, 136 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 76 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D.)"; thence, along Lot 77, South 78° 05' 42" West a distance of 115.00' to a point; thence along Tract #3R, North 11° 54' 18" West a distance of 22.00' to a point; thence along Lot 75 North 78° 05' 42" East a distance of 115.38' to a point on the western right-of-way line of Scully Place; thence long said right-of-way, by a curve to the left having a radius of 325.00' a length of 15.69', and having a chord bearing South 10° 31' 18" East a distance of 15.69' to a point on the western right-of-way line of Scully Place; thence along said right-of-way line, South 11° 54' 18" East a distance of 6.32' to a point and the place of BEGINNING

CONTAINING: 2,532 sq. feet (0.06 acres) more or less.

Account Number: 270002901760000000

LOT 77, 138 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 77 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D)"; thence along Lot 76, South 78° 05' 42" West a distance of 115.00' to a point; thence along Tract #3R, North 11° 54' 18" West a distance of 22.00' to a point; thence along Lot 76 North 78° 05' 42" East a distance of 115.00' to a point on the western right-of-way line of Scully Place; thence along said right-of-way line South 11° 54' 18" East a distance of 22.00' to a point and the place of BEGINNING.

CONTAINING: 2,350 sq. feet (0.06 acres) more or less.

Account Number: 270002901770000000

LOT 78, 140 SCULLY PLACE

ALL THAT CERTAIN tract of land situated in Fairview Township, York County, Pennsylvania, more particularly bounded and described as follows:

BEGINNING at a point said point being the southeastern corner of Lot 78 as shown on the "Final Subdivision Plan for Phases 2 & 3 of Revised Pleasant View Planned Residential Development (P.R.D)"; thence along Tract #3R, South 78° 05' 42" West a distance of 115.00' to a point; thence along the same, North 11° 54' 18" West a distance of 41.00' to a point; thence along Lot 77, North 78° 05' 42" East a distance of 115.00' to a point on the western right-of-way line of Scully Place; thence

CONTAINING: 4,715 sq. fee (0.11 acres) more or less.

Account Number: 270002901780000000

## EXHIBIT B

## PERMITTED ENCUMBRANCES

As outlined on Schedule B of the Lender's title policy

**EXHIBIT "C"**

**ALLOCATED LOAN AMOUNTS**

| Address | County | State | Zipcode | Allocated Loan Amount |
|---|---|---|---|---|
| 100 Scully Place | York County | PA | 08401 | $148,785.05 |
| 102 Scully Place | York County | PA | 08401 | $137,626.17 |
| 104 Scully Place | York County | PA | 08401 | $137,626.17 |
| 106 Scully Place | York County | PA | 08401 | $137,626.17 |
| 108 Scully Place | York County | PA | 08401 | $137,626.17 |
| 110 Scully Place | York County | PA | 08401 | $148,785.05 |
| 114 Scully Place | York County | PA | 08401 | $152,504.67 |
| 116 Scully Place | York County | PA | 08401 | $137,626.17 |
| 118 Scully Place | York County | PA | 08401 | $137,626.17 |
| 120 Scully Place | York County | PA | 08401 | $152,504.67 |
| 122 Scully Place | York County | PA | 08401 | $152,504.67 |
| 124 Scully Place | York County | PA | 08401 | $137,626.17 |
| 126 Scully Place | York County | PA | 08401 | $137,626.17 |
| 128 Scully Place | York County | PA | 08401 | $137,626.17 |
| 130 Scully Place | York County | PA | 08401 | $137,626.17 |
| 132 Scully Place | York County | PA | 08401 | $152,504.67 |
| 134 Scully Place | York County | PA | 08401 | $152,504.67 |
| 136 Scully Place | York County | PA | 08401 | $137,626.17 |
| 138 Scully Place | York County | PA | 08401 | $137,626.17 |
| 140 Scully Place | York County | PA | 08401 | $152,504.67 |
| 142 Scully Place | York County | PA | 08401 | $156,224.30 |
| 144 Scully Place | York County | PA | 08401 | $156,224.30 |
| 146 Scully Place | York County | PA | 08401 | $156,224.30 |
| 148 Scully Place | York County | PA | 08401 | $156,224.30 |
| 135 Scully Place | York County | PA | 08401 | $182,261.68 |
| 133 Scully Place | York County | PA | 08401 | $156,224.30 |
| 131 Scully Place | York County | PA | 08401 | $156,224.30 |
| 129 Scully Place | York County | PA | 08401 | $156,224.30 |
| 127 Scully Place | York County | PA | 08401 | $156,224.30 |
| 125 Scully Place | York County | PA | 08401 | $156,224.30 |
| 123 Scully Place | York County | PA | 08401 | $156,224.30 |
| 121 Scully Place | York County | PA | 08401 | $156,224.30 |
| 111 Scully Place | York County | PA | 08401 | $182,261.68 |
| 109 Scully Place | York County | PA | 08401 | $156,224.30 |
| 107 Scully Place | York County | PA | 08401 | $156,224.30 |
| 105 Scully Place | York County | PA | 08401 | $156,224.30 |
| 103 Scully Place | York County | PA | 08401 | $156,224.30 |
| 101 Scully Place | York County | PA | 08401 | $185,981.31 |
| 24 Kindswood Drive | York County | PA | 08401 | $182,261.68 |
| 22 Kingswood Drive | York County | PA | 08401 | $185,981.31 |
| 18 Kingswood Drive | York County | PA | 08401 | $182,261.68 |
| 20 Kingswood Drive | York County | PA | 08401 | $182,261.68 |
| 16 Kingswood Drive | York County | PA | 08401 | $185,981.31 |
| 14 Kingswood Drive | York County | PA | 08401 | $182,261.68 |
| 12 Kingswood Drive | York County | PA | 08401 | $185,981.31 |

| 10 Kingswood Drive | York County | PA | 08401 | $182,261.68 |
| 8 Kingswood Drive | York County | PA | 08401 | $182,261.68 |
| 6 Kingswood Drive | York County | PA | 08401 | $182,261.68 |
| 4 Kingswood Drive | York County | PA | 08401 | $182,261.68 |
| 2 Kingswood Drive | York County | PA | 08401 | $185,981.31 |

# Exhibit D