1. **By this Agreement**, dated _____12/16/2020_____
   Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

2. **PURCHASE PRICE AND DEPOSITS (4-14)**
   (A) Purchase Price $ _____257000_____
   ( _____two hundred fifty-seven thousand_____ U.S. Dollars), to be paid by Buyer as follows:
   1. Initial Deposit, within _____ days (5 if not specified) of Execution Date,
      if not included with this Agreement:  $ _____6000_____
   2. Additional Deposit within _____ days of the Execution Date:  $ _____
   3. _____  $ _____
   Remaining balance will be paid at settlement.
   (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.
   (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____N/A_____ ), who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

3. **SELLER ASSIST (If Applicable) (1-10)**
   Seller will pay $ _____N/A_____ or _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

4. **SETTLEMENT AND POSSESSION (4-14)**
   (A) Settlement Date is _____01/28/2021_____ , or before if Buyer and Seller agree.
   (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.
   (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: _____
   (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
      1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
      2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.
   (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
   (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
   (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.
   (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
   ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.

5. **DATES/TIME IS OF THE ESSENCE (1-10)**
   (A) Written acceptance of all parties will be on or before: ~~12/17/2020 9:00pm~~ 12/18/2020
   (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.
   (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. **All changes to this Agreement should be initialed and dated.**
   (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.
   (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

Buyer Initials: _PK_ _AK_     ASR Page 2 of 14     Seller Initials: _RJP_

6. **ZONING (4-14)**
   Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdividable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
   **Zoning Classification, as set forth in the local zoning ordinance:** _____**Residential**_____

7. **FIXTURES AND PERSONAL PROPERTY (1-20)**
   (A) It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be regarded as part of the Property and therefore included in a sale. Buyer and Seller are encouraged to be specific when negotiating what items will be included or excluded in this sale.
   (B) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens, and other items including plumbing; heating; gas fireplace logs; radiator covers; hardwired security systems; thermostats; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, solar panels, windmills, water treatment systems, propane tanks and satellite dishes. Unless stated otherwise, the following items are included in the sale, at no additional cost: _____

   | Existing Washer/Dryer, Gas Stove, Dishwasher, Built-in Microwave, Window/Door Blinds |
   |---|

   (C) The following items are not owned by Seller and may be subject to a lease or other financing agreement. Contact the provider/vendor for more information (e.g., solar panels, windmills, water treatment systems, propane tanks and satellite dishes): _____

   (D) EXCLUDED fixtures and items: _____

8. **MORTGAGE CONTINGENCY (6-19)**
   ☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.
   ☑ ELECTED.
   (A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ _____**207000**_____ | Loan Amount $ _____ |
| Minimum Term ____**30**____ years | Minimum Term _____ years |
| Type of mortgage ____**Conventional Fixed**____ | Type of mortgage _____ |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed __**80**__ % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender ____**Homesale Mortgage**____ | Mortgage lender _____ |
| Interest rate __**2.875**__ %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender**, not to exceed a maximum interest rate of __**3.375**__ %. | Interest rate _____ %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender**, not to exceed a maximum interest rate of _____ %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

   (B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage application(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case no later than _____**01/18/2021**_____.
   1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing.
   2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s):
      a. Does not satisfy the terms of Paragraph 8(A), OR
      b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within __7__ DAYS after the date indicated in Paragraph 8(B), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).
   3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement,

Buyer Initials: _PK_ _AJK_  12/16/20  12/16/20  11:33 AM EST  11:35 AM EST  dotloop verified  dotloop verified

ASR Page 3 of 14

Seller Initials: _RJP_  12/16/20  6:26 PM EST  dotloop verified

all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

(C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher or lower than the Purchase Price and/or market price of the property.

(D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s), Buyer will do so at least __15__ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage lender(s) to make the above mortgage term(s) available to Buyer.

(E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage application (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process. Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan application.

(F) **Buyer will be in default of this Agreement if Buyer furnishes false information** to anyone concerning Buyer's financial and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to reject, or refuse to approve or issue, a mortgage loan commitment.

(G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within __5__ DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's expense.

1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.
2. If Seller will not make the required repairs, **or if Seller fails to respond within the stated time,** Buyer will, within __5__ DAYS, notify Seller of Buyer's choice to:
   a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR
   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

**If Buyer fails to respond** within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice to Seller within that time, **Buyer will accept the Property,** make the required repairs/improvements at Buyer's expense and agree to the RELEASE in Paragraph 28 of this Agreement.

### FHA/VA, IF APPLICABLE

(H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $_____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.

**Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department, makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years, or both."

(I) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement**
☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that FHA will not perform a home inspection nor guarantee the price or condition of the Property.
☐ Buyer will apply for Section 203(k) financing, and this contract is contingent upon mortgage approval (See Paragraph 8(B)) and Buyer's acceptance of additional required repairs as required by the lender.

(J) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transaction is attached to this Agreement.

Buyer Initials: PK 12/16/20 11:33 AM EST dotloop verified / QJK 12/16/20 11:35 AM EST dotloop verified    ASR Page 4 of 14    Seller Initials:  RJP 12/16/20 6:26 PM EST dotloop verified

9. **CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**
   If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer having incurred a new financial obligation; entry of a judgment against Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to purchase.**

10. **SELLER REPRESENTATIONS (1-20)**
    (A) **Status of Water**
        Seller represents that the Property is served by:
        ☑ Public Water    ☐ Community Water    ☐ On-site Water    ☐ None    ☐ _____
    (B) **Status of Sewer**
        1. Seller represents that the Property is served by:
           ☑ Public Sewer    ☐ Community Sewage Disposal System    ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
           ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)    ☐ Holding Tank (see Sewage Notice 3)
           ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
           ☐ None (see Sewage Notice 1)    ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
           ☐ _____
        2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
           **Notice 1: There is no currently existing community sewage system available for the subject property.** Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter, repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The local agency charged with administering the Act will be the municipality where the Property is located or that municipality working cooperatively with others.
           **Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.
           **Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site.** Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank from the date of its installation or December 14, 1995, whichever is later.
           **Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the distance specified by regulation.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the horizontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the absorption area shall be 100 feet.
           **Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations.** Sewage facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.
    (C) **Historic Preservation**
        Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
        _____
    (D) **Land Use Restrictions**
        1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land Use Restrictions below):
           ☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)
           ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
           ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
           ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
           ☐ Other _____
        2. **Notices Regarding Land Use Restrictions**
           a. **Pennsylvania Right-To-Farm Act**: The property you are buying may be located in an area where agricultural operations take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
           b. **Clean and Green Program**: Properties enrolled in the Clean and Green Program receive preferential property tax assessment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that may result in the future as a result of any change in use of the Property or the land from which it is being separated.

Buyer Initials: PK / QK 12/16/20    ASR Page 5 of 14    Seller Initials: RGP 12/16/20