# Exhibit F

dotloop signature verification: dtlp.us/Kcwt-7yl7-blJd

Case 221-1103277-eff   Doc 715-32   Filed 02/07/21   Entered 02/07/21 16:20:43   Desc
Exhibit D: Medium to Set  Page 2 of 38

STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE                    ASR
This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

## PARTIES

**BUYER(S)** kristine fischer and Jamie T. Fischer

**SELLER(S)** Lewisberry Partners LLc

**BUYER'S MAILING ADDRESS:**
3420 Kingston, York, PA 17402

**SELLER'S MAILING ADDRESS:**
27 Nutt road, Phoenixville, PA 19460

## PROPERTY

ADDRESS (including postal city) 8 Kingswood Drive
Lewisberry, PA 17339                                                    ZIP 17339                    ,
in the municipality of Fairview Township                    , County of York County                    ,
in the School District of West Shore                    , in the Commonwealth of Pennsylvania.
Tax ID #(s) 27-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-00-000000                                                    and/or
Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): 2700029015000000001

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Buyer is not represented by a broker)**

| | |
|---|---|
| Broker (Company) Country Home Real Estate Inc | Licensee(s) (Name) david leister |
| Company License # RB048078C | State License # RS221211C |
| Company Address 1911 E Market | Direct Phone(s) 717-755-1800 |
| York PA 17402 | Cell Phone(s) 7174958147 |
| Company Phone 717-755-1800 | Email dave@countryhomeinc.com |
| Company Fax | Licensee(s) is (check only one): |
| Broker is (check only one): | ☑ Buyer Agent (all company licensees represent Buyer) |
| ☑ Buyer Agent (Broker represents Buyer only) | ☐ Buyer Agent with Designated Agency (only Licensee(s) named |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | above represent Buyer) |
| | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Seller is not represented by a broker)**

| | |
|---|---|
| Broker (Company) Keller Williams of Central PA | Licensee(s) (Name) Valerie Taylor |
| Company License RB065950 | State License # RS135949A |
| Company Address 2040 Good Hope Road | Direct Phone(s) |
| Enola PA 17025 | Cell Phone(s) 717-576-6669 |
| Company Phone 717-761-4300 | Email valerietaylor@kw.com |
| Company Fax | Licensee(s) is (check only one): |
| Broker is (check only one): | ☑ Seller Agent (all company licensees represent Seller) |
| ☑ Seller Agent (Broker represents Seller only) | ☐ Seller Agent with Designated Agency (only Licensee(s) named |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | above represent Seller) |
| | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS therre are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

**By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.**

Buyer Initials: [initials] 12/20/20  [initials] 12/20/20
5:19 AM EST     6:51 AM EST
dotloop verified  dotloop verified

ASR Page 1 of 14

Seller Initials: RJP 12/20/20
2:03 PM EST
dotloop verified



Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2020
rev. 5/20; rel. 7/20

dotloop signature verification: dtlp.us/Kcwt-7yl7-bJUd

Case 21-10827-eff Doc 715-52 Filed 024/067/21 Entered 024/067/21 167:2034:438 Desc
Exhibit D: Motion to Sell Part 3 of 15 Page 3 of 38

1. **By this Agreement**, dated 12/19/2020 ,
Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

2. **PURCHASE PRICE AND DEPOSITS (4-14)**

   (A) Purchase Price $265,000
   (two hundred sixty-five thousand
                                                                                    U.S. Dollars), to be paid by Buyer as follows:

   1. Initial Deposit, within _____ days (5 if not specified) of Execution Date,
      if not included with this Agreement:                                   $ 2000
   2. Additional Deposit within _____ days of the Execution Date:          $
   3.                                                                          $
   Remaining balance will be paid at settlement.

   (B) **All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.**

   (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____
                                                                                                          ),
   who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

3. **SELLER ASSIST (If Applicable) (1-10)**

   Seller will pay $0                                  or 0                    % of Purchase Price (0 if not specified) toward
   Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

4. **SETTLEMENT AND POSSESSION (4-14)**

   (A) Settlement Date is 02/19/2021                                          , or before if Buyer and Seller agree.

   (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.

   (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:

   (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
   1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
   2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.

   (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____

   (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____

   (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.

   (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
   ☐ **Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.**

5. **DATES/TIME IS OF THE ESSENCE (1-10)**

   (A) Written acceptance of all parties will be on or before: 12/20/2020

   (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.

   (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. **All changes to this Agreement should be initialed and dated.**

   (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.

   (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

dotloop signature verification: dtlp.us/Kcwt-7yi7-bJUd

Case 2:21-cv-03227-eff   Doc 715-32   Filed 02/06/21   Entered 02/06/21 16:20:43   Desc
Exhibit D: Motion for Sanctions Part 1 of 1   Page 4 of 38

66 **6. ZONING (4-14)**
67     Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdi-
68     vidable} is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if
69     voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
70     **Zoning Classification, as set forth in the local zoning ordinance:** <u>Residential</u>

71 **7. FIXTURES AND PERSONAL PROPERTY (1-20)**
72    (A)  It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be
73           regarded as part of the Property and therefore included in a sale. Buyer and Seller are encouraged to be specific when negotiating
74           what items will be included or excluded in this sale.
75    (B)  INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens,
76           and other items including plumbing; heating; gas fireplace logs; radiator covers; hardwired security systems; thermostats; lighting
77           fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric
78           animal fencing systems (excluding collars); garage door openers and transmitters; mounting brackets and hardware for television
79           and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps;
80           storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; win-
81           dow covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments);
82           built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking
83           fuels stored on the Property at the time of settlement; and, if owned, solar panels, windmills, water treatment systems, propane
84           tanks and satellite dishes. Unless stated otherwise, the following items are included in the sale, at no additional cost: <u>Stove</u>
85           <u>Refrigerator washer dryer</u>
86           _____
87    (C)  The following items are not owned by Seller and may be subject to a lease or other financing agreement. Contact the provider/
88           vendor for more information (e.g., solar panels, windmills, water treatment systems, propane tanks and satellite dishes): _____
89           _____
90    (D)  EXCLUDED fixtures and items: _____
91           _____

92 **8. MORTGAGE CONTINGENCY (6-19)**
93    ☐  WAIVED.  This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties
94       may include an appraisal contingency.
95    ☑  ELECTED.
96    (A)  This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $<u>212,000</u> | Loan Amount $ |
| Minimum Term <u>30</u>        years | Minimum Term        years |
| Type of mortgage | Type of mortgage |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed <u>80</u>   % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed    % |
| Mortgage lender <u>Lisa Cardone York Traditions</u> | Mortgage lender |
| Interest rate <u>3</u>   %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of <u>3</u>   %. | Interest rate    %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of    %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed    % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed    % (0% if not specified) of the mortgage loan. |

112    (B)  Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage applica-
113           tion(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case
114           no later than <u>02/12/2021</u>.
115       1.  If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mort-
116           gage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right
117           to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's
118           mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to
119           make a good faith effort to obtain mortgage financing.
120       2.  Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demon-
121           strating lender's conditional or outright approval of Buyer's mortgage application(s):
122          a.  Does not satisfy the terms of Paragraph 8(A), OR
123          b.  Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be
124             received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in
125             writing by the mortgage lender(s) within <u>7</u> DAYS after the date indicated in Paragraph 8(B), or any extension there-
126             of, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming
127             employment);
128       3.  If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement,

129 Buyer Initials: <u>4/ 12/20/20</u> <u>9P 12/20/20</u>        **ASR Page 3 of 14**        Seller Initials: <u>RJP 12/20/20</u>
5:19 AM EST 6:51 AM EST                                                                 2:03 PM EST
dotloop verified dotloop verified                                                                 dotloop verified

dotloop signature verification: dtlp.us/Kcwt-7yi7-bJUd

Case 2:21-11032-dff Doc 715-32 Filed 04/06/21 Entered 04/06/21 16:20:43 Desc
Exhibit D: Motion to Sell Part 1 of 1 Page 5 of 38
Exhibit D: Motion-to-Sell Page 5 of 38

128 all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer
129 will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this
130 Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee
131 for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation;
132 (3) Appraisal fees and charges paid in advance to mortgage lender(s).

133 (C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular
134 LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a spe-
135 cific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan.
136 The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be
137 higher or lower than the Purchase Price and/or market price of the property.

138 (D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee
139 the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s),
140 Buyer will do so at least ___15___ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted
141 by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage
142 lender(s) to make the above mortgage term(s) available to Buyer.

143 (E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage appli-
144 cation (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s)
145 identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any,
146 otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.
147 Broker for Seller, if any, is permitted to contact the morgage lender(s) at any time to determine the status of the mortgage loan
148 application.

149 (F) **Buyer will be in default of this Agreement if Buyer furnishes false information** to anyone concerning Buyer's financial and/
150 or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and
151 ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to
152 reject, or refuse to approve or issue, a mortgage loan commitment.

153 (G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires
154 repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within ___5___
155 DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's
156 expense.
157 1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and
158 agrees to the RELEASE in Paragraph 28 of this Agreement.
159 2. If Seller will not make the required repairs, **or if Seller fails to respond within the stated time,** Buyer will, within ___5___
160 DAYS, notify Seller of Buyer's choice to:
161 a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
162 will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the
163 Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR
164 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
165 Paragraph 26 of this Agreement.
166 **If Buyer fails to respond** within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice
167 to Seller within that time, **Buyer will accept the Property,** make the required repairs/improvements at Buyer's expense and
168 agree to the RELEASE in Paragraph 28 of this Agreement.

169 **FHA/VA, IF APPLICABLE**
170 (H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the pur-
171 chase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer
172 has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner,
173 Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than
174 $_____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of
175 proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation
176 is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does
177 not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the
178 Property are acceptable.
179 **Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration
180 Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department, makes, passes, utters
181 or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years,
182 or both."

183 (I) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement**
184 ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
185 getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
186 FHA will not perform a home inspection nor guarantee the price or condition of the Property.
187 ☐ Buyer will apply for Section 203(k) financing, and this contract is contingent upon mortgage approval (See Paragraph 8(B))
188 and Buyer's acceptance of additional required repairs as required by the lender.

189 (J) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for
190 purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in
191 connection with this transaction is attached to this Agreement.

192 Buyer Initials:  ASR Page 4 of 14 Seller Initials: 

dotloop signature verification: dtlp.us/Kcwt-7yi7-bJUd

193 **9. CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**
194 If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the
195 Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change
196 in employment; failure or loss of sale of Buyer's home; Buyer having incurred a new financial obligation; entry of a judgment against
197 Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to**
198 **purchase.**
199 **10. SELLER REPRESENTATIONS (1-20)**
200 **(A) Status of Water**
201 Seller represents that the Property is served by:
202 ☑Public Water  ☐Community Water  ☐On-site Water  ☐None  ☐_____
203 **(B) Status of Sewer**
204 1. Seller represents that the Property is served by:
205 ☑Public Sewer  ☐Community Sewage Disposal System  ☐Ten-Acre Permit Exemption (see Sewage Notice 2)
206 ☐Individual On-lot Sewage Disposal System (see Sewage Notice 1)  ☐Holding Tank (see Sewage Notice 3)
207 ☐Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
208 ☐None (see Sewage Notice 1)  ☐None Available/Permit Limitations in Effect (see Sewage Notice 5)
209 ☐
210 2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
211 **Notice 1: There is no currently existing community sewage system available for the subject property.** Section 7 of the
212 Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter,
213 repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a
214 permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with
215 administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The
216 local agency charged with administering the Act will be the municipality where the Property is located or that municipality
217 working cooperatively with others.
218 **Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption**
219 **provisions of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required
220 before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage
221 system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and
222 site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by
223 the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance
224 which occurs as a result.
225 **Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a**
226 **water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another**
227 **site.** Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the
228 tank from the date of its installation or December 14, 1995, whichever is later.
229 **Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the dis-**
230 **tance specified by regulation.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances
231 provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water
232 supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the hor-
233 izontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the
234 absorption area shall be 100 feet.
235 **Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations.** Sewage
236 facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until
237 the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations
238 promulgated thereunder.
239 **(C) Historic Preservation**
240 Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here:_____
241 _____
242 **(D) Land Use Restrictions**
243 1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the
244 following Act(s) (see Notices Regarding Land Use Restrictions below):
245 ☐Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)
246 ☐Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
247 ☐Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
248 ☐Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
249 ☐Other_____
250 2. **Notices Regarding Land Use Restrictions**
251 a. **Pennsylvania Right-To-Farm Act:** The property you are buying may be located in an area where agricultural operations
252 take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits
253 circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
254 b. **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assess-
255 ment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution
256 of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that
257 may result in the future as a result of any change in use of the Property or the land from which it is being separated.

258 Buyer Initials: [initials] [initials]     ASR Page 5 of 14     Seller Initials: [RJP initials]

5:19 AM EST 6:51 AM EST
dotloop verified  dotloop verified
12/20/20
2:03 PM EST
dotloop verified

c. **Open Space Act**: This Act enables counties to enter into covenants with owners of land designated as farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.

d. **Conservation Reserve (Enhancement) Program**: Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

(E) **Real Estate Seller Disclosure Law**

Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

(F) **Public and/or Private Assessments**

1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here:_____

_____

2. Seller knows of no other potential notices (including violations) and/or assessments except as follows:_____

_____

(G) **Highway Occupancy Permit**

Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

(H) **Internet of Things (IoT) Devices**

1. The presence of smart and green home devices that are capable of connecting to the Internet, directly or indirectly, and the data stored on those various devices make up a digital ecosystem in the Property sometimes referred to as the "Internet of Things (IoT)." Buyer and Seller acknowledge that IoT devices may transmit data to third parties outside of the control of their owner.

2. On or before settlement, Seller will make a reasonable effort to clear all data stored on all IoT devices located on the Property and included in the sale. Seller further acknowledges that all personal devices owned by Seller (including but not limited to cellular telephones, personal computers and tablets) having connectivity to any IoT device(s) located on the Property will be disconnected and cleared of relevant data prior to settlement. Further, no attempts will be made after settlement by Seller or anyone on Seller's behalf to access any IoT devices remaining on the Property.

3. Following settlement, Buyer will make a reasonable effort to clear all stored data from any IoT device(s) remaining on the Property and to restrict access to said devices by Seller, Seller's agents or any third party to whom Seller may have previously provided access. This includes, but is not limited to, restoring IoT devices to original settings, changing passwords or codes, updating network settings and submitting change of ownership and contact information to device manufacturers and service providers.

4. This paragraph will survive settlement.

**11. WAIVER OF CONTINGENCIES (9-05)**

If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, **Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.**

**12. BUYER'S DUE DILIGENCE/INSPECTIONS (10-18)**

(A) **Rights and Responsibilities**

1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate licensee(s) may attend any inspections.

2. Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived by any other provision of this Agreement.

3. **Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.**

4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.

5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

Buyer Initials: _____ ASR Page 6 of 14 Seller Initials: _____



dotloop signature verification: dtlp.us/Kcwt-7yi7-bJUd

324   (B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as
325   "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly
326   licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same
327   inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D)
328   for Notices Regarding Property and Environmental Inspections)

329   (C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any
330   Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit
331   a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

332   **Home/Property Inspections and Environmental Hazards (mold, etc.)**

333   **Elected**   Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior   **Waived**
334   doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances;
335   electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetra-
336   tion; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environ-
337   mental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer
338   may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the
339   home inspection must be performed by a full member in good standing of a national home inspection association,
340   or a person supervised by a full member of a national home inspection association, in accordance with the ethical
341   standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or
342   architect. (See Notices Regarding Property & Environmental Inspections)

343   **Wood Infestation**

344   **Elected**   Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a   **Waived**
345   wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided
346   by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mort-
347   gage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be
348   limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection
349   reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesti-
350   cide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer
351   may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to
352   structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.

353   **Deeds, Restrictions and Zoning**

354   **Elected**   Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi-   **Waived**
355   nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the
356   Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking)
357   is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____
358   _____

359   **Water Service**

360   **Elected**   Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise   **Waived**
361   qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will
362   locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous
363   condition, at Seller's expense, prior to settlement.

364   **Radon**

365   **Elected**   Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection   **Waived**
366   Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02
367   working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground
368   by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas
369   can increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a
370   house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any
371   person who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department
372   of Environmental Protection. Information about radon and about certified testing or mitigation firms is available
373   through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State
374   Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov

375   **On-lot Sewage (If Applicable)**

376   **Elected**   Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic   **Waived**
377   load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's
378   expense, will locate, provide access to, empty the individual on-lot sewage disposal system and provide all water
379   needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense,
380   prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection
381   Contingency.

382   **Property and Flood Insurance**

383   **Elected**   Buyer may determine the insurability of the Property by making application for property and casualty insurance   **Waived**
384   for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate
385   with the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone,
386   Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more
387   prior to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood

388   **Buyer Initials:** _____   **ASR Page 7 of 14**   **Seller Initials:** _____

dotloop signature verification: dtlp.us/Kcwt-7yI7-bJUd

389 insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more
390 flood insurance agents regarding the need for flood insurance and possible premium increases.

391 **Property Boundaries**

392 **Elected** Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal **Waived**
393 description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property
394 surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural
395 or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical represen-
396 tations of size of property are approximations only and may be inaccurate.

397 **Lead-Based Paint Hazards (For Properties built prior to 1978 only)**

398 **Elected** Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct **Waived**
399 a risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint
400 hazards. **Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard**
401 **Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved**
402 **lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a**
403 **separate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and**
404 **any lead-based paint records regarding the Property.**

405 **Other**

406 **Elected** **Waived**
407

408 The Inspections elected above do not apply to the following existing conditions and/or items:
409
410

411 (D) **Notices Regarding Property & Environmental Inspections**
412 1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating
413 the surface of a structure where it may cause mold and damage to the building's frame.
414 2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
415 3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal
416 of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's respon-
417 sibility to dispose of them properly.
418 4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer
419 to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop
420 the property would be affected or denied because of its location in a wetlands area.
421 5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,
422 pollen and viruses) have been associated with allergic responses.
423 6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be
424 directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.
425 20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health,
426 Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health
427 and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by
428 calling 1-877-724-3258.

429 **13. INSPECTION CONTINGENCY (10-18)**
430 (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected
431 in Paragraph 12(C).
432 (B) **Within the stated Contingency Period** and as the result of any Inspection elected in Paragraph 12(C), except as stated in
433 Paragraph 12(C):
434 1. If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL **present all Report(s) in**
435 **their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in**
436 **Paragraph 28 of this Agreement,** OR
437 2. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in**
438 **their entirety to Seller and terminate this Agreement** by written notice to Seller, with all deposit monies returned to Buyer
439 according to the terms of Paragraph 26 of this Agreement, OR
440 3. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in**
441 **their entirety to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by**
442 **Buyer.**
443 The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform
444 the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of
445 the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or
446 governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
447 a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation
448 Period. During the Negotiation Period:
449 (1) Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR
450 (2) Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improve-
451 ments to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
452 If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable

453 **Buyer Initials:** _____ _____   **ASR Page 8 of 14**   **Seller Initials:** _____ _____

dotloop signature verification: dtlp.us/Kcwt-7yi7-bJUd

written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the Negotiation Period ends.

    b.  If no mutually acceptable written agreement is reached, or if Seller fails to respond during the Negotiation Period, within _____ days (2 if not specified) **following the end of the Negotiation Period**, Buyer will:

        (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR

        (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

**If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation Period.**

(C)  If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____ days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected completion date for corrective measures. Within __5__ DAYS of receiving Seller's Proposal, or **if no Proposal is provided within the stated time**, Buyer will notify Seller in writing of Buyer's choice to:

    1.  Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR

    2.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR

    3.  Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer may, within __5__ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

**If Buyer fails to respond** within the time stated in Paragraph 13(C) **or fails to terminate** this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

**14. TITLES, SURVEYS AND COSTS (6-20)**

(A)  Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will order from a reputable title company for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report to Seller.

(B)  Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; **Buyer should consult with a title insurance agent about Buyer's options**. Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's title insurance policy.

(C)  Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.

(D)  Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.

(E)  The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, **excepting however** the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any.

(F)  If a change in Seller's financial status affects Seller's ability to convey title to the Property on or before the Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all liens and encumbrances against the Property.

(G)  If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, or take such title as Seller can convey. If the title condition precludes Seller from conveying title, Buyer's sole remedy shall be to terminate this Agreement. Upon termination, all deposit monies shall be returned to Buyer according to the terms of Paragraph 26 of this Agreement and Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).

(H)  Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation about the status of those rights unless indicated elsewhere in this Agreement.

    ☐ **Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.**

12/20/20  5:19 AM EST  dotloop verified   12/20/20  6:51 AM EST  dotloop verified   12/20/20  2:03 PM EST  dotloop verified



dotloop signature verification: dtlp.us/Kcwt-7yI7-bJUd

Case 2:21-cv-03277-eff   Doc. 15-32   Filed 02/06/21   Entered 02/06/21 16:24:43   Desc
Exhibit D: Motion For Page 11 of Page 11 of 38

517  (I)  **COAL NOTICE (Where Applicable)**

518  THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDER-
519  NEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COM-
520  PLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND
521  ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of
522  the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence
523  resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsid-
524  ence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose
525  of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27,
526  1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

527  (J)  The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here: _____
528  _____

529  (K)  1.  This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
530       ☐ **Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.**
531       2.  **Notices Regarding Private Transfer Fees:** In Pennsylvania, Private Transfer Fees are defined and regulated in the Private
532       Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that
533       is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obli-
534       gation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of
535       whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or
536       other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must
537       disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed,
538       the Act gives certain rights and protections to buyers.

539  **15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)**

540  (A)  In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are
541  received after Seller has signed this Agreement and before settlement, Seller will within __5__ DAYS of receiving the notices and/
542  or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:

543       1.  Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
544       notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
545       2.  Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or **fails
546       within the stated time to notify Buyer whether Seller will comply,** Buyer will notify Seller in writing within __5__ DAYS
547       that Buyer will:
548            a.  Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
549            Paragraph 28 of this Agreement, OR
550            b.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
551            Paragraph 26 of this Agreement.
552       **If Buyer fails to respond** within the time stated in Paragraph 15(A)(2) **or fails to terminate** this Agreement by written notice
553       to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

554  (B)  If required by law, within __30__ DAYS from the Execution Date of this Agreement, but in no case later than __15__ DAYS prior to
555  Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice
556  of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of
557  the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to
558  Seller.

559       1.  Within __5__ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a
560       copy of the notice to Buyer and notify Buyer in writing that Seller will:
561            a.  Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/
562            improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
563            b.  Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
564            notify Seller in writing within __5__ DAYS that Buyer will:
565                 (1)  Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph
566                 28 of this Agreement and make the repairs at Buyer's expense after settlement, OR
567                 (2)  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
568                 of Paragraph 26 of this Agreement.
569            **If Buyer fails to respond** within the time stated in Paragraph 15(B)(1)(b) **or fails to terminate** this Agreement by writ-
570            ten notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this
571            Agreement, and **Buyer accepts the responsibility to perform the repairs/improvements** according to the terms of the
572            notice provided by the municipality.
573       2.  If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph,
574       Seller will perform all repairs/improvements by the notice at Seller's expense. **Paragraph 15(B)(2) will survive
575       settlement.**

576  **16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)**

577  (A)  Property is NOT a Condominium or part of a Planned Community unless checked below.

578       ☐  CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407
579       of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of
580       the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.

581  Buyer Initials: [initials] [initials]   ASR Page 10 of 14   Seller Initials: [RJP]

12/20/20  12/20/20                                                    12/20/20
5:19 AM EST  6:51 AM EST                                              2:03 PM EST
dotloop verified  dotloop verified                                   dotloop verified

582 ☑ **PLANNED COMMUNITY (HOMEOWNER ASSOCIATION).** The Property is part of a planned community as defined by
583  the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the decla-
584  ration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the
585  provisions set forth in Section 5407(a) of the Act.

586 (B) **THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM**
587  **OR A PLANNED COMMUNITY:**
588  If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant),
589  Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void
590  this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public
591  Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this
592  Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

593 (C) **THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A**
594  **PLANNED COMMUNITY:**
595  1. Within __15__ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association
596   a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides
597   that the association is required to provide these documents within 10 days of Seller's request.
598  2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer
599   for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the
600   association in the Certificate.
601  3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents
602   and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon
603   Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of
604   this Agreement.
605  4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will
606   reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the
607   Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for
608   cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3)
609   Appraisal fees and charges paid in advance to mortgage lender.

610 **17. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**
611  In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a prop-
612  erty at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for
613  the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of
614  the property and result in a change in property tax.

615 **18. MAINTENANCE AND RISK OF LOSS (1-14)**
616  (A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property)
617   specifically listed in this Agreement in its present condition, normal wear and tear excepted.
618  (B) If any part of the Property included in the sale fails before settlement, Seller will:
619  1. Repair or replace that part of the Property before settlement, OR
620  2. Provide prompt written notice to Buyer of Seller's decision to:
621   a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender,
622    if any, OR
623   b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed
624    part of the Property.
625  3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, **or if Seller fails**
626   **to notify Buyer of Seller's choice,** Buyer will notify Seller in writing within __5__ DAYS or before Settlement Date, whichever
627   is earlier, that Buyer will:
628   a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
629   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
630    Paragraph 26 of this Agreement.
631  **If Buyer fails to respond** within the time stated in Paragraph 18(B)(3) **or fails to terminate** this Agreement by written notice
632  to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.
633  (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
634   replaced prior to settlement, Buyer will:
635  1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
636  2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
637   Paragraph 26 of this Agreement.

638 **19. HOME WARRANTIES (1-10)**
639  At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller
640  understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any
641  pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or
642  certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends
643  a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.



dotloop signature verification: dtlp.us/Kcwt-7yi7-bJUd

Case 2:21-cv-03327-eff Doc 715-32 Filed 024/067/21 Entered 024/067/21 16:28:483 Desc
Exhibit D: Motion for Self Page 13 of 38

**20. RECORDING (9-05)**

This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

**21. ASSIGNMENT (1-10)**

This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

**22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**

(A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Commonwealth of Pennsylvania.

(B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

**23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**

The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold, you may be held liable for the tax.

**24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**

The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal police department or the Pennsylvania State Police** for information relating to the presence of sex offenders near a particular property, or to check the information on the Pennsylvania State Police Web site at www.pamegansLaw.state.pa.us.

**25. REPRESENTATIONS (1-10)**

(A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(B) Unless otherwise stated in this Agreement, **Buyer has inspected the Property** (including fixtures and any personal property specifically listed herein) **before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION,** subject to inspection contingencies elected in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.

(C) Any repairs required by this Agreement will be completed in a workmanlike manner.

(D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

**26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-18)**

(A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 2(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

(B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:

1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.

3. According to the terms of a final order of court.

4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

(C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (180 if not specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after a distribution is made.

Buyer Initials: _____ ASR Page 12 of 14 Seller Initials: _____

711  (D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania
712      law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
713      monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.
714  (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
715      1. Fail to make any additional payments as specified in Paragraph 2, OR
716      2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning
717         Buyer's legal or financial status, OR
718      3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.
719  (F) **Unless otherwise checked in Paragraph 26(G),** Seller may elect to retain those sums paid by Buyer, including deposit monies:
720      1. On account of purchase price, OR
721      2. As monies to be applied to Seller's damages, OR
722      3. As liquidated damages for such default.
723  (G) ☑ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUI-**
724      **DATED DAMAGES.**
725  (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer
726      and Seller are released from further liability or obligation and this Agreement is VOID.
727  (I)  Brokers and licensees are not responsible for unpaid deposits.

728 **27. MEDIATION (7-20)**
729  Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies,
730  to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute
731  Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation sys-
732  tem offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided
733  equally among the parties and will be paid before the mediation conference. Legal proceedings may be initiated prior to the comple-
734  tion of the mediation process to stop any statute of limitations from expiring and for the purpose of indexing a lis pendens by Buyer
735  to prevent the transfer of title to a third party when Buyer is seeking to purchase the Property. The parties agree that all proceedings
736  shall be stayed until the completion of mediation and that a court of competent jurisdiction may award attorneys' fees to the prevailing
737  party should the court find that a party has unreasonably breached this provision or acted in bad faith. Any agreement reached through
738  mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will
739  survive settlement.

740 **28. RELEASE (9-05)**
741  **Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any**
742  **OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or**
743  **through them, from any and all claims, losses or demands,** including, but not limited to, personal injury and property damage and
744  all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects,
745  radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage
746  disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in
747  default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer
748  of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

749 **29. REAL ESTATE RECOVERY FUND (4-18)**
750  A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real
751  estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been
752  unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-
753  3658.

754 **30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
755  (A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s)
756      and Closing Disclosure(s) upon receipt.
757  (B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be
758      satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant**
759      **to Paragraph 16.** If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made
760      directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or
761      allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if
762      any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the
763      Seller, unless otherwise agreed to by the parties.

764 **31. HEADINGS (4-14)**
765  The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the
766  sections which follow. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

767 Buyer Initials: [initials 12/20/20  initials 12/20/20]          ASR Page 13 of 14          Seller Initials: [initials 12/20/20]
5:19 AM EST 6:51 AM EST                                                                     2:03 PM EST
dotloop verified dotloop verified                                                          12/20/20
                                                                                           dotloop verified

dotloop signature verification: dtlp.us/Kcwt-7yi7-bJUd

768 **32. SPECIAL CLAUSES (1-10)**
769   (A) **The following are attached to and made part of this Agreement if checked:**
770     ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
771     ☐ Sale & Settlement of Other Property Contingency Addendum with Right to Continue Marketing Addendum (PAR Form SSPCM)
772     ☐ Sale & Settlement of Other Property Contingency Addendum with Timed Kickout Addendum (PAR Form SSPTKO)
773     ☑ Settlement of Other Property Contingency Addendum (PAR Form SOP)
774     ☑ Appraisal Contingency Addendum (PAR Form ACA)
775     ☐ Short Sale Addendum (PAR Form SHS)
776     ☑ Pre Settlement possession _____
777     ☐ _____
778     ☐ _____

779   (B) **Additional Terms:**
780   _____
781   _____
782   _____
783   _____
784   _____
785   _____
786   _____
787   _____
788   _____
789   _____
790   _____
791   _____
792   _____
793   _____

794 Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

795 **This Agreement may be executed in one or more counterparts**, each of which shall be deemed to be an original and which counterparts
796 together shall constitute one and the same Agreement of the Parties.

797 **NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are
798 advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

799 Return of this Agreement, and any addenda and amendments, including **return by electronic transmission,** bearing the signatures of all
800 parties, constitutes acceptance by the parties.

801 [12/20/20] [12/20/20] Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

802 [12/20/20] [12/20/20] Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

803 [12/20/20] [12/20/20] Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money)
804 [5:19 AM EST 6:51 AM EST] before signing this Agreement.
    dotloop verified

805 [5:19 AM EST 6:51 AM EST] Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has
806 [dotloop verified] received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

807 **BUYER** *Kristine Fischer* | dotloop verified 12/20/20 5:19 AM EST XUI R-GTBZ-VIYS-QC7I | **DATE** _____
808 **BUYER** *Jamie T. Fischer* | dotloop verified 12/20/20 6:51 AM EST O4IO-QKZ0-HDOQ-LYVF | **DATE** _____
809 **BUYER** | | **DATE** _____

810 Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
811 Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

812 **SELLER** *Richard J Puleo* | dotloop verified 12/20/20 2:03 PM EST E05U-0FUQ-RIJN-JTZR | **DATE** _____
813 **SELLER** | | **DATE** _____
814 **SELLER** | | **DATE** _____

# Exhibit G

dotloop signature verification: dtlp.us/TCfp-Bxoj-Sruy

# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE
This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

ASR

| PARTIES | |
|---|---|
| **BUYER(S)** Bobby Hile and Sara Hile | **SELLER(S)** Lewisberry Partners, LLC |
| | |
| **BUYER'S MAILING ADDRESS:** 3628 Petre Road Springfield, OH 45502 | **SELLER'S MAILING ADDRESS:** |

## PROPERTY

ADDRESS (including postal city) 16 Kingswood Drive

Lewisberry, PA 17339 _____ ZIP 17339 ,

in the municipality of Fairview Township _____, County of York ,

in the School District of West Shore _____, in the Commonwealth of Pennsylvania.

Tax ID #(s) 27-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-00-00000 _____ and/or

Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): _____

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Buyer is not represented by a broker)**

| | |
|---|---|
| Broker (Company) Century 21 Realty Services | Licensee(s) (Name) Kelly Kosh |
| Company License # RB044304C | State License # RS351795 |
| Company Address 3315 Market Street | Direct Phone(s) |
| Camp Hill, PA 17011 | Cell Phone(s) 7179913092 |
| Company Phone 717-737-2121 | Email kelly.kosh@century21.com |
| Company Fax | Licensee(s) is (check only one): |
| Broker is (check only one): | ☐ Buyer Agent (all company licensees represent Buyer) |
| ☑ Buyer Agent (Broker represents Buyer only) | ☑ Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer) |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Seller is not represented by a broker)**

| | |
|---|---|
| Broker (Company) Keller Williams of Central PA | Licensee(s) (Name) Valerie Taylor |
| Company License # RB065950 | State License # RS135949A |
| Company Address 2040 Good Hope Road | Direct Phone(s) |
| Enola, PA 17025 | Cell Phone(s) 717-576-6669 |
| Company Phone 717-761-4300 | Email valerietaylor@kw.com |
| Company Fax | Licensee(s) is (check only one): |
| Broker is (check only one): | ☑ Seller Agent (all company licensees represent Seller) |
| ☑ Seller Agent (Broker represents Seller only) | ☐ Seller Agent with Designated Agency (only Licensee(s) named above represent Seller) |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS therre are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

**By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.**

| Buyer Initials: _BH_ 12/17/20 1:23 PM EST dotloop verified  _SH_ 12/17/20 1:05 PM EST dotloop verified | ASR Page 1 of 14 | Seller Initials: _RJP_ 12/17/20 4:43 PM EST dotloop verified | |



Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2020
rev. 5/20; rel. 7/20

dotloop signature verification: dtlp.us/TCfp-Bxqi-Sruy

Case 21-10327-elf Doc 715-2 Filed 02/06/21 Entered 02/06/21 16:24:43 Desc
Exhibit D: Memo to Sell Page 31 of 35 Page 18 of 38

1. **By this Agreement**, dated 12/17/2020 ,
Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

2. **PURCHASE PRICE AND DEPOSITS (4-14)**

(A) Purchase Price $270,000
   (two hundred seventy thousand
                                                              U.S. Dollars), to be paid by Buyer as follows:
   1. Initial Deposit, within_____days (5 if not specified) of Execution Date,
      if not included with this Agreement:                    $ 5,000
   2. Additional Deposit within _____ days of the Execution Date:   $
   3.                                                          $
   Remaining balance will be paid at settlement.

(B) **All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.**

(C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here:____
                                                              ),
who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

3. **SELLER ASSIST (If Applicable) (1-10)**

Seller will pay $0_____ or _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

4. **SETTLEMENT AND POSSESSION (4-14)**

(A) Settlement Date is 01/22/2021 , or before if Buyer and Seller agree.
(B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.
(C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:

(D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
   1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
   2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.
(E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here:
(F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here:
(G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.
(H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
   ☐ **Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.**

5. **DATES/TIME IS OF THE ESSENCE (1-10)**

(A) Written acceptance of all parties will be on or before: 12/17/2020
(B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.
(C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. **All changes to this Agreement should be initialed and dated.**
(D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.
(E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

dotloop signature verification: dtlp.us/TCfp-Bxoj-Sruy

Case 2:21-10327-cff   Doc 715-22   Filed 04/06/21   Entered 04/06/21 16:34:03   Desc
Exhibit D: Motion to Sell Page 41   Page 19 of 38

66 **6. ZONING (4-14)**
67 Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdi-
68 vidable} is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if
69 voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
70 **Zoning Classification, as set forth in the local zoning ordinance:** <u>Residential</u>

71 **7. FIXTURES AND PERSONAL PROPERTY (1-20)**
72 (A) It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be
73 regarded as part of the Property and therefore included in a sale. Buyer and Seller are encouraged to be specific when negotiating
74 what items will be included or excluded in this sale.
75 (B) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens,
76 and other items including plumbing; heating; gas fireplace logs; radiator covers; hardwired security systems; thermostats; lighting
77 fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric
78 animal fencing systems (excluding collars); garage door openers and transmitters; mounting brackets and hardware for television
79 and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps;
80 storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; win-
81 dow covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments);
82 built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking
83 fuels stored on the Property at the time of settlement; and, if owned, solar panels, windmills, water treatment systems, propane
84 tanks and satellite dishes. Unless stated otherwise, the following items are included in the sale, at no additional cost: <u>washer,</u>
85 <u>dryer, refrigerator</u>
86 _____
87 (C) The following items are not owned by Seller and may be subject to a lease or other financing agreement. Contact the provider/
88 vendor for more information (e.g., solar panels, windmills, water treatment systems, propane tanks and satellite dishes): _____
89 _____
90 (D) EXCLUDED fixtures and items: _____
91 _____

92 **8. MORTGAGE CONTINGENCY (6-19)**
93 ☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties
94 may include an appraisal contingency.
95 ☑ ELECTED.
96 (A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $<u>213,300</u> | Loan Amount $ _____ |
| Minimum Term<u>30</u> _____ years | Minimum Term _____ years |
| Type of mortgage <u>Conventional</u> | Type of mortgage _____ |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed<u>79</u> % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender <u>Residential Mortgage Services</u> | Mortgage lender _____ |
| Interest rate<u>2.8</u> %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of<u>3.3</u> %. | Interest rate _____ %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of _____ %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (exclud-ing any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (exclud-ing any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

112 (B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage applica-
113 tion(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case
114 no later than <u>01/15/2021</u> .
115 1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mort-
116 gage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right
117 to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's
118 mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to
119 make a good faith effort to obtain mortgage financing.
120 2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demon-
121 strating lender's conditional or outright approval of Buyer's mortgage application(s):
122 a. Does not satisfy the terms of Paragraph 8(A), OR
123 b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be
124 received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in
125 writing by the mortgage lender(s) within __7__ DAYS after the date indicated in Paragraph 8(B), or any extension there-
126 of, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming
127 employment).
128 3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement,

129 Buyer Initials: _____ _____   ASR Page 3 of 14   Seller Initials: _____
12/17/20  12/17/20
1:23 PM EST  1:05 PM EST
dotloop verified dotloop verified
12/17/20
4:43 PM EST
dotloop verified

dotloop signature verification: dtlp.us/TCfp-Bxqi-Sruy

Case 21-10527-eff Doc 715-22 Filed 04/06/21 Entered 04/06/21 16:04:33 Desc
Exhibit D: Motion to Sell Page 5 of 15 Page 20 of 38

128    all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer
129    will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this
130    Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee
131    for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation;
132    (3) Appraisal fees and charges paid in advance to mortgage lender(s).

133 (C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular
134    LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a spe-
135    cific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan.
136    The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be
137    higher or lower than the Purchase Price and/or market price of the property.

138 (D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee
139    the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s),
140    Buyer will do so at least ___15___ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted
141    by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage
142    lender(s) to make the above mortgage term(s) available to Buyer.

143 (E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage appli-
144    cation (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s)
145    identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any,
146    otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.
147    Broker for Seller, if any, is permitted to contact the morgage lender(s) at any time to determine the status of the mortgage loan
148    application.

149 (F) **Buyer will be in default of this Agreement if Buyer furnishes false information** to anyone concerning Buyer's financial and/
150    or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and
151    ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to
152    reject, or refuse to approve or issue, a mortgage loan commitment.

153 (G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires
154    repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within ___5___
155    DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's
156    expense.
157    1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and
158      agrees to the RELEASE in Paragraph 28 of this Agreement.
159    2. If Seller will not make the required repairs, **or if Seller fails to respond within the stated time,** Buyer will, within ___5___
160      DAYS, notify Seller of Buyer's choice to:
161      a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
162        will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the
163        Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR
164      b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
165        Paragraph 26 of this Agreement.
166    **If Buyer fails to respond** within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice
167    to Seller within that time, **Buyer will accept the Property,** make the required repairs/improvements at Buyer's expense and
168    agree to the RELEASE in Paragraph 28 of this Agreement.

---

### FHA/VA, IF APPLICABLE

170 (H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the pur-
171    chase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer
172    has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner,
173    Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than
174    $_____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of
175    proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation
176    is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does
177    not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the
178    Property are acceptable.
179    **Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration
180    Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department, makes, passes, utters
181    or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years,
182    or both."

183 (I) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement**
184    ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
185      getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
186      FHA will not perform a home inspection nor guarantee the price or condition of the Property.
187    ☐ Buyer will apply for Section 203(k) financing, and this contract is contingent upon mortgage approval (See Paragraph 8(B))
188      and Buyer's acceptance of additional required repairs as required by the lender.

189 (J) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for
190    purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in
191    connection with this transaction is attached to this Agreement.

---

192 Buyer Initials: _____      ASR Page 4 of 14      Seller Initials: _____



12/17/20 12/17/20
1:23 PM EST 1:05 PM EST
dotloop verified dotloop verified

12/17/20
4:43 PM EST
dotloop verified

dotloop signature verification: dtlp.us/TCfp-Bxoj-Sruy

Case 21-11037-eff   Doc 715-22   Filed 02/06/21   Entered 02/06/21 16:20:43   Desc
Exhibit D: Motion to Sell Page 61 of Page 21 of 38

193 **9. CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**
194 If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the
195 Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change
196 in employment; failure or loss of sale of Buyer's home; Buyer having incurred a new financial obligation; entry of a judgment against
197 Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to**
198 **purchase.**

199 **10. SELLER REPRESENTATIONS (1-20)**
200   (A) **Status of Water**
201     Seller represents that the Property is served by:
202     ☑Public Water ☐Community Water ☐On-site Water ☐None ☐_____
203   (B) **Status of Sewer**
204     1. Seller represents that the Property is served by:
205       ☑Public Sewer ☐Community Sewage Disposal System ☐Ten-Acre Permit Exemption (see Sewage Notice 2)
206       ☐Individual On-lot Sewage Disposal System (see Sewage Notice 1) ☐Holding Tank (see Sewage Notice 3)
207       ☐Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
208       ☐None (see Sewage Notice 1) ☐None Available/Permit Limitations in Effect (see Sewage Notice 5)
209       ☐
210     2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
211       **Notice 1: There is no currently existing community sewage system available for the subject property.** Section 7 of the
212       Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter,
213       repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a
214       permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with
215       administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The
216       local agency charged with administering the Act will be the municipality where the Property is located or that municipality
217       working cooperatively with others.
218       **Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption**
219       **provisions of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required
220       before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage
221       system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and
222       site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by
223       the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance
224       which occurs as a result.
225       **Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a**
226       **water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another**
227       **site.** Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the
228       tank from the date of its installation or December 14, 1995, whichever is later.
229       **Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the dis-**
230       **tance specified by regulation.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances
231       provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water
232       supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the hor-
233       izontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the
234       absorption area shall be 100 feet.
235       **Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations.** Sewage
236       facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until
237       the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations
238       promulgated thereunder.
239   (C) **Historic Preservation**
240     Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here:_____
241     _____
242   (D) **Land Use Restrictions**
243     1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the
244       following Act(s) (see Notices Land Use Restrictions below):
245       ☐Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)
246       ☐Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
247       ☐Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
248       ☐Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
249       ☐Other_____
250     2. **Notices Regarding Land Use Restrictions**
251       a. **Pennsylvania Right-To-Farm Act:** The property you are buying may be located in an area where agricultural operations
252       take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits
253       circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
254       b. **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assess-
255       ment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution
256       of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that
257       may result in the future as a result of any change in use of the Property or the land from which it is being separated.

258 Buyer Initials: _____   ASR Page 5 of 14   Seller Initials: _____

c. **Open Space Act**: This Act enables counties to enter into covenants with owners of land designated as farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.

d. **Conservation Reserve (Enhancement) Program**: Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

(E) **Real Estate Seller Disclosure Law**

Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

(F) **Public and/or Private Assessments**

1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here:_____
_____

2. Seller knows of no other potential notices (including violations) and/or assessments except as follows:_____
_____

(G) **Highway Occupancy Permit**

Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

(H) **Internet of Things (IoT) Devices**

1. The presence of smart and green home devices that are capable of connecting to the Internet, directly or indirectly, and the data stored on those various devices make up a digital ecosystem in the Property sometimes referred to as the "Internet of Things (IoT)." Buyer and Seller acknowledge that IoT devices may transmit data to third parties outside of the control of their owner.

2. On or before settlement, Seller will make a reasonable effort to clear all data stored on all IoT devices located on the Property and included in the sale. Seller further acknowledges that all personal devices owned by Seller (including but not limited to cellular telephones, personal computers and tablets) having connectivity to any IoT device(s) located on the Property will be disconnected and cleared of relevant data prior to settlement. Further, no attempts will be made after settlement by Seller or anyone on Seller's behalf to access any IoT devices remaining on the Property.

3. Following settlement, Buyer will make a reasonable effort to clear all stored data from any IoT device(s) remaining on the Property and to restrict access to said devices by Seller, Seller's agents or any third party to whom Seller may have previously provided access. This includes, but is not limited to, restoring IoT devices to original settings, changing passwords or codes, updating network settings and submitting change of ownership and contact information to device manufacturers and service providers.

4. This paragraph will survive settlement.

**11. WAIVER OF CONTINGENCIES (9-05)**

If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, **Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement**.

**12. BUYER'S DUE DILIGENCE/INSPECTIONS (10-18)**

(A) **Rights and Responsibilities**

1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate licensee(s) may attend any inspections.

2. Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived by any other provision of this Agreement.

3. **Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.**

4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.

5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

Buyer Initials: _____ _____    ASR Page 6 of 14    Seller Initials: _____



dotloop signature verification: dtlp.us/TCfp-Bxqj-Sruy

324 (B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as
325 "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly
326 licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same
327 inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D)
328 for Notices Regarding Property and Environmental Inspections)
329 (C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any
330 Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit
331 a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

332 **Home/Property Inspections and Environmental Hazards (mold, etc.)**

333 **Elected** Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior **Waived**
334 doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances;
335 electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetra-
336 tion; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environ-
337 mental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer
338 may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the
339 home inspection must be performed by a full member in good standing of a national home inspection association,
340 or a person supervised by a full member of a national home inspection association, in accordance with the ethical
341 standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or
342 architect. (See Notices Regarding Property & Environmental Inspections)

343 **Wood Infestation**

344 **Elected** Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a
345 wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided
346 by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mort-
347 gage lender requirements, and/or Federal Insuring and Guarantee Agency requirements. The Inspection is to be
348 limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection
349 reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesti-
350 cide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer
351 may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to
352 structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.

353 **Deeds, Restrictions and Zoning**

354 **Elected** Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi- **Waived**
355 nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the
356 Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking)
357 is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____
358 _____
359 **Water Service**

360 **Elected** Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise **Waived**
361 qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will
362 locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous
363 condition, at Seller's expense, prior to settlement.

364 **Radon**

365 **Elected** Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection **Waived**
366 Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02
367 working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground
368 by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas
369 can increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a
370 house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any
371 person who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department
372 of Environmental Protection. Information about radon and about certified testing or mitigation firms is available
373 through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State
374 Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov

375 **On-lot Sewage (If Applicable)**

376 **Elected** Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic **Waived**
377 load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's
378 expense, will locate, provide access to, empty the individual on-lot sewage disposal system and provide all water
379 needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense,
380 prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection
381 Contingency.

382 **Property and Flood Insurance**

383 **Elected** Buyer may determine the insurability of the Property by making application for property and casualty insurance **Waived**
384 for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate
385 with the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone,
386 Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more
387 prior to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood

388 Buyer Initials: _____ ASR Page 7 of 14 Seller Initials: _____



dotloop signature verification: dtlp.us/TCfp-Bxqj-Sruy

389 insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more
390 flood insurance agents regarding the need for flood insurance and possible premium increases.

391 **Property Boundaries**

392 **Elected** Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal **Waived**
393 description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property
394 surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural
395 or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical represen-
396 tations of size of property are approximations only and may be inaccurate.

397 **Lead-Based Paint Hazards (For Properties built prior to 1978 only)**

398 **Elected** Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct **Waived**
399 a risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint
400 hazards. **Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard**
401 **Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved**
402 **lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a**
403 **separate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and**
404 **any lead-based paint records regarding the Property.**

405 **Other**

406 **Elected** **Waived**
407
408 The Inspections elected above do not apply to the following existing conditions and/or items:
409
410

411 (D) **Notices Regarding Property & Environmental Inspections**
412    1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating
413     the surface of a structure where it may cause mold and damage to the building's frame.
414    2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
415    3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal
416     of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's respon-
417     sibility to dispose of them properly.
418    4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer
419     to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop
420     the property would be affected or denied because of its location in a wetlands area.
421    5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,
422     pollen and viruses) have been associated with allergic responses.
423    6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be
424     directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.
425     20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health,
426     Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health
427     and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by
428     calling 1-877-724-3258.

429 **13. INSPECTION CONTINGENCY (10-18)**
430   (A) The Contingency Period is 15_____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected
431     in Paragraph 12(C).
432   (B) **Within the stated Contingency Period** and as the result of any Inspection elected in Paragraph 12(C), except as stated in
433     Paragraph 12(C):
434    1. If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL **present all Report(s) in**
435     **their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in**
436     **Paragraph 28 of this Agreement,** OR
437    2. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in**
438     **their entirety to Seller and terminate this Agreement** by written notice to Seller, with all deposit monies returned to Buyer
439     according to the terms of Paragraph 26 of this Agreement, OR
440    3. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in**
441     **their entirety to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by**
442     **Buyer.**
443     The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform
444     the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of
445     the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or
446     governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
447     a. Following the end of the Contingency Period, Buyer and Seller will have_____ days (5 if not specified) for a Negotiation
448     Period. During the Negotiation Period:
449       (1) Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR
450       (2) Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improve-
451       ments to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
452     If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable

453 **Buyer Initials:**            **ASR Page 8 of 14**            **Seller Initials:**



dotloop signature verification: dtlp.us/TCfp-Bxqj-Sruy

Case 2:21-1003277-eff Doc 715-22 Filed 04/06/21 Entered 04/06/21 16:34:33 Desc
Exhibit D: Mothbot to C Self Page 11 of 25 Page 25 of 38

| | |
|---|---|
| 454 | written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the |
| 455 | Negotiation Period ends. |
| 456 | b.  If no mutually acceptable written agreement is reached, or if Seller fails to respond during the Negotiation Period, within |
| 457 | _____ days (2 if not specified) **following the end of the Negotiation Period**, Buyer will: |
| 458 | (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this |
| 459 | Agreement, OR |
| 460 | (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms |
| 461 | of Paragraph 26 of this Agreement. |
| 462 | **If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this Agreement** |
| 463 | **by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree** |
| 464 | **to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation** |
| 465 | **Period.** |

(C)  If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____ days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected completion date for corrective measures. Within __5__ DAYS of receiving Seller's Proposal, or **if no Proposal is provided within the stated time**, Buyer will notify Seller in writing of Buyer's choice to:

1.  Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR

2.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR

3.  Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer may, within __5__ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

**If Buyer fails to respond** within the time stated in Paragraph 13(C) **or fails to terminate** this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

**14.  TITLES, SURVEYS AND COSTS (6-20)**

(A)  Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will order from a reputable title company for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report to Seller.

(B)  Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; **Buyer should consult with a title insurance agent about Buyer's options**. Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's title insurance policy.

(C)  Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.

(D)  Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.

(E)  The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, **excepting however** the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any.

(F)  If a change in Seller's financial status affects Seller's ability to convey title to the Property on or before the Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all liens and encumbrances against the Property.

(G)  If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, or take such title as Seller can convey. If the title condition precludes Seller from conveying title, Buyer's sole remedy shall be to terminate this Agreement. Upon termination, all deposit monies shall be returned to Buyer according to the terms of Paragraph 26 of this Agreement and Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).

(H)  Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation about the status of those rights unless indicated elsewhere in this Agreement.

☐  **Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.**

516 Buyer Initials: _[initials]_ _[initials]_      ASR Page 9 of 14      Seller Initials: _[initials]_

12/17/20     12/17/20
1:23 PM EST  1:05 PM EST
dotloop verified  dotloop verified

12/17/20
4:43 PM EST
dotloop verified

dotloop signature verification: dtlp.us/TCfp-Bxqj-Sruy

Case 2:21-cv-01327-cdf   Doc 7:15-2   Filed 04/06/21   Entered 04/06/21 16:04:03   Desc
Exhibit D: Month to Self Page 11 of 25   Page 26 of 38

517  (I)  **COAL NOTICE (Where Applicable)**

518  THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDER-

519  NEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COM-

520  PLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND

521  ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of

522  the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence

523  resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsid-

524  ence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose

525  of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27,

526  1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

527  (J)  The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here: _____

528  _____

529  (K)  1.  This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____

530  ☐ **Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.**

531  2.  **Notices Regarding Private Transfer Fees:** In Pennsylvania, Private Transfer Fees are defined and regulated in the Private

532  Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that

533  is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obli-

534  gation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of

535  whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or

536  other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must

537  disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed,

538  the Act gives certain rights and protections to buyers.

539  **15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)**

540  (A)  In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are

541  received after Seller has signed this Agreement and before settlement, Seller will within __5__ DAYS of receiving the notices and/

542  or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:

543  1.  Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the

544  notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR

545  2.  Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or **fails**

546  **within the stated time to notify Buyer whether Seller will comply,** Buyer will notify Seller in writing within __5__ DAYS

547  that Buyer will:

548  a.  Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in

549  Paragraph 28 of this Agreement, OR

550  b.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of

551  Paragraph 26 of this Agreement.

552  **If Buyer fails to respond** within the time stated in Paragraph 15(A)(2) **or fails to terminate** this Agreement by written notice

553  to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

554  (B)  If required by law, within __30__ DAYS from the Execution Date of this Agreement, but in no case later than __15__ DAYS prior to

555  Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice

556  of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of

557  the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to

558  Seller.

559  1.  Within __5__ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a

560  copy of the notice to Buyer and notify Buyer in writing that Seller will:

561  a.  Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/

562  improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR

563  b.  Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will

564  notify Seller in writing within __5__ DAYS that Buyer will:

565  (1) Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph

566  28 of this Agreement and make the repairs at Buyer's expense after settlement, OR

567  (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms

568  of Paragraph 26 of this Agreement.

569  **If Buyer fails to respond** within the time stated in Paragraph 15(B)(1)(b) **or fails to terminate** this Agreement by writ-

570  ten notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this

571  Agreement, and **Buyer accepts the responsibility to perform the repairs/improvements** according to the terms of the

572  notice provided by the municipality.

573  2.  If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph,

574  Seller will perform all repairs/improvements by the notice at Seller's expense. **Paragraph 15(B)(2) will survive**

575  **settlement.**

576  **16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)**

577  (A)  Property is NOT a Condominium or part of a Planned Community unless checked below.

578  ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407

579  of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of

580  the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.

581  Buyer Initials: _____ | _____   ASR Page 10 of 14   Seller Initials: _____ | _____

dotloop signature verification: dtlp.us/TCfp-Bxoj-Sruy

Case 21-10827-eff Doc 715-2 Filed 04/06/21 Entered 04/06/21 16:20:43 Desc
Exhibit D: Motion to Sell Part 11 of 25 Page 27 of 38

582 ☑ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by
583 the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the decla-
584 ration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the
585 provisions set forth in Section 5407(a) of the Act.

586 **(B) THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM**
587 **OR A PLANNED COMMUNITY:**
588 If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant),
589 Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void
590 this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public
591 Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this
592 Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
593 **(C) THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A**
594 **PLANNED COMMUNITY:**
595 1. Within __15__ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association
596 a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides
597 that the association is required to provide these documents within 10 days of Seller's request.
598 2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer
599 for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the
600 association in the Certificate.
601 3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents
602 and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon
603 Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of
604 this Agreement.
605 4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will
606 reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the
607 Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for
608 cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3)
609 Appraisal fees and charges paid in advance to mortgage lender.
610 **17. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**
611 In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a prop-
612 erty at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for
613 the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of
614 the property and result in a change in property tax.
615 **18. MAINTENANCE AND RISK OF LOSS (1-14)**
616 (A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property)
617 specifically listed in this Agreement in its present condition, normal wear and tear excepted.
618 (B) If any part of the Property included in the sale fails before settlement, Seller will:
619 1. Repair or replace that part of the Property before settlement, OR
620 2. Provide prompt written notice to Buyer of Seller's decision to:
621 a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender,
622 if any, OR
623 b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed
624 part of the Property.
625 3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, **or if Seller fails**
626 **to notify Buyer of Seller's choice**, Buyer will notify Seller in writing within __5__ DAYS or before Settlement Date, whichever
627 is earlier, that Buyer will:
628 a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
629 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
630 Paragraph 26 of this Agreement.
631 **If Buyer fails to respond** within the time stated in Paragraph 18(B)(3) **or fails to terminate** this Agreement by written notice
632 to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.
633 (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
634 replaced prior to settlement, Buyer may:
635 1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
636 2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
637 Paragraph 26 of this Agreement.
638 **19. HOME WARRANTIES (1-10)**
639 At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller
640 understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any
641 pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or
642 certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends
643 a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.



dotloop signature verification: dtlp.us/TCfp-Bxqj-Sruy

Case 2:21-cv-03227-eef Doc 715-22 Filed 04/06/21 Entered 04/06/21 16:34:03 Desc
Exhibit D: Motion to Sell Page 13 of 25  Page 28 of 38

645 **20. RECORDING (9-05)**
646     This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer
647     causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

648 **21. ASSIGNMENT (1-10)**
649     This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assign-
650     able, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless
651     otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

652 **22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**
653     (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the
654         laws of the Commonwealth of Pennsylvania.
655     (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance
656         by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of
657         Pennsylvania.

658 **23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**
659     The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
660     Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S.
661     real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons pur-
662     chasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required
663     to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S.
664     taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/
665     Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to
666     withhold, you may be held liable for the tax.

667 **24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**
668     The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
669     for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal**
670     **police department or the Pennsylvania State Police** for information relating to the presence of sex offenders near a particular prop-
671     erty, or to check the information on the Pennsylvania State Police Web site at www.pamegansalaw.state.pa.us.

672 **25. REPRESENTATIONS (1-10)**
673     (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licens-
674         ees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement.
675         This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants,
676         representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not
677         be altered, amended, changed or modified except in writing executed by the parties.
678     (B) Unless otherwise stated in this Agreement, **Buyer has inspected the Property** (including fixtures and any personal property spe-
679         cifically listed herein) **before signing this Agreement or has waived the right to do so, and agrees to purchase the Property**
680         **IN ITS PRESENT CONDITION,** subject to inspection contingencies elected in this Agreement. Buyer acknowledges that
681         Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the
682         structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of
683         conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems
684         contained therein.
685     (C) Any repairs required by this Agreement will be completed in a workmanlike manner.
686     (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

687 **26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-18)**
688     (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
689         deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.
690         Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.
691     (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
692         determine who is entitled to the deposit monies when settlement does not occur.  Broker can only release the deposit monies:
693         1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
694            agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
695         2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
696            Broker how to distribute some or all of the deposit monies.
697         3. According to the terms of a final order of court.
698         4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
699            deposit monies if there is a dispute between the parties that is not resolved.  (See Paragraph 26(C))
700     (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (180 if not
701         specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the
702         Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written
703         request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the
704         subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of
705         Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement
706         between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of
707         the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution
708         of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties
709         maintain their legal rights to pursue litigation even after a distribution is made.

710 **Buyer Initials:** | bk | SRH | **ASR Page 12 of 14** | **Seller Initials:** | RJP |
        12/17/20    12/17/20                          12/17/20
        1:23 PM EST   1:05 PM EST                          4:43 PM EST
        dotloop verified   dotloop verified                          dotloop verified

711     (D)  Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania
712     law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
713     monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.
714     (E)  Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
715         1.  Fail to make any additional payments as specified in Paragraph 2, OR
716         2.  Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning
717            Buyer's legal or financial status, OR
718         3.  Violate or fail to fulfill and perform any other terms or conditions of this Agreement.
719     (F)  **Unless otherwise checked in Paragraph 26(G),** Seller may elect to retain those sums paid by Buyer, including deposit monies:
720         1.  On account of purchase price, OR
721         2.  As monies to be applied to Seller's damages, OR
722         3.  As liquidated damages for such default.
723     (G)  ☑ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUI-**
724        **DATED DAMAGES.**
725     (H)  If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer
726     and Seller are released from further liability or obligation and this Agreement is VOID.
727     (I)  Brokers and licensees are not responsible for unpaid deposits.

728 **27. MEDIATION (7-20)**
729     Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies,
730     to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute
731     Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation sys-
732     tem offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided
733     equally among the parties and will be paid before the mediation conference. Legal proceedings may be initiated prior to the comple-
734     tion of the mediation process to stop any statute of limitations from expiring and for the purpose of indexing a lis pendens by Buyer
735     to prevent the transfer of title to a third party when Buyer is seeking to purchase the Property. The parties agree that all proceedings
736     shall be stayed until the completion of mediation and that a court of competent jurisdiction may award attorneys' fees to the prevailing
737     party should the court find that a party has unreasonably breached this provision or acted in bad faith. Any agreement reached through
738     mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will
739     survive settlement.

740 **28. RELEASE (9-05)**
741     **Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any**
742     **OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or**
743     **through them, from any and all claims, losses or demands,** including, but not limited to, personal injury and property damage and
744     all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects,
745     radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage
746     disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in
747     default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer
748     of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

749 **29. REAL ESTATE RECOVERY FUND (4-18)**
750     A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real
751     estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been
752     unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-
753     3658.

754 **30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
755     (A)  If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s)
756     and Closing Disclosure(s) upon receipt.
757     (B)  Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be
758     satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant**
759     **to Paragraph 16.** If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made
760     directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or
761     allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if
762     any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the
763     Seller, unless otherwise agreed to by the parties.

764 **31. HEADINGS (4-14)**
765     The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the
766     sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

dotloop signature verification: dtlp.us/TCfp-Bxoj-Sruy

dotloop signature verification: dtlp.us/TCfp-Bxoj-Sruy

Case 21-10327-elf Doc 75-2 Filed 04/06/21 Entered 04/06/21 16:34:43 Desc
Exhibit D: Motion to Sell Page 15 of 25 Page 30 of 38

**32. SPECIAL CLAUSES (1-10)**

(A) **The following are attached to and made part of this Agreement if checked:**

☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
☑ Settlement of Other Property Contingency Addendum (PAR Form SOP)
☐ Appraisal Contingency Addendum (PAR Form ACA)
☐ Short Sale Addendum (PAR Form SHS)
☑ Appraisal Protection Addendum
☑ Inspection Protection Addendum
☐ _____
_____

(B) **Additional Terms:**

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

**This Agreement may be executed in one or more counterparts**, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

**NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

Return of this Agreement, and any addenda and amendments, including **return by electronic transmission,** bearing the signatures of all parties, constitutes acceptance by the parties.

Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing this Agreement.

Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

**BUYER** _____ DATE _____
**BUYER** _____ DATE _____
**BUYER** _____ DATE _____

Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

**SELLER** _____ DATE _____
**SELLER** _____ DATE _____
**SELLER** _____ DATE _____

UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re: | : Chapter 11 |
| | : |
| **LEWISBERRY PARTNERS, LLC,** | : Case No. 21-10327 (ELF) |
| | : |
| Debtor. | : |
| | : |

ORDER GRANTING EXPEDITED CONSIDERATION, SHORTENED TIME AND
LIMITED NOTICE ON THE MOTION OF DEBTOR LEWISBERRY PARTNERS, LLC
FOR AUTHORITY TO SELL REAL PROPERTIES AT PRIVATE SALES, FREE AND
CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES
PURSUANT TO 11 U.S.C. § 363 (b), (f), and (m) AND TO ASSUME CERTAIN
PREPETITION AGREEMENTS OF SALE PURSUANT TO 11 U.S.C. § 365(a)

AND NOW, this _____ day of _____, 2021, upon consideration of the

Motion of the Debtor and Debtor-in-Possession, Lewisberry Partners, LLC (the "Debtor"), by

and through his undersigned counsel, Obermayer Redman Maxwell & Hippel LLP, hereby

moves this Court for the entry of an Order: (i) granting expedited consideration, shortened time

and limited notice and; (ii) granting the Debtor authority to sell the properties located at 2

Kingswood Drive, Lewisberry, PA 17339, 8 Kingswood Drive, Lewisberry, PA 17339, and 16

Kingswood Drive, Lewisberry, PA 17339  (the "Real Properties") at private sale as follows:  (a)

2 Kingswood Drive, Lewisberry, PA 17339 to Andrew J. Kaehler and Peggy A. Kaehler; (b) 8

Kingswood Drive, Lewisberry, PA 17339 to Kristine Fischer and Jamie T. Fischer; and (c) 16

Kingswood Drive, Lewisberry, PA 17339 to Bobby Hile and Sara Hile (the "Sales"), free and

clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363 (the "Motion")[2]; and

cause therefore having been demonstrated, it is hereby ORDERED as follows:

---

[2] Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Motion.

1

1.      Debtor's request for an expedited hearing, shortened time, and limited notice on

the Motion is GRANTED.

2.      A hearing to consider the Motion is scheduled for _____, 2021

at _____ a.m./p.m. before the Honorable Eric L. Frank, United States Bankruptcy Judge in

the United States Bankruptcy Court, Robert N.C. Nix Sr. Federal Courthouse, 900 Market Street,

Philadelphia, PA, 19107 in Courtroom No. 1.  Any objection to the Motion must be filed with

the Clerk of the Bankruptcy Court and serviced upon counsel to the Trustee on or before

_____, 2021.

3.      The terms and conditions of the Sales are as follows:

    a.   2 Kingswood Drive, Lewisberry, PA 17339 to Andrew J. Kaehler and

        Peggy A. Kaehler,

        i.   For a purchase price of $257,000.00, and with

        ii.  Settlement must occur as soon as possible.

    b.   8 Kingswood Drive, Lewisberry, PA 17339 to Kristine Fischer and

        Jamie T. Fischer,

        i.   For a purchase price of $265,000.00, and with

        ii.  Settlement must occur as soon as possible.

    c.   16 Kingswood Drive, Lewisberry, PA 17339 to Bobby Hile and Sara Hile,

        i.   For a purchase price of $270,000.00, and with

        ii.  Settlement to occur on February 19, 2021.

4.      A copy of this Order shall be served by counsel to the Debtor on or before

_____, 2021, at _____ a.m./p.m. by facsimile, next day mail or by

electronic means, including the Court's CM/ECF system, upon: (i) the Office of the United

States Trustee; (ii) the Debtor's Lender and Fay; (iii) taxing authorities; (iv) the Debtor's

principals; (v) the Debtor's list of 20 largest creditors; (vi) the Purchasers of the Real Properties

and (vii) all parties who have timely filed requests for notice under Bankruptcy Rule 2002.

5.      If notice is given in the manner provided above, said notice shall be sufficient and

proper and in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy

Procedures, and the Local Rules of this Court.

BY THE COURT:

_____
Honorable Eric L. Frank
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re: | : Chapter 11 |
| | : |
| **LEWISBERRY PARTNERS, LLC,** | : **Case No. 21-10327 (ELF)** |
| | : |
| Debtor. | : |
| | : |

### ORDER GRANTING EXPEDITED MOTION OF DEBTOR LEWISBERRY PARTNERS, LLC FOR AUTHORITY TO SELL REAL PROPERTIES AT PRIVATE SALES, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363(b), (f) AND (m) AND TO ASSUME CERTAIN PREPETITION AGREEMENTS OF SALE PURSUANT TO SECTION 365(a) OF THE BANKRUPTCY CODE, 11 U.S.C. SECTION 101 *et seq.*

AND NOW, this _____ day of _____, 2021, upon consideration of the

Motion of Lewisberry Partners, LLC, the debtor and debtor in possession (the "Debtor"), by and

through its undersigned counsel, Obermayer Redman Maxwell & Hippel LLP, for the entry of an

order: (i) granting expedited consideration, shortened time and limited notice; (ii) granting the

Debtor authority to sell (the "Sales") the properties located at; (a) 2 Kingswood Drive,

Lewisberry, PA 17339 (Lot 47), (b) 8 Kingswood Drive, Lewisberry, PA 17339 (Lot 50), and (c)

16 Kingswood Drive, Lewisberry, PA 17339 (Lot 54) (the "Real Properties") to the prepetition

purchasers, at private sale free and clear of all liens, claims and encumbrances, pursuant to

Section 363(b), (f) and (m) of the United States Bankruptcy Code, 11 U.S.C. section 101 *et seq*.

(as amended, the "Bankruptcy Code") free and clear of all liens, claims, and encumbrances

pursuant to Section 363(b) and (f), and the Debtor's request to assume the Prepetition

Agreements of Sale pursuant to Section 365(a) of the Bankruptcy Code(the "Motion")[1] and any

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Motion.

response thereto, and this Court being satisfied that due notice of the Motion and the Sales have

been provided by the Debtor pursuant to Section 363 of the Bankruptcy Code, Rules 2002(a)(2),

(c)(1), (k), 6004(a) and 9007 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.")

and Rules 2002-1, 6004-1, and 9014-3 of the Local Bankruptcy Rules for the United States

Bankruptcy Court for the Eastern District of Pennsylvania ("L.B.R."); and this Court being

further satisfied that the Debtor has demonstrated that there is a sound business purpose for the

sale of the Properties, that the Sales represent the highest and best offers for the Properties, that

the Sales are proposed in good faith and therefore, the relief requested in the Motion is

appropriate and in the best interests of the Debtor's bankruptcy estate; and the Debtor further

establishing that the lien and claim of the Lender are subject to a bona fide dispute pursuant to

Section 363(f)(4) of the Bankruptcy Code, the Debtor having articulated legal claims against the

Lender, including disputes as to the value of the Collateral underlying the alleged liens and

claims of the Secured Creditor, and further that the applicable nonbankruptcy law permits the

sale of the Real Properties free and clear or the Lender's interests, and it further appearing that

good cause exists for the relief requested in the Motion; and this Court having found and

determined that the relief requested by the Debtor is necessary; and, after due deliberation and

sufficient cause being shown,

**IT IS HEREBY ORDERED THAT:**

The Motion is in all respects GRANTED as follows:

1.      The Debtor is authorized at Closing to assume the Prepetition Agreements of Sale

pursuant to Section 365(a) of the Bankruptcy Code;

2.      The Debtor is further authorized to complete the Sales of the Real Properties,

pursuant to § 363(b), (f), and (m) of the Bankruptcy Code, free and clear of any and all liens,

claims, or encumbrances, pursuant to the Prepetition Purchase Agreements, at private sales (the "Sales") as follows:

       a.      2 Kingswood Drive, Lewisberry, PA 17339 to Andrew J. Kaehler and Peggy A. Kaehler;

       b.      8 Kingswood Drive, Lewisberry, PA 17339 to Kristine Fischer and Jamie T. Fischer; and

       c.      16 Kingswood Drive, Lewisberry, PA 17339 to Bobby Hile and Sara Hile.

3.      The Debtor shall retain the net proceeds of the Sales, and all liens, claims, and encumbrances related to any Allowed Claim, shall attach to the proceeds up to the Release Price for each of the Sales, which shall be held in escrow pending the outcome of the Debtor's disputes with the Secured Creditor with respect to its liens and claims.

4.      This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

5.      The fourteen (14) day stay imposed by Fed. R. Bankr. P. 6004(h) is hereby waived and this Order is effective immediately upon its entry.

BY THE COURT

_____
Honorable Eric L. Frank
United States Bankruptcy Judge

3

UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| **LEWISBERRY PARTNERS, LLC,** | : | **Case No. 21-10327 (ELF)** |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

## CERTIFICATE OF SERVICE

I, Michael D. Vagnoni, Esquire, attorney for the Debtor, hereby certify that on February 16, 2021, a true and correct copy of the Expedited Motion Of Debtor Lewisberry Partners, LLC For Authority To Sell Real Properties At Private Sales, Free And Clear Of All Liens, Claims, And Encumbrances Pursuant To 11 U.S.C. § 363(b), (f) and (m) And To Assume Certain Prepetition Agreements Of Sale Pursuant To Section 365(a) of the Bankruptcy Code, 11 U.S.C. Section 101 *et seq*. (the "Motion") was served via electronic means or next day mail upon the attached service list.

*/s/ Michael D. Vagnoni*
Michael D. Vagnoni, Esquire

1

## <u>SERVICE LIST</u>

Dave P. Adams
United States Trustee
200 Chestnut St.
Suite 502
Philadelphia, PA 19106

U.S. Small Business Administration
Eastern Pennsylvania District Office
660 American Ave., Suite 301
King of Prussia, PA 19406

Chester County Tax Claim Bureau
313 West Market Street, Suite 3602
West Chester, PA 19380-0991

Eileen Kollmer, Phoenixville Tax Collector
351 Bridge Street
Phoenixville, 19460

York Adams Tax Bureau
1405 N. Duke Street
York, PA 17404

Debra Popp, Lewisberry Tax Collector
1909 Old Trail Rd.
Etters, PA 17319

Andrew J. Kaehler and Peggy A. Kaehler
c/o BHHS Homesale Realty
3435 Market Street
Camp Hill, PA 17011

Kristine Fischer and Jamie T. Fischer
3420 Kingston Road
York, PA 17402

Sara A. Hile and Bobby Hile
3628 Petre Road
Springfield, OH 45502