# EXHIBIT "B"

Case 21-10327-mdc    Doc 327-2    Filed 12/18/23    Entered 12/18/23 22:09:07    Desc
Exhibit Ex B    Page 1 of 16

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into as of August 3, 2022, by and between debtor Lewisberry Partners, LLC (the "Debtor"), Richard Puleo ("Richard"), Lorraine Puleo ("Lorraine"; Richard and Lorraine collectively herein referred to as the "Puleos") and U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of HOF Grantor Trust I ("Lender") (referred to collectively as the "Parties," each a "Party").

## RECITALS

WHEREAS on June 26, 2019, the Debtor acquired thirty (30) improved townhomes located in Lewisberry, York County, Pennsylvania (the "Lewisberry Properties") in the community commonly known as Glenbrook Townhomes at Pleasant View.

WHEREAS, the Puleos individually own twenty (20) improved townhomes (the "Puleo Properties") in the same development as the Lewisberry Properties. The Puleo Properties and Lewisberry Properties are listed on the Schedule A attached hereto.

WHEREAS, Debtor and the Puleos acquired the Lewisberry Properties and Puleo Properties from Eastern Development & Planning, Inc., for a purchase price of Ten Million Six Hundred Thousand Dollars ($10,600,000.00).

WHEREAS, the principals of the Debtor, the Puleos, own 82.237% of the Debtor.

WHEREAS, on June 26, 2019, and in order to fund the purchase of the Lewisberry Properties, Debtor borrowed funds from Loan Funder LLC, Series 7693 ("Loan Funder") in the original principal amount of Eight Million Twenty Five Thousand dollars ($8,025,000.00) (the "Loan") as memorialized in that certain Commercial Promissory Note (the "Note") and that certain Loan and Security Agreement (the "Loan Agreement") each dated June 26, 2019.

WHEREAS, as security for the Debtor's obligations, also on June 26, 2019, Debtor, as mortgagor, executed and delivered a Purchase Money Mortgage (the "Lewisberry Mortgage") to Loan Funder, as mortgagee, in which the Debtor granted the Loan Funder a first mortgage on the Lewisberry Properties as well as a security interest, *inter alia*, in and to all of its present and future fixtures, rents, profits, and income from the Lewisberry Properties, and Loan Funder has a first lien position on the Lewisberry Properties and the foregoing assets.

WHEREAS, in addition to the Lewisberry Mortgage and as additional security for the Debtor's obligation to Loan Funder, and also on June 26, 2019, the Puleos, as mortgagors, executed and delivered a Purchase Money Mortgage to Loan Funder, as mortgagee, in which the Puleos granted a first priority mortgage (the "Puleo Mortgage"), the Puleo Properties, and Loan Funder has a first mortgage on the Puleo Properties.

WHEREAS, on June 26, 2019, Richard executed a Guaranty in favor of Loan Funder which guarantees the obligations of the Debtor under the Note and related loan documents (the "Guaranty", which together with the Note, the Loan Agreement, the Lewisberry Mortgage the Puleo Mortgage and all other loan documents executed in connection with any of the foregoing hereafter collectively, the "Loan Documents").

- 1 -

4882-9754-5769 v10

WHEREAS, in August 2019, servicing was transferred to a new servicer: Fay Servicing LLC.

WHEREAS, during the pendency of the bankruptcy case, the Loan Documents were assigned to Lender.

WHEREAS, Lender is the successor to all of Loan Funder's rights and duties under the Loan Documents.

WHEREAS, Debtor leases certain of the Lewisberry Properties, and offers them for sale from time to time.

WHEREAS, The Puleos lease certain of the Puleo Properties, and offer them for sale from time to time.

WHEREAS, on November 9, 2021, Lender made demand for all rents generated by the Puleo Properties on the Puleos (the "Puleo Rent Demand")

WHEREAS, the Debtor and Puleos disputed the propriety of certain actions taken by Loan Funder and/or the Lender.

WHEREAS, Lender asserts that all actions it has taken and all amounts incurred were valid and enforceable under the Loan Documents.

WHEREAS, on February 9, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and has continued in possession of its property and is operating its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

WHEREAS, no creditors' committee has been appointed in this Chapter 11 case by the United States Trustee. No Trustee or examiner has been sought or appointed in the Debtor's Chapter 11 case.

WHEREAS, on June 30, 2021, the Debtor filed an adversary complaint in the Bankruptcy Court against Loan Funder, Lender and Roc Capital Holdings LLC, commencing Adversary Case No. 21-52 (ELF) (the "Adversary Proceeding").

WHEREAS, as of the date of this Agreement, the Adversary Proceeding is pending.

WHEREAS, on June 29, 2021, Lender filed a foreclosure complaint against the Puleos in the Court of Common Pleas of York County, Pennsylvania, commencing Case No. 2021-SU-001374 (the "Foreclosure Proceeding").

WHEREAS, on March 28, 2022, the Puleos filed counterclaims and cross-claims in the Foreclosure Proceeding against the Lender, Peter Meltzer, Esq., Weber Gallagher Simson Stapleton Fires & Newby LLP, Fay Servicing LLC, Roc Capital Holdings LLC, Richard Riddle and Ranajoy Sarkar.

WHEREAS, on June 29, 2021, Lender filed a civil action in the Lancaster, Pennsylvania Court of Common Pleas against Richard seeking recovery on account of his personal Guaranty, commencing Case No. CI-21-04315 (the "Guaranty Proceeding").

WHEREAS, as of the date of this Agreement, the Adversary Proceeding, Foreclosure Proceeding and Guaranty Proceeding are pending.

WHEREAS, during the pendency of this case, the Debtor has paid Lender adequate protection payments totaling $405,000.00 (the "Adequate Protection Payments").

WHEREAS, during the pendency of this case, the Debtor sold five (5) of the Lewisberry Properties pursuant to 11 U.S.C. §363(f).

WHEREAS, these sales generated $1,060,007.47 in contractual release prices (the "Release Prices Proceeds") which were transferred to Lender.

WHEREAS, the Debtor proposed a Fourth Amended plan of reorganization (the "Plan") on March 3, 2022. The Plan classified Lender's claim into Class 1 (secured) and Class 2 (unsecured) classes.

WHEREAS, Lender objected to the confirmation of the Plan. The Debtor and Lender participated in a contested confirmation hearing for the Plan on June 2, 2022. On July 1, 2022, the Bankruptcy Court denied confirmation of the Plan.

WHEREAS, following the denial of confirmation, the Parties engaged in settlement negotiations. To avoid the incurrence of continuing and substantial expenses and the significant uncertainties of litigation, the Parties have decided to compromise, settle, forever resolve, and finally dispose of all outstanding disputes between them and obtain Lender's consent to the confirmation of an amended plan of reorganization consistent with this Agreement (the "Amended Plan").

**NOW, THEREFORE**, with the foregoing Background being deemed incorporated by reference, in consideration of the promises aforesaid and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and subject to the Bankruptcy Court's approval of this Agreement as provided herein, the Parties hereby agree as follows:

1.  Recitals. Each of the recitals set forth above are incorporated herein, and the Parties acknowledge that each recital is true and correct.

2.  Effective Date. The term "Effective Date" shall mean the date on which an order confirming the Amended Plan becomes final and unappealable.

3.  Bankruptcy Court Approval. The following business day after all Parties have executed this Agreement, the Debtor shall file a motion (the "9019 Motion") with the Bankruptcy Court requesting approval of this Agreement and modifying the Plan's into the Amended Plan consistent with this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy

- 3 -

Procedure and shall seek expedited consideration of the 9019 Approval Motion, pursuant to Local Rule of Bankruptcy Procedure 5070-1(g), with appropriate notice to all parties in interest. Lender consents to expedited consideration of the 9019 Motion.

4.   <u>Consent to Amended Plan</u>.  Contingent on approval of the 9019 Motion by the Bankruptcy Court, Lender consents to confirmation of an Amended Plan that provides Lender treatment consistent with this Agreement.

5.   <u>Settlement of Claim and Treatment of Amount as Principal</u>.  Upon approval of this Agreement by the Bankruptcy Court, the amount owed to Lender on account of the Loan Documents is $8,880,413.00 (the "Debt Amount").  The Debt Amount shall be treated as though it was the principal amount owed on the Note. This amount may be paid in any manner consistent with this Agreement, or from any other source not inconsistent with this Agreement.

6.   <u>Payment of Debt Amount</u>. The first payment pursuant to this Agreement shall be due ten (10) days after the entry of an order granting the 9019 Motion. Thereafter, payments shall be due or deemed due, on the first day of the following month. The Debt Amount as well as all other sums which may be due hereunder or under the Loan Documents shall be due and payable in full on or before August 31, 2023 (the "Maturity Date")

7.   <u>Acknowledgments and Agreements</u>. The Debtor and the Puleos hereby acknowledge and agree as follows:

a.   The Debt Amount is due and owing without defense, counterclaim or offset.

b.   Except as amended hereby or except as set forth in any amended loan documents executed in connection herewith, the Loan Documents are fully valid and enforceable as of the date hereof, without defense, counterclaim or offset.

c.   Lender has a valid and enforceable first mortgage lien on the Lewisberry Properties, with lien priority on the Lewisberry Properties as of June 26, 2019 and that the lien on the Lewisberry properties shall secure the Debt Amount as stated herein.

d.   There are no other liens, judgments, mortgages or encumbrances existing against the Lewisberry Properties as of the date hereof other than the Lewisberry Mortgage.

e.   Lender has a valid and enforceable first mortgage lien on the Puleo Properties, with lien priority on the Puleo Properties as of June 26, 2019 and that the lien on the Puleo properties shall secure the Debt Amount as stated herein.

f.   There are no other liens, judgments, mortgages or encumbrances existing against the Puleo Properties as of the date hereof other than the Puleo Mortgage.

g.   The Guaranty is valid and enforceable and shall guarantee the Debt Amount.

h.   Pursuant to the Puleo Rent Demand, Lender has perfected and enforced its lien on and rights to the rents from the Puleo Properties.

- 4 -

8. **Currentness and Confirmatory Documents.** Upon approval of this Agreement by the Bankruptcy Court, the Debtor and Puleos are deemed current on all monetary and non-monetary obligations under the Loan Documents. The Parties may execute additional documents, including a Note or Mortgage modification or assignment of rents, consistent with this Agreement.

9. **Assignments of Rents; License.** The Debtor and Puleos acknowledge that the Loan Documents create valid and enforceable assignments of rents in favor of the Lender. Notwithstanding Lender's demand for rents from the Puleo Properties, Lender grants the Debtor and the Puleos a license to collect rents while the Puleos and Debtor is not an Event of Default under this Agreement or the Loan Documents as may be modified in connection herewith.

10. **Interest Rate and Suspense Funds.** The Loan is an interest-only loan. The Debtor shall make monthly payment of the interest accrued on the principal amount. The non-default interest rate pursuant to the Loan Documents and this Agreement is 8%, with non-default interest accruing in the amount of $1,973.43 per diem. The default rate upon the occurrence of an Event of Default herein is 23% (the "Default Rate"). Lender shall hold in suspense Adequate Protection Payments equal to $354,000.00. Lender shall apply these funds monthly to pay interest on the Debt Amount either at the non-default rate or, after the occurrence of an Event of Default, at the Default Rate. Upon approval of this Agreement by the Bankruptcy Court, Adequate Protection Payments in excess of $354,000.00 shall be applied to reduce the principal amount. At such time as these suspense funds have been depleted, Debtor shall be responsible for making all payments due hereunder directly to the loan servicer. The first payment pursuant to this Agreement shall be due ten (10) days after the entry of an order granting the 9019 Motion. Thereafter, payments shall be due or deemed due, on the first day of the following month.

11. Sale Process.

   11.1 **Sale Requirements.** The Debtor and Puleos shall market for sale, individually or in groups as they determine in their business judgment, the Lewisberry Properties and Puleo Properties. The Debtor and Puleos shall only enter into an agreement of sale for a property if the gross sale price for that property, less ordinary and customary costs of sale such as realtor's commissions, transfer taxes and recording costs (the "Net Sale Proceeds") exceeds the "Revised Release Prices" set forth in Schedule A hereto.

   11.2 **Lender Consent to Free-and-Clear Sales.** For a period of one (1) year after the Effective Date, and if the Debtor and Puleos are not in default of this Agreement, Lender consents to the sale of Lewisberry Properties and Puleo Properties free and clear of its lien pursuant to 11 U.S.C. §363(b), (f) if the Net Sale Proceeds exceed the applicable Revised Release Prices set forth in Schedule A hereto and assuming compliance with this Section 11.

   11.3 **Refinance Requirements.** The Debtor or Puleos may refinance the Debt Amount via a loan secured by the Lewisberry Properties and Puleo Properties. If they are not in default, the Debtor and Puleos may refinance part of the Debt Amount via a loan secured by some or all of the Lewisberry Properties and Puleo Properties if the loan proceeds less ordinary and customary costs of refinancing such as broker's fees and loan closing costs

("Refinance Proceeds") exceed the "Revised Release Prices" set forth in Schedule A hereto for all properties subject to the refinance.

11.4 <u>Lender Release of Liens</u>. Lender shall take all actions necessary to confirm that it will release or satisfy its lien as to any sale or refinance compliant with this Section, and to release or satisfy the lien; provided, however, that Lender shall have no obligation to release any mortgage liens on any properties without prior written approval of the settlement statement relating to each property. Lender shall give its approval of a settlement statement if the Net Sale Proceeds are compliant with this Section.

11.5 <u>Payoff Statements</u>. Lender shall provide the Debtor and Puleos with an itemized payoff statement as of a date certain, with a calculation of per diem interest, within five (5) days of a written request. The Puleos and Debtor may request a payoff statement of the amount necessary to satisfy the lien against some or all unsold properties.

11.6 <u>Distribution of Proceeds</u>. Until all amounts owed on account of this Agreement are paid in full, all Net Sale Proceeds or Refinance Proceeds pursuant to this Agreement shall be distributed to Lender at the closing of the sale or refinance.

11.7 <u>Application of Proceeds</u>. If the Debtor and Puleos are not in default of this Agreement, all Net Sale Proceeds or Refinance Proceeds shall be applied to reduce the principal amount set forth in this Agreement. If the Debtor or Puleos are in default, any Net Sale Proceeds or Refinance Proceeds shall be applied consistent with the Lender's application of payments clauses in the Loan Documents.

12. <u>Responsibility for Real Estate Taxes and Insurance.</u> While the Debtor and Puleos are not in default of this Agreement, Lender shall not demand escrow amounts for past or future charges. At least ten (10) days before the last date they may be paid without penalty, the Debtor or Puleos shall pay all tax installments that are owed on account of the Lewisberry Properties or Puleo Properties. The Debtor or Puleos shall keep the Lewisberry Properties or Puleo Properties insured by an insurance policy compliant with the Loan Documents. The Debtor or Puleos shall provide Lender confirmation of the payment of the tax installments and insurance pursuant to this Section at least ten business (10) days prior to the lapse of the insurance policy or the last date taxes may be paid without penalty. In the event that the Debtor and Puleos do not send timely notification of payment of taxes and/or insurance in the manner set forth herein, then the Lender may, but is not obligated to, advance such taxes and/or insurance payments on behalf of the Debtor and/or the Puleos, and the amount of such payment shall be added to the Debt Amount and due and payable by the Debtor and/or the Puleos as the case may be on the earlier of (a) 10 days after written demand for repayment, or (b) the Maturity Date. Confirmation of payment pursuant to this Section shall be sent to:

<u>By Electronic Mail to:</u>

Edmond M. George, counsel for the Debtor

- 6 -

4882-9754-5769 v10

Edmond.george@obermayer.com.

Peter Meltzer, Esq., counsel for Lender
pmeltzer@wglaw.com;

Fay Servicing at each of:
Tax@fayservicing.com;
insurance@fayservicing.com
maiken@fayservcing.com,
smusgraves@fayservicing.com

And by overnight mail to:

Fay Servicing, LLC
P.O. Box 809441
Chicago, IL 60680;

13. Dismissal of Proceedings.

    13.1 Adversary Proceeding. Upon approval of this Agreement by the Bankruptcy Court, the Adversary Proceeding is dismissed with prejudice.

    13.2 Lender's Claims. Upon approval of this Agreement by the Bankruptcy Court, Lender's claims in the Foreclosure Proceeding and Guaranty Proceeding shall be dismissed without prejudice.

    13.3 Puleo Claims. Upon approval of this Agreement by the Bankruptcy Court, all claims asserted by the Puleos in the Foreclosure Proceeding shall be dismissed with prejudice. In addition, the Puleos shall withdraw with prejudice the appeal that they filed to the Pennsylvania Superior Court in the Guaranty Proceeding with respect to the order of the Lancaster County Court of Common Pleas overruling the Preliminary Objections filed by the Puleos.

    13.4 Lender and Richard Puleo shall take all necessary steps to obtain dismissal of the proceedings pursuant to this Section of the Agreement.

14. Events of Default. The occurrence of any of the following is an Event of Default:

    14.1 Unless inconsistent with this Agreement or the Amended Plan, any event that would constitute an Event of Default or a Default under the Loan Documents or any confirmatory documents executed pursuant to this Agreement, including without limitation failure to abide by any of the affirmative covenants or negative covenants set forth in the Loan Agreement.

    14.2 Failure to abide by any term of this Agreement, including without limitation for payment of the Debt Amount, as the same may be adjusted

Case 21-10327-mdc    Doc 327-2    Filed 12/18/23    Entered 12/18/23 22:09:07    Desc
Exhibit Ex B    Page 9 of 16

DocuSign Envelope ID: 72C37CB2-A9A5-4B0D-96B2-43C95B980A8D
Case 21-10327-mdc    Doc 322-2    Filed 12/12/23    Entered 12/12/23 15:48:08    Desc
Exhibit B  Settlement Agreement    Page 8 of 15

herein, as well as all principal, interest, fees and costs as provided herein or as provided in the Loan Documents on or before the Maturity Date.

15. <u>Deeds-in-Lieu and Uncontested Foreclosures.</u>

15.1 <u>Deeds-in-Lieu</u>. On the Effective Date, the Debtor and Puleos shall prepare and transmit to Lender deeds for each of the Puleo Properties and Lewisberry Properties. Unless the Puleos or Debtor are in default of this Agreement, Lender shall not record these deeds.

15.2 <u>Determination of Fair Value</u>. If Lender elects to record deeds-in-lieu or seek an uncontested judgment for foreclosure, the Parties shall make a good faith effort to fix the amount owed and the value of the Lewisberry Properties and Puleo Properties by agreement. If the Parties cannot agree, Lender shall move to enforce this Section before the Bankruptcy Court and to fix the amount owed pursuant to this Agreement and the fair net market value of the Lewisberry Properties and Puleo Properties pursuant to the legal standard in 42 Pa.C.S.A. §8103 (a "Fair Value Motion"). The Debtor and Puleos have sixty (60) days from the date of the filing of a Fair Value Motion to obtain an appraisal to be presented as evidence in the hearing on the Fair Value Motion. Lender may, at its option, obtain its own appraisal. The Bankruptcy Court shall fix the amount owed and the fair market value of the Lewisberry Properties and Puleo Properties. Lender may then, in its sole discretion, seek judgment in foreclosure pursuant to Section 15.3 of this Agreement or record the deeds-in-lieu or for any Puleo Properties or Lewisberry Properties. Upon the recording of a deed-in-lieu or entry of a foreclosure judgment with respect to a property, Lender shall credit 90% of the value of that property, as determined by the Fair Value Motion, to reduce the Debt Amount. If Lender credits an amount equal to the amount due pursuant to this Agreement, it shall release or satisfy the mortgage as to all properties not taken by deeds-in-lieu or subject to a judgment in foreclosure pursuant to this Section. Nothing herein shall require the Lender to record deeds in lieu of foreclosure or to seek judgment for foreclosure if there is an Event of Default hereunder, and Lender's options if there is an uncured Event of Default include, but are not limited to, foreclosure on any of the Lewisberry Properties or Puleo Properties or pursuing its rights under the Guaranty. Notwithstanding anything herein, nothing shall preclude Lender from filing a Fair Value Motion to value some or all of the Lewisberry Properties or Puleo Properties if any amount remains owing under this Agreement.

15.3 <u>Uncontested Foreclosure</u>. The Parties agree that upon a default or Event of Default hereunder or under the Loan Documents, Lender has the right, but not the obligation, to foreclose on any of the Lewisberry Properties or Puleo Properties then owned by Lewisberry or the Puleos, and in such event, the amount owed under this Agreement and the values of the properties are preclusively determined by the outcome of a Fair Value Motion for the purposes of this Section. If Lender elects to seek judgment in foreclosure

- 8 -

pursuant to this Section, the Debtor and Puleos waive all defenses to the entry of a foreclosure judgment and consent to the entry of an uncontested judgment in foreclosure consistent with Section 15.2 of this Agreement.

16. <u>Remedies; No Waiver</u>

16.1 If there is an Event of Default, (a) the Default Rate shall go into effect as of said date on the amount then owing hereunder or under the Loan Documents, as the same may be modified in connection herewith, (b) Lender shall have the option, but not the obligation to record any of the Deeds in Lieu, (c) Lender may exercise all of its rights and remedies against the Debtor or the Puleos as set forth in the Loan Documents as the same may be modified in connection herewith, including without limitation, the Note, the Lewisberry Mortgage, the Puleo Mortgage and the Guaranty, and (d) Lender may directly demand and receive rents from the tenants and occupants of the Puleo Properties pursuant to the Puleo Rent Demand and may directly demand and receive rents from tenants and occupants of the Lewisberry Properties, all of the foregoing rights and remedies which may be exercised without bankruptcy court approval and without needing to obtain relief from the automatic stay.

16.2 The remedies provided pursuant to this Agreement are cumulative. The exercise of any remedy by Lender does not constitute waiver of other available remedies.

17. <u>Debtor and Puleos Releases</u>. Upon approval of this Agreement by the Bankruptcy Court, the Debtor and the Puleos, without further action, irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge Lender, Peter Meltzer, Esq., Weber Gallagher Simson Stapleton Fires & Newby LLP, Fay Servicing LLC, Roc Capital Holdings LLC, Richard Riddle and Ranajoy Sarkar and their parents, subsidiaries, affiliates, members, directors, officers, managers, employees, attorneys, insurers, agents and successors and assigns, (collectively, the "<u>Releasees</u>") of and from any and all claims obligations, suits, judgments, damages, demands, debts, rights (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liabilities, or causes of action, whether known or unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, asserted or retained, foreseen or unforeseen, matured or unmatured, presently existing in law, equity, statute, or otherwise, including but not limited to, any of the foregoing arising under theories of contract, successor liability, tort, agency, unjust enrichment, alter ego, substantive consolidation, extension, veil piercing, equity and any and all fraudulent conveyance or transfer claims that were or could be brought by the Debtor or Puleos under state, federal or foreign law, including but not limited to any claims that were or could have been asserted against in the Adversary Proceeding, Foreclosure Proceeding or Guaranty Proceeding or any other action or proceeding. For the avoidance of doubt, this Section does not release any Party from any claim arising out of this Agreement or the Amended Plan.

18. <u>Party Representations</u>. Each Party represents and warrants that at the time of execution of this Agreement: (a) such Party and the signatory hereto has the power and authority to execute, deliver and perform this Agreement; (b) such Party has taken all necessary actions to

- 9 -

4882-9754-5769 v10

authorize the execution, delivery and performance of this Agreement ; (c) this Agreement has been duly executed and delivered by such Party and, subject to Bankruptcy Court approval, constitutes the legal, valid, and binding obligations of such Party, enforceable against it in accordance with their respective terms; (d) such Party's execution, delivery, and performance of this Agreement does not and will not conflict with, or constitute a violation or breach of, or constitute a default under any obligation of such Party and will not violate any applicable law, or any order or decree of any court or government instrumentality applicable to such Party; and (e) such Party has entered into this Agreement in reliance on its own independent investigation and analysis of the facts underlying the subject matter of this Agreement, and no representations, warranties, or promises of any kind have been made directly or indirectly to induce it to execute this Agreement other than those that are expressly set forth in this Agreement.

19. <u>Cancellation of Agreement</u>. If the 9019 Motion is not granted, unless the Parties otherwise agree in writing, this Agreement will be null and void as of the date that an order denying the 9019 Motion becomes a final, non-appealable order. In such event each of the Parties will revert to their respective positions that existed on the date immediately prior to execution of this Agreement.

20. <u>No Assignment</u>. Each of the Parties represents and warrants that it has not assigned or transferred any released matter or any right to consideration provided pursuant to this Agreement.

21. <u>No Admission of Liability</u>. This Agreement constitutes a compromise of the Parties' disputes. Nothing contained herein shall in any way constitute or be deemed to be an admission or concession by any Party as to any matter, including with respect to the truth of any fact alleged by the Parties, or the validity of any claim or cause of action that has been or could be asserted in any of the claims that are settled herein. Except in a dispute seeking enforcement of this Agreement, nothing in this Agreement or any of its terms, or any negotiations or proceedings connected with this Agreement, or any documents or statements referred to therein, shall be admissible in evidence against any Party in any litigation, matter, or proceeding between any of the Parties or any other litigation, matter or proceeding involving a Party.

22. <u>Continuing Bankruptcy Court Jurisdiction</u>. The Parties agree that the Bankruptcy Court shall retain exclusive jurisdiction to hear a Fair Value Motion or otherwise enforce this Agreement and the Parties consent to the jurisdiction of the Bankruptcy Court over the enforcement of the provisions of this Agreement and the Amended Plan.

23. <u>Voluntary Agreement</u>. Each Party acknowledges that it has read all the terms of this Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right, and enters into this Agreement voluntarily and without duress.

24. <u>Joint Drafting</u>. This Agreement shall be deemed to have been jointly drafted by the Parties, and in construing or interpreting this Agreement, no provision shall be construed or interpreted for or against any Party because such provision or any other provision of the Agreement was purportedly prepared or requested by such Party.

Case 21-10327-mdc    Doc 327-2    Filed 12/18/23    Entered 12/18/23 22:09:07    Desc
Exhibit Ex B    Page 12 of 16

DocuSign Envelope ID: 72C37CB2-A9A5-4B0D-9682-43C5B9B9CA3F
Case 21-10327-mdc    Doc 322-2    Filed 12/12/23    Entered 12/12/23 15:48:08    Desc
Exhibit B    Settlement Agreement    Page 11 of 15

25.    <u>Applicable Law</u>. The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the Commonwealth of Pennsylvania, except to the extent inconsistent with federal law.

26.    <u>Successors and Assigns</u>. This Agreement shall be binding on and inure to the benefit of the Parties and their respective agents, employees, affiliates, successors and assigns.

27.    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement. Delivery of a signature page to this Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Agreement.

28.    <u>Entire Agreement</u>. This document contains the entire Agreement between the Parties and may be modified only in a writing signed by all of the Parties or their duly appointed agents. All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this document.

29.    <u>Divisions and Headings.</u> The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

**WHEREFORE**, the Parties have executed this Agreement as of the date first set forth above.

U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF HOF GRANTOR TRUST I, BY FAY SERVICING, LLC, ITS ATTORNEY IN FACT

By: _____

LEWISBERRY PARTNERS LLC

By: *Richard Puleo*    05 August 2022
     96ABBD247EBC469...
     Richard Puleo, Managing Member

By: *Richard Puleo*    05 August 2022
     96ABBD247EBC469...
     Richard Puleo, an individual

- 11 -

4882-9754-5769 v10

DocuSign Envelope ID: 72C37CB3-A9A5-4B0D-9682-43C9B3B86A3D

By: _____  05 August 2022
      *DocuSigned by: L P Puleo, EA62AEE25A7049A...*
Lorraine Puleo, an individual

4882-9754-5769 v10

25. <u>Applicable Law</u>. The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the Commonwealth of Pennsylvania, except to the extent inconsistent with federal law.

26. <u>Successors and Assigns</u>. This Agreement shall be binding on and inure to the benefit of the Parties and their respective agents, employees, affiliates, successors and assigns.

27. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement. Delivery of a signature page to this Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Agreement.

28. <u>Entire Agreement</u>. This document contains the entire Agreement between the Parties and may be modified only in a writing signed by all of the Parties or their duly appointed agents. All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this document.

29. <u>Divisions and Headings.</u> The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

**WHEREFORE**, the Parties have executed this Agreement as of the date first set forth above.

U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF HOF GRANTOR TRUST I, BY FAY SERVICING, LLC, ITS ATTORNEY IN FACT

By: _____
Mike Aiken, Senior Vice President

LEWISBERRY PARTNERS LLC

By: _____
Richard Puleo, Managing Member

By: _____
Richard Puleo, an individual

- 11 -

4882-9754-5769 v10

## Schedule A:
## Revised Release Prices

- 13 -

| Address | County | State | Zipcode | Allocated Loan Amount | Status | Release Price (125% of Allocated Loan Amount) |
|---|---|---|---|---|---|---|
| **RICHARD & LORRAINE OWNED UNITS:** | | | | | | |
| 100 Scully Place | York County | PA | 17339 | $148,785.05 | | $178,542.06 |
| 102 Scully Place | York County | PA | 17339 | $137,626.17 | | $172,032.71 |
| 104 Scully Place | York County | PA | 17339 | $137,626.17 | | $172,032.71 |
| 106 Scully Place | York County | PA | 17339 | $137,626.17 | | $172,032.71 |
| 108 Scully Place | York County | PA | 17339 | $137,626.17 | | $172,032.71 |
| 110 Scully Place | York County | PA | 17339 | $148,785.05 | | $185,981.31 |
| 114 Scully Place | York County | PA | 17339 | $152,504.67 | | $190,630.84 |
| 116 Scully Place | York County | PA | 17339 | $137,626.17 | | $172,032.71 |
| 118 Scully Place | York County | PA | 17339 | $137,626.17 | | $172,032.71 |
| 120 Scully Place | York County | PA | 17339 | $152,504.67 | | $190,630.84 |
| 122 Scully Place | York County | PA | 17339 | $152,504.67 | | $190,630.84 |
| 124 Scully Place | York County | PA | 17339 | $137,626.17 | | $172,032.71 |
| 126 Scully Place | York County | PA | 17339 | $137,626.17 | | $172,032.71 |
| 128 Scully Place | York County | PA | 17339 | $137,626.17 | | $172,032.71 |
| 130 Scully Place | York County | PA | 17339 | $137,626.17 | | $172,032.71 |
| 132 Scully Place | York County | PA | 17339 | $152,504.67 | | $190,630.84 |
| 134 Scully Place | York County | PA | 17339 | $152,504.67 | | $190,630.84 |
| 136 Scully Place | York County | PA | 17339 | $137,626.17 | | $172,032.71 |
| 138 Scully Place | York County | PA | 17339 | $137,626.17 | | $172,032.71 |
| 140 Scully Place | York County | PA | 17339 | $152,504.67 | | $190,630.84 |
| **LEWISBERRY PARTNERS, LLC OWNED UNITS:** | | | | | | |
| 142 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 144 Scully Place | York County | PA | 17339 | $156,224.30 | SOLD | $195,280.38 |
| 146 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 148 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 135 Scully Place | York County | PA | 17339 | $182,261.68 | | $227,827.10 |
| 133 Scully Place | York County | PA | 17339 | $156,224.30 | SOLD | $195,280.38 |
| 131 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 129 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 127 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 125 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 123 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 121 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 111 Scully Place | York County | PA | 17339 | $182,261.68 | | $227,827.10 |
| 109 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 107 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 105 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 103 Scully Place | York County | PA | 17339 | $156,224.30 | | $195,280.38 |
| 101 Scully Place | York County | PA | 17339 | $185,981.31 | | $232,476.64 |
| 24 Kingswood Drive | York County | PA | 17339 | $182,261.68 | | $227,827.10 |
| 22 Kingswood Drive | York County | PA | 17339 | $185,981.31 | | $232,476.64 |
| 18 Kingswood Drive | York County | PA | 17339 | $182,261.68 | | $227,827.10 |
| 20 Kingswood Drive | York County | PA | 17339 | $182,261.68 | | $227,827.10 |
| 16 Kingswood Drive | York County | PA | 17339 | $185,981.31 | SOLD | $232,476.64 |
| 14 Kingswood Drive | York County | PA | 17339 | $182,261.68 | | $227,827.10 |
| 12 Kingswood Drive | York County | PA | 17339 | $185,981.31 | | $232,476.64 |
| 10 Kingswood Drive | York County | PA | 17339 | $182,261.68 | | $227,827.10 |
| 8 Kingswood Drive | York County | PA | 17339 | $182,261.68 | SOLD | $227,827.10 |
| 6 Kingswood Drive | York County | PA | 17339 | $182,261.68 | | $227,827.10 |
| 4 Kingswood Drive | York County | PA | 17339 | $182,261.68 | | $227,827.10 |
| 2 Kingswood Drive | York County | PA | 17339 | $185,981.31 | SOLD | $232,476.64 |
| | | | | $7,960,000.01 | TOTAL: | $9,075,887.86 |