# EXHIBIT "C"

# Peter E. Meltzer

**From:** Peter E. Meltzer
**Sent:** Tuesday, October 31, 2023 10:09 AM
**To:** Vagnoni, Michael
**Cc:** George, Edmond
**Subject:** RE: NB587705: Lewisberry LLC

Michael— Please note the following:

First. with respect to the payoff statement, I believe that what was sent by the loan servicer was correct and that it gives credit for the sale of the 105 Scully property. However, I am double-checking with them. If I find out to the contrary, I will let you know. That said, there is no double-counting of interest as you suggest. The payoff statement contains one line item for the 8% contract rate and a separate line item for the difference between the contract rate and the default rate.

Second, my client is certainly not "sitting back and doing nothing while collecting default rate interest." In fact, we have made you an offer which allows your client a full year to sell the properties and/or satisfy the loan balance by other means, <u>without default rate interest</u>, but your client apparently has rejected that. In addition, I note that your client had a full additional year already to pay off this loan, and during that year, he chose to sell only a small fraction of the 45 or so properties which he owns, and thus the principal balance of the loan was hardly reduced at all., That is not my client's fault. Your client was always aware (and specifically agreed in the Settlement Agreement) that if the loan balance was not paid off by August 31, then default rate interest would begin accruing. It sounds like your client doesn't care to take the time or trouble to make the effort to sell the properties himself.

Third, with respect to "compelling" my client to litigate with your client regarding the values of the properties, the terms of the Settlement Agreement are perfectly clear. More specifically, the Agreement is clear that the fair market value litigation process only occurs <u>if we elect to record the deeds in lieu of foreclosure</u>. I have already notified you that my client does not so elect. Even beyond that, the Settlement Agreement specifically provides that nothing in the Agreement shall require the lender to record the deeds in lieu of foreclosure or seek judgment for foreclosure if there is an Event of Default. Thus, the language of the Settlement Agreement could not be any clearer. Moreover, even aside from the unambiguous language of the Settlement Agreement, it simply makes more sense to see what the properties go for in the real world, rather than relying on the vagaries and uncertainties resulting from a battle of the appraisers, if that were to ensue. Your client is also undoubtedly in the best position to maximize the actual sale prices. Finally, even if there were no dispute at all as to the values of the properties, my client does not choose to take a whole bunch of properties into REO at this time. In fact, our awareness of this possibility was the very reason that the Settlement Agreement specifically provides that the fair market value process only applies if the Lender elects to record the deed in lieu and why it further specifically provides that nothing in the agreement shall require it to record the deeds in lieu.

Finally, with respect to your filing of an "expedited" Motion, first, this is not an emergency situation. Default interest started accruing two months ago. Moreover, your client knew for a full year before that that default rate interest would begin accruing if the loan balance was not paid off by August 31, and yet only chose to sell off a very small number of properties during that time. Second, as noted above, we specifically offered your client significant additional time to sell the properties or to satisfy the loan balance by other means, *without default interest*, and that was rejected by your client. I also note that it took a full nine days just to say no our proposal. Finally, I am the only person at this office handling this file, just as you appear to be the only person at your office handling the file, notwithstanding the fact that you copy Ed on every email. Moreover, I specifically advised you that I am going to be out of the country (and in fact in Asia) through next week. Therefore, while it is your prerogative to file a Motion (notwithstanding the clear language of the Settlement Agreement), I am respectfully requesting that you extend me the professional courtesy of waiting till I return to file any Motion.

1

**Peter E. Meltzer, Partner**

Weber Gallagher
2000 Market Street, Suite 1300
Philadelphia, PA 19103
T: 267.295.3363 M: 215.837.0666 F: 215.564.7699
pmeltzer@wglaw.com, www.wglaw.com

